1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10   IN RE MORNING SONG BIRD FOOD  )   Lead Case No. 12cv1592 JAH (RBB)
     LITIGATION                    )
11                                 )   **ORDER GRANTING IN PART AND**
                                   )   **DENYING IN PART**
12                                 )   **DEFENDANTS' MOTION TO**
                                   )   **DISMISS [Doc. No. 32]**
13                                 )
                                   )
14   _____)

15          Pending before the Court is Defendants The Scotts Miracle-Gro Company ("SMG")

16   and The Scotts Company, LLC's ( "Scotts LLC") (collectively "Defendants") motion to

17   dismiss.  Plaintiffs oppose the motion.  After a thorough review of the parties' submissions

18   and for the reason discussed below, the Court GRANTS IN PART AND DENIES IN

19   PART Defendants' motion.

20                            **BACKGROUND**

21          Plaintiffs Laura Cyphert and Milt Cyphert originally filed an action on June 27,

22   2012, asserting a class action against Defendants.  Upon the parties' joint motion, the

23   Court consolidated the matter with several other cases seeking the same relief against the

24   same defendants.[1]  Plaintiffs filed a Consolidated Class Action Complaint on October 9,

25   2012, and filed an Amended Consolidated Class Action Complaint on January 31, 2013,

26   alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

27
     _____
28          [1]Salkeld v. The Scotts Miracle-Gro Co., 12cv1728 JAH (NLS); Kirby v. The Scotts
     Miracle-Gro Co., 12cv1729 LAB (MDD) and Brumfield v. The Scotts Miracle-Gro Co.,
     12cv00701 GPM (PMF) (S.D.Ill.)

Magnuson-Moss Warranty Act ("MMWA"), California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California False and Misleading Advertising law ("FAL"), Arkansas Deceptive Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Kentucky Consumer Protection Act, Minnesota Consumer Fraud Act, Missouri Merchandising Practices Act, New Mexico Unfair Practices Act, breach of express warranty, breach of implied warranty of merchantability, breach of the common law of implied warranty of fitness for consumption by animals, intentional misrepresentation, negligent misrepresentation and unjust enrichment.

Defendants filed the pending motion to dismiss on February 28, 2013. Plaintiffs filed a response and Defendants filed a reply. After obtaining leave, Plaintiffs filed a surreply and Defendants filed a response to the surreply. The motion was set for hearing but was taken under submission without oral argument pursuant to Local Rule 7.1.

## DISCUSSION

Defendants move to dismiss the amended complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state valid claims under Federal Rule of Civil Procedure 12(b)(6).

### I. Legal Standards

### A. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When considering a 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Id. (quoting Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiffs, as the

party seeking to invoke jurisdiction, have the burden of establishing that jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 114 S. Ct. 1673, 1675 (1994).

**B. 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of

factual allegations. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. <u>See</u> <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

**II. Analysis**

**A. Standing**

Defendants argue Plaintiffs lack standing to pursue their requested relief.

A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." <u>Valley Forge College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982); <u>LSO, Ltd. v. Stroh</u>, 205 F.3d 1146, 1152 (9th Cir. 2000). The "irreducible constitutional minimum" of Article III standing has three elements. <u>LSO</u>, 205 F.3d at 1152 (internal quotations omitted). First, the plaintiff must have suffered "an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Second, the plaintiff must show a causal connection between the injury and the conduct complained of; *i.e.,* "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." <u>Id</u>. (quoting <u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26, 41-42 (1976)) (alterations in original). Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a

favorable decision.  Id. at 561.

**1.  Injury-in-Fact and Causation**

Defendants argue the non-California Plaintiffs fail to allege facts sufficient to demonstrate they suffered an injury in fact.  They maintain the non-California Plaintiffs allege they bought the product, used it and reported no problems.  Furthermore, they never sought to return the product or requested a refund, nor were they denied a refund.  Defendants maintain Plaintiffs base their claims on a theoretical risk of harm to birds and other wildlife which is not sufficient to establish Article III standing and do not claim personal injury or economic harm.  Further, Defendants argue Plaintiffs seek relief based upon a hypothetical "benefit of the bargain" theory.

Defendants also argue the Cypherts' claims likewise fail for lack of standing.  Specifically, they argue the Cypherts' pre-January 2010 purchases fail for the same reasons the non-California Plaintiffs' claims fail, because they seek to recover damages based on a hypothetical injury.  They further argue Plaintiffs claims arising out of their January 2010 bird food purchase fail because the Cypherts fail to allege causation.  Defendants contend the January 2010 purchase falls outside the timeframe in which the pesticides were being applied to the wild bird food.[2]  Additionally, they argue the Cypherts allege their domestic birds died but fail to allege the pesticides caused their deaths and do not seek damages associated with the loss of their birds.

In opposition, Plaintiffs argue they have standing to allege their claims because they paid money for "premium" bird food that was worthless bird poison.  Plaintiffs allege they would not have purchased Morning Song Bird Food had they known it was so toxic it had to be disposed of by burial away from bodies of water.  They argue standing is satisfied where, as here, the allegations show that the plaintiff purchased a product he would not have purchased but for a defendant's deception.

---

[2]Defendants maintain the pesticides were being applied to the bird food from 2005 to 2008, and rely on the allegations of the complaint that state SMG contacted the EPA about its use of the pesticides in March 2008.

The Ninth Circuit has recognized the "benefit of the bargain" theory as a viable basis for standing. See Chavez v. Blue Sky Natural Beverage Co., 340 Fed.Appx. 359 (9th Cir. 2009). In Chavez, the plaintiff alleged he purchased Blue Sky soda instead of other brands because Blue Sky represented it was a New Mexico company, when in fact, the soda was not produced or bottled in New Mexico. Id. The plaintiff alleged he lost money when he purchased the soda because he did not receive what he paid for. Id.

Here, Plaintiffs allege Defendants manufactured, marketed and sold wild bird food that contained pesticides known to be poisonous to birds. Amended Complaint ¶¶ 2, 3. Plaintiffs purchased the toxic bird food. Id. ¶ 7. They further allege they would not have purchased the bird food if they were aware the food contained pesticides hazardous to birds. Id. 7, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29. Plaintiffs allege they suffered an economic injury because they spent money to purchase the bird food which was worthless because it was not fit for consumption by birds. Id. ¶ 30. The Court finds Plaintiffs sufficiently allege an injury in fact to support standing.

Additionally, Plaintiffs allege Defendants issued misleading statements regarding the pesticides and the dangers posed to animals. Id. ¶ 40. They further allege many retailers did not remove the products from their shelves and consumers continued to use the products without being apprised of the hazards they posed. Id. ¶ 41. Plaintiffs also allege they believe Defendants continued to use pesticides after they issued the "Fellow Bird Lover" letter. The letter explained the bird food contained "certain insect controls." Amended Complaint ¶ 40. Plaintiffs allege the Cypherts used the bird food in their aviary and less than 24 hours later all but eight of their 100 zebra finches were dead. Id. ¶ 15. In attempt to determine what killed the birds they quarantined field mice and fed them the bird food, which resulted in the death of all the mice. Id. Additionally, SMG tested feed samples of the bird food and reported "normal" levels of pesticides. Id. ¶ 16.

The Court finds Plaintiffs sufficiently allege causation to support the claims regarding the Cypherts. Thus, Plaintiffs allegations how injury in fact and causation as required for standing.

12cv1592

## 2. Injunctive Relief

Defendants also argue Plaintiffs fail to plead facts to support any entitlement to injunctive relief.  A party seeking injunctive relief "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, noy conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." <u>Summers v. Earth Island Institute</u>, 555 U.S. 488, 493 (2009) (quoting <u>Friends of Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-181 (2000)).  Additionally, he must show he is "realistically threatened by a *repetition* of the violation."  <u>Gest v. Bradbury</u>, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting <u>Armstrong v. Davis</u>, 275 F,.3d 849, 860-861 (9th Cir. 2001)).

Defendants maintain Plaintiffs were not actually injured by Scotts' conduct and cannot show they will again be wronged in a similar way, and Plaintiffs do not assert any threat of future harm.

Plaintiffs argue they have standing to seek injunctive relief by virtue of Defendants' continued sales of hazardous bird food.  Plaintiffs maintain Defendants ignore the "voluntary cessation" doctrine.  They argue their allegations preclude a finding that "the reform of the defendant[s] [is] irrefutably demonstrated and total."  Opp. at 14.

In reply, Defendants maintain they are not claiming the relief is moot, instead, they allege the claim for injunctive relief fails under settled principles of standing.  Defendants argue Plaintiffs do not allege, and can not allege, Defendants continue to use the pesticides at issue in this action. They further argue Plaintiffs' vague allegations that Defendants continue to use other unidentified pesticides are insufficient to support a claim in that they fail to show Plaintiffs are entitled to any relief based upon Defendants' use of the unidentified pesticides.  Specifically, Defendant maintain Plaintiffs fail to identify what pesticides they are referring to, what products are implicated, what risks were determined, what laws were violated, or whether the use of the unidentified pesticides was improper or unlawful in any way.

The complaint alleges Defendants were criminally penalized for its action in knowingly manufacturing, marketing and selling wild bird food containing harmful pesticides toxic to birds and other wildlife. Amended Complaint ¶¶ 2, 36. Plaintiffs further allege, Defendants concealed the identities of the pesticides contained in the bird food and concealed the danger the pesticides posed to animals. Id. ¶¶ 6, 40. They also allege, they believe Defendants continued to treat the seeds with pesticides after it issued its "Fellow Bird Lover" letter. Id. ¶ 6.

Plaintiffs allegations adequately show a threat of injury in fact and a favorable decision will redress the injury. They further allege a repetition of the violation. Accordingly, the Court finds Plaintiffs sufficiently allege standing to seek injunctive relief.

**B. Failure to State Valid Claims**

**1. Actual Injury**

Defendants argue counts 1 and 3 through 14 of the complaint should be dismissed because Plaintiffs failed to plead the element of an actual injury caused by Scotts.

Plaintiffs argue they sufficiently allege "injury in fact" as a direct result of Defendants' misconduct. They maintain Defendants defrauded Plaintiffs into paying money for something that was worse than worthless, food so hazardous to birds and other wildlife it was supposed to be buried away from bodies of water. Plaintiffs bargained for food to nourish birds and got poison instead.

**a. Consumer Protection Laws**

Defendants argue each of the consumer protection laws cited in the complaint, counts 3 through 11, require an actual injury caused by a defendant's allegedly unfair conduct and Plaintiffs fail to allege injury.

Plaintiffs argue each of the consumer fraud statutes authorizes consumers to bring an action where, as here, they purchased a product and suffered actual damages as a result of the defendant's alleged deceptive business practice.

**i. California Claims - Counts 3 though 5**

Plaintiffs seek relief under the CLRA, UCL and FAL which all permit benefit of the

8

bargain damages. See Koh v. S.C. Johnson & Son, Inc., 2010 WL 94265 (N.D.Cal. Jan. 6, 2010); Hall v. Time, 158 Cal.App.4th 847, 854 - 55 (2008). As discussed above, Plaintiffs allege an injury based upon a "benefit of the bargain" theory. Accordingly, they sufficiently state an injury to support a claim under the CLRA, UCL and FAL.

### ii. Arkansas Claims - Count 6

Plaintiffs assert a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code section 4-88-10. Amended Complaint at 42 - 44. Under the ADTPA " actual injury is sustained when the product has actually malfunctioned or the defect has manifested itself." Wallis v. Ford Motor Co., 362 Ark. 317, 328 (2005). The complaint includes no allegations of "malfunction" to support the ADTPA claim or that the defect manifested itself. As such, Plaintiffs fail to sufficiently allege a claim under the ADTPA.

### iii. Illinois Claims - Count 7

Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, an individual suffers an actual loss "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" Kim v. Carter's Inc., 598 F.3d 362 (7th Cir. 2010) (quoting Mulligan v. QVC, Inc., 382 Ill.App.3d 620 (2008)). Plaintiff William Chapman, a domiciliary and citizen of Illinois purchased Morning Song Bird Food from 2005 through 2011, and the labels on the products he purchased omitted information about the product containing pesticides. Amended Complaint ¶ 18. Plaintiff Chapman alleges he would not have purchased the bird food had he been notified the food was hazardous to birds or had the products contained warning about pesticides. Id. Therefore, Plaintiffs state a claim under the ICFA.

### iv. Kentucky Claims - Count 8

The Kentucky Consumer Protection Act ("KCPA") permits a consumer who suffers "an ascertainable loss of money or property" to recover damages against the seller. Ky. Rev. Stat. Ann. § 367.220(1). A consumer may recover the benefit of the bargain under

the KCPA.  See Ford Motor Co. v. Mayes, 575 S.W.2d 480 (Ky.App. 1978).  Plaintiffs David Graham and Leanne Fox, citizens of Kentucky, both allege they purchased Morning Song Bird Food between 2005 and 2008.  Amended Complaint ¶ 20, 21.  They further allege the label on the products omitted information about the bird food containing pesticides harmful to birds and other wildlife, and he would not have purchased the bird food had he been notified of the pesticides.  Id.  Plaintiffs sufficiently allege injury to state a claim under the KCPA.

**v.  Minnesota Claims  - Count 9**

Plaintiffs assert a claim under the Minnesota Consumer Fraud Act ("MCFA"), Minnesota Statutes sections 325F.68 and 325F.69.  Amended Complaint at 48 - 50. Plaintiffs must show an injury to recover under the statute.  See K.A.C. v. Benson, 527 NW.2d 553 (Minn. 1995).

Plaintiffs Marguerite Wolfgram and Ellen Larson, citizens of Minnesota, allege they purchased Morning Song Bird Food between 2005 and 2008 and the labeling on the product omitted the warning regarding pesticides contained therein.  Amended Complaint ¶¶ 22, 23. They further allege they would not have purchased the product if they knew it was hazardous to birds or if it had warning about pesticides.  Id.  Plaintiffs sufficiently allege injury to state a claim under the MCFA.

**vi.  Missouri Claims - 10**

The Missouri Merchandising Practices Act ("MMPA") applies the benefit of the bargain rule to determine the ascertainable loss.  See Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 715 (Mo.App. W.D. 2009).  Plaintiffs Margaret Brumfeld and Barbara Corwin, citizens of Missouri, allege they purchased Morning Song Bird Food and the labeling on the products omitted that the food contained pesticides toxic to fish, birds and other wildlife.  Amended Complaint ¶¶ 24, 25.  They further allege they would not have purchased the bird food had they known it was hazardous to birds or if it including warnings about the pesticides.  Id.  Plaintiffs state an injury under the MMPA.

//

### vii.  New Mexico Claims (11)

Plaintiffs assert a claim under New Mexico's Unfair Practices Act ("UPA"). Amended Complaint ¶¶ 53 - 55.  Proof of monetary damages is not an essential element of the UPA. <u>Lohman v. Daimler Chyrsler</u>. 142 N.M. 437, 446 (N.M.App. 2001). Plaintiffs Agnes Borchet, Edith Salkeld and Billy Kloeppel, citizens of New Mexico, allege they purchased Defendants' bird food from 2005 through 2011 and the products labeling omitted information regarding the food having pesticides harmful to birds.  Amended Complaint ¶¶ 26, 27, 28. Plaintiff Salkeld noticed an unusual number of bird deaths.  <u>Id.</u> ¶ 27.  Plaintiffs allege they would not have purchased the products had they known it was hazardous to birds or had the products contained the warnings regarding the pesticides. <u>Id.</u> ¶¶ 26, 27 28.  New Mexico permits an award of damages upon these allegations.  <u>See</u> <u>Lohman</u>, 142 N.M. at 446.

### b.  RICO Claims

Defendants maintain Plaintiffs' RICO claim requires proof of actual monetary loss. To support a claim under RICO, a plaintiff must allege a concrete financial loss, but financial loss alone is insufficient.  <u>Canyon County v. Syngenta Seeds, Inc.</u>, 519 F.3d 969, 975 (9th Cir. 2008).  Plaintiffs must plead "harm to a specific business or property interest."  <u>Id.</u>

Plaintiffs argue their damages are the same under the two accepted theories of damages (1) "out of pocket" losses and (2) "benefit of the bargain" - they want their money returned.  "[ A] consumer  who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money."  <u>Id.</u>  Plaintiffs allege they spent money to purchase worthless bird food.  As such, they sufficiently allege a concrete financial loss and, therefore, state a claim under RICO.

### c.  Express and Implied Warranty Claims

Defendants argue Plaintiffs fail to allege facts showing they suffered any actual injury as a result of Scotts' alleged conduct, and therefore fail to allege concrete injury to support their breach of express and implied warranty claims arising under California and

Missouri law. They assert their arguments in support of their request to dismiss the complaint for lack of standing demonstrate Plaintiffs fail to allege injury as required of the breach of warranty claims.

As discussed above, the Court finds Plaintiffs sufficiently allege they suffered an actual injury. Accordingly, Defendants motion to dismiss the breach of warranty claims is DENIED.

**2. Statute of Limitations**

Defendants argue counts 1 through 5, 7, 8, 11 through 13 and 15 through 17 are barred by applicable statutes of limitations.

Defendants maintain count 2 (MMWA), count 12 (breach of express warranty), and count 3 (breach of the implied warranty of merchantability) are governed by a four year statute of limitations and count 8 (KCPA) includes a two year limitations period. They further maintain the limitations period for all those claims are triggered when the violation of law occurs, regardless of when the aggrieved party became aware of the violation. Defendants argue that under Plaintiffs' theory, the alleged violations occurred when Defendants tendered bags of wild bird food containing the pesticides to consumers and Scotts discontinued the use of the pesticides and halted all shipments containing pesticides by March 12, 2008. Defendants, therefore, argue the statute of limitations for counts 2, 8, 12, and 13 began to run on or around March 12, 2008. Plaintiffs' claims under count 8 were barred in 2010, given the two year limitations period. Claims under counts 2, 12 and 13 were barred as of March 12, 2012, given the four year statutes of limitations. Plaintiffs filed their first complaint on June 27, 2012 beyond the limitations period.

Defendants maintain count 1 (RICO), 4 (UCL), and 11 (UPA) are governed by four year statues of limitations. Additionally, count 3 (CLRA), count 5 (FAL), count 7 (ICFA), count 15 (intentional misrepresentation) and count 17 (unjust enrichment) are governed by three year statutes of limitations, and count 16 (negligent misrepresentation) is governed by a two year limitations period. Defendants further maintain the statutes of

limitations began to run when Plaintiffs knew or should have known about their alleged injuries. Defendants argue that although Plaintiffs allege they did not receive or see the "Fellow Bird Lover" communication prior to 2012, they never allege or attempt to assert that they were unaware of Scotts' voluntary recall beginning in March 2008. Further, they argue Plaintiffs allege they were regular purchasers of wild bird food and stopped buying Scotts' wild bird food in 2008, the year the recall was conducted. Defendants contend this confirms Plaintiffs were aware of the recall and knew or should have known about their claimed injuries. Given the applicable limitations periods, Count 16 was barred in 2010 and Counts 3, 5, 7, 15 and 17 were barred in 2011.

In opposition, Plaintiffs do not dispute the various limitations periods set forth by Defendants. Rather, they argue Defendants try to push their burden to prove the affirmative defense of untimeliness on Plaintiffs when they argue Plaintiffs do not assert they were unaware of Scotts' voluntary recall.

Plaintiffs argue Defendants cannot satisfy the discovery rule. Plaintiffs further allege they are entitled to equitable tolling based upon Defendants' fraudulent concealment.

**a. Discovery Rule**

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (2005). To survive a motion to dismiss pursuant to the discovery rule, "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Id. Plaintiffs bears the burden of showing reasonable diligence.

Plaintiffs maintain there is no allegation that Plaintiffs stopped buying Scotts' wild bird food in 2008. In fact, they contend, some Plaintiffs expressly allege they continued purchasing the bird food after 2008. See Amended Complaint ¶¶ 13 - 15, 17 - 18, 24 -

27. Plaintiffs further argue the voluntary recall was not a "recall", and the "Fellow Bird Lover" letter neither mentions recall nor identifies the pesticides Defendants used or the time period of their use, or contains any offer to refund consumers' money or warn against feeding birds any unused product. Plaintiffs maintain they were not aware of the "Fellow Bird Lover" letter before 2012. Id. ¶ 2. Even if they did, they argue no level of diligence would have enabled them to discover the fraud as evidenced by the fact the government did not discover and expose Defendants' knowing conduct until 2012. See id. ¶ 90.

In reply, Defendants argue Scotts and the FDA publicly disclosed the recall and it was the subject of publicity.

While the "Fellow Bird Lover" letter and recall may have given Plaintiffs a reason to suspect wrongdoing, Plaintiffs clearly allege they were unaware of the letter when it was released in 2008. Id. ¶ 29. Plaintiffs further allege they only became aware of the Defendants' conduct when SMG pled guilty to 11 criminal misdemeanors relating to the misuse and misbranding of various pesticides in January 2012. Id. ¶ 38. The Court finds Plaintiffs, with the exception of the Cypherts, had reason to discover Defendants' conduct when Defendants pled guilty to the criminal charges regarding the misbranding. The Cypherts, however, could have discovered the injury sooner. They allege they had the bird food tested after a large number of their finches and captured field mice died after consuming the wild bird food. This clearly gave them reason to investigate and discover Defendants' conduct. The events took place in January 2010. The complaint was filed June 27, 2012. Accordingly, the negligent misrepresentation claim, which has a two year limitations period, is untimely as to the Cypherts. See Ca. Civ. Code § 339. The remaining claims are not barred as untimely pursuant to the discovery rule.

**b. Fraudulent Concealment**

Because the claims, with the exception of the negligent misrepresentation claim as to the Cypherts, are timely under the discovery rule, the Court will not address fraudulent concealment as to those claims. However, the Court must determine whether the negligent misrepresentation claim is tolled by Defendants fraudulent concealment.

To establish that fraudulent concealment tolled the applicable statute of limitations, "the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." Baker v. Beech Aircraft Corp., 39 Cal.App.3d 315, 321, 114 Cal.Rptr. 171 (1974).

Although Plaintiffs argue the "Fellow Bird Lover" letter was designed to deceive the public as to the severity of the pesticide problem and the March 2008 recall was not actually a recall, the allegations demonstrate the Cypherts suspected some improper conduct involving pesticides use by SMG in January 2010. Plaintiffs clearly had presumptive knowledge of the facts to put them on inquiry as to their injury. Accordingly, the negligent misrepresentation claim as to the Cypherts is untimely.

### 3. RICO Claim - Count 1

Defendants argue the RICO claim must be dismissed on independent bases under Rule 12(b)(6). To state a claim under RICO, a plaintiff must allege facts to establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sanford v. MemberWorks, Inc., 625 F.3d 550 (9th Cir. 1987).

Defendants argue the RICO allegations do not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and fails to meet the "separate and distinct" test. Defendants also argue Plaintiffs conspiracy claim under section 1962(d) fails because the RICO claim under section 1962 fails.

### a. Rule 9(b)

Rule 9(b) states, in relevant part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, Rule 9(b) requires that parties averments must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003). Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements

of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud." <u>Kaplan v. Rose</u>, 49 F.3d 1363, 1370 (9th Cir. 1994); <u>Vess</u>, 317 F.3d at 1106 (A plaintiff must set forth "the who, what, when, where and how" of the alleged misconduct."). Second, the Rule requires that the complaint "set forth an explanation as to why the statement or omission complained of was false and misleading." <u>Yourish v. California Amplifier</u>, 191 F.3d 983, 993 (9th Cir. 1999).

Defendants argue the RICO claim fails to allege the what, where, who, when and how of the purported predicate acts of racketeering activity. Specifically, they argue the complaint fails to describe with particularity the content of any individual communication or document. They maintain the only communication discussed with particularity in the complaint is the "Fellow Bird Lover" letter, and Plaintiffs allege they did not read the communication. As such, they argue, Plaintiffs fail to specify any particular acts of wire or mail fraud to which they were exposed.

Defendants further argue Plaintiffs lump all of the defendants together instead of attributing specific conduct to individual defendants.

Plaintiffs argue they meet Rule 9(b)'s heightened pleading standard. They maintain the allegations detail the criminal scheme including what Defendants fraudulently misrepresented and concealed about their products and the damages they caused to Plaintiffs and the class. They further maintain the allegations provide the names of the pesticides, and that Plaintiffs would not have purchased the products had they known it was bird poison. Plaintiffs also contend they allege that they relied on the labeling of the products that stated the products were intended as food for birds, and the labels omitted material information. Additionally, they contend the allegations include that SMG confessed to knowingly and unlawfully applying Storcide II to Morning Song Bird Food. Plaintiffs also argue they allege the date, origin, destination and descriptions of specific items mailed and transmitted to support the mail fraud and wire fraud allegations. They also argue they sufficiently allege each Defendant's role in the scheme.

In their complaint, Plaintiffs allege Defendants' engaged in an "unlawful and unethical scheme to knowingly market and sell toxic bird food to millions of consumers throughout the United States. Amended Complaint ¶ 1, 35. Plaintiffs further allege SMG admitted to knowingly manufacturing, marketing and selling its wild bird food marketed under various names, including Morning Song, Country Pride, Scotts' Songbird Selections and Scotts' Wild Bird Food containing harmful amounts of pesticides, including Storcide II and Actellic 5E, known to be toxic to birds and other wildlife. Id. ¶¶ 2, 3, 36, 37. In March 2008, they sent letters to the FDA purported to be notices of a voluntary recall and issued the "Fellow Bird Lover" letter. Id. ¶¶ 5, 6, 39, 40. Plaintiffs also allege they purchased the wild bird food and the labeling of the food omitted material information that the food contained pesticides toxic to birds and other wildlife and they would not have purchased the bird food if they were notified of the hazardous contents. Id. ¶¶ 13, 17 - 28. Plaintiffs also specifically allege items Defendants caused to be delivered by mail or by a private or commercial interstate carrier and writings, sign, signals and sounds transmitted in interstate commerce by means of wire communications. See id. ¶¶ 82 - 83. Additionally, Plaintiffs allege Defendants SMG and Scotts LLC used Gutwein to manufacture the bird food and SMG used Scotts LLC to market, distribute an/or manufacture the bird food. Id. ¶ 50.

The Court finds Plaintiffs RICO claim meets the heightened pleading standard of Rule 9(b).

**b. "Separate and Distinct"**

"[T]o establish liability under section 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise that is not simply the same 'person' referred to by a different name." Cedrick Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

Defendants argue Plaintiffs fail to plead that Scotts was engaged in a pattern of racketeering through an enterprise separate from itself, its affiliates, its employees or its agents. They contend Plaintiffs allege the "persons" are SMG, Scotts LLC and

17

unidentified employees of SMG, Scotts LLC and Gutwein and the alleged enterprise is Gutwein, SMG's wholly owned subsidiary and Scotts LLC's sister company. These allegations fail to satisfy the "distinctness" requirement of section 1962(c).

Plaintiffs argue Defendants do not challenge the sufficiency of Plaintiffs' RICO claims insofar as it alleges an association-in-fact enterprise primarily comprised of Gutwein and Scotts LLC. They maintain Gutwein, a wholly-owned subsidiary of SMG is sufficiently distinct because Defendants and the enterprise(s) are undeniably different legal entities. Plaintiffs argue SMG's criminal activities demonstrate the sense of impunity arising from its use of separate legal entities, including Gutwein, through which it conducted its business. They maintain SMG's use of Gutwein empowered Defendants to commence the fraud and perpetuate it because they believed doing so would enable them to reap the benefits of the scheme, while shielding themselves from liability.

In reply, Defendants argue Plaintiffs allegations fail to satisfy the distinctness requirement because Gutwein is not distinct from SMG as a wholly owned subsidiary. They further argue the associated-in-fact enterprise is rejected because Scotts LLC and Gutwein are subsidiaries of SMG, so they are both part of the alleged RICO "person." Defendants argue Plaintiffs' "liberal" construction of the statue cannot be contorted to make every civil action involving any alleged misrepresentations to become a racketeering claim. They also argue Plaintiffs' argument that the corporate affiliates are sufficiently distinct because they are different legal entities, which relies on Cedric Kushner, is specious in light of the fact the Supreme Court specifically excluded from its holding what Plaintiffs now contend. Defendants maintain "something more" than formal corporate separation is necessary to meet the "distinctness" requirement and Plaintiffs fails to allege Gutwein did "something more."

In their surreply, Plaintiffs argue Defendants advocate a "made-up rule" for distinctness. They also argue Defendants demand from the Court an unprecedented holding, that no parent and subsidiary could ever be sufficiently distinct. Plaintiffs maintain Gutwein is particularly distinct as it is involved in an industry that is completely

distinct from the industry in which all of the other subsidiaries operate.[3]

Defendants, in response, maintain they do not seek to foreclose all circumstances under which a wholly-owned subsidiary could be sufficient distinct for purposes of a RICO enterprise. They argue corporate separation among affiliates, standing alone is not sufficient to satisfy section 1962(c), but that "something more" must be demonstrated.

This Court finds its unnecessary to determine whether "something more" is required to meet the "distinctness" requirement, here, because Plaintiffs' allegations sufficiently allege SMG is distinct from Gutwein. Plaintiffs allege SMG is a publicly traded Ohio corporation with extensive SEC reporting obligation and a board of directors, self-described as a "holding company." Amended Complaint ¶¶ 31, 47, 50. SMG acquired Gutwein, a private Indiana corporation with no board of directors or SEC reporting requirements, in November 2005. Id. ¶ 50. Plaintiffs allege SMG and Scotts LLC used Gutwein to manufacture Morning Song Bird Food and SMG used Scotts LLC to market, distribute and/or manufacture the bird food. Id.

Therefore, Plaintiffs sufficiently allege a claim under RICO.

**4. Express Warranty and Magnuson-Moss Warranty Claims - Counts 2 and 12**

Defendants argue Plaintiffs fail to plead breach of an express warranty and fail to plead a claim under the Magnuson-Moss Warranty Act ("MMWA").

**a. Express Warranty**

Defendants maintain Scotts never claimed or warranted that no pesticides were used in its production or storage of wild bird food. Defendants contend that Plaintiffs allege five so-called express warranties that they allege Scotts breached :

> (1)Morning Song® Premium Year-Round Wild BirdFood is a mixture of song-birds' favorite seeds, such as sunflower seed, safflower seed and white millet. This combination of seeds can be offered year-round to attract and retain the most appealing variety of wild birds.

> (2) Attract your favorite birds[:] Cardinals[;] Finches[;] Chickadees[;] Nuthatches[;] Titmice[;] Jays[.]

---

[3]Plaintiffs maintain Guwein is engaged in manufacturing and marketing of wild bird food while the other subsidiaries are operate lawn and garden products..

(3) Essentials for Attracting a Variety of Wild Birds. Food: Offer a fresh, consistent food supply to attract and keep wild birds in your backyard. For best results, use separate feeding stations filled with different Morning Song food mixes, suets, and pressed seed.

(4) INGREDIENTS: Milo, White Millet, Black Oil Sunflower, Safflower[.]

(5) GUARANTEED ANALYSIS: Crude Protein (min) 9%[;] Crude Fat (min) 4%[;] Crude Fiber (max) 6%[;] Moisture (max) 12%[.]

Defendants argue Scotts statements that the wild bird food includes a "mixture of song-birds' favorite seeds," attracts the "most appealing variety of wild birds," and appeals to customers "favorite birds" do not identify specific characteristics of Scotts' wild bird food. Instead, they amount to "non-actionable puffery." They further argue instructions on how to obtain the "best results" are also puffery. Defendants contend Plaintiffs cite the wild bird food ingredients list and guaranteed analysis as express warranties but do not allege that ingredients were inaccurate. They argue Plaintiffs' express warranty claim should be dismissed because it fails to allege an express warranty or a breach.

Plaintiffs argue they identified with specificity the express warranties made by Defendants to purchasers of Defendants' wild bird food on every package of such food, the overarching thrust of which was that the "food" was fit to nourish birds and other wildlife. They maintain because the food was, in fact, hazardous to birds and other wildlife, Defendants breached their express warranties to Plaintiffs.

To state a claim for breach of express warranty under California law, a plaintiff must allege (1) an affirmation of fact or promise relating to the goods sold, (2) that was part of the basis of the bargain, and (3) a breach of the promise. See McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1176 (9th Cir. 1997 (citing Keith v. Buchanan, 173 Cal.App.3d 13 (1985)). Descriptions of goods that are made part of the basis of the bargain creates a warranty that the good conforms to the description. Cal. Com. Code § 2313(1)(b).

This Court agrees with Defendants that statements about appealing a variety of wild birds and the "best results" language amount to "nonactionable puffery." See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997). The ingredients list

and the guaranteed analysis amount to affirmations of fact regarding the wild bird food. However, Plaintiffs set forth no allegations demonstrating Defendants breached the promise that the wild bird food contained the ingredients listed or that it meets the guaranteed analysis. Therefore, Plaintiffs fail to state a claim for breach of express warranty.

### b. Magnuson-Moss Warranty Act

Defendants also argue Plaintiffs' Magnuson-Moss warranty claims fails. They maintain Plaintiffs never allege a federal MMWA violation separate from their generic state law warranty claims. Defendants contend Plaintiffs do not allege Scotts warranted the wild bird food as "defect free" or that the food would "meet a specified level of performance over a specified period of time." Motion at 37.

In opposition, Plaintiffs argue they adequately plead violations of the MMWA because they identify with specificity the express warranties made by Defendants to purchasers of their wild bird food on every package of such food.

Plaintiffs MMWA claim relies on the insufficiently pled breach of express warranty claims. As such, the MMWA, likewise, fails to state a claim and is subject to dismissal.

### 5. Counts 3 through 10 and 15 and 16

Defendants argue counts 3 through 10, and 15 and 16 fail because Plaintiffs do not plead their claims with the specificity required under Rule 9(b). Claims grounded in fraud must be set forth allegations "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess, 317 F.3d at 1106.

Defendants maintain Plaintiffs generally allege Scotts "misrepresented various material facts regarding the quality and character" of its wild bird food through "various advertising and marketing" disseminated by Scotts "officers, agents, representatives, servants or employees." They argue these general allegations fail to specify what advertising and marketing they viewed, and where they viewed the advertising and marketing, and how they viewed the misleading advertising and marketing. Defendants

also argue Plaintiffs do not allege the specific content of the allegedly misleading advertising and marketing they viewed, which specific representations were false or which information was omitted from the representations provided.

Plaintiffs argue they meet Rule 9(b)'s heightened pleading standard. They maintain the allegations detail what Defendants fraudulently misrepresented and concealed about their products and the damages they caused to Plaintiffs and the class. They further maintain the allegations provide the names of the pesticides, and that Plaintiffs would not have purchased the products had they known it was bird poison. Plaintiffs also contend they allege that they relied on the labeling that the products were intended as food for birds, and the labels omitted material information. Additionally, they contend the allegations include that SMG confessed to knowingly and unlawfully applying Storcide II to Morning Song Bird Food.

As discussed above, the complaint alleges SMG admitted to knowingly manufacturing, marketing and selling its wild bird food marketed under various names, including Morning Song, Country Pride, Scotts' Songbird Selections and Scotts' Wild Bird Food which contained harmful amounts of pesticides, including Storcide II and Acelic 5E, known to be toxic to birds and other wildlife. Id. ¶¶ 2, 3, 36, 37. Plaintiffs further allege, in March 2008, Defendants sent letters to the FDA purported to be notices of a voluntary recall and issued the "Fellow Bird Lover" letter. Id. ¶¶ 5, 6, 39, 40. Plaintiffs also allege they purchased the wild bird food and the labeling of the food omitted material information that the food contained pesticides toxic to birds and other wildlife and they would not have purchased the bird food if they were notified of the hazardous contents. Id. ¶¶ 13, 17 - 28. The Court finds Plaintiffs sufficiently allege the "who, what, where, how and why" of Defendants' misconduct to sufficiently give them notice so they may adequately defend against the allegations. Accordingly, Plaintiffs meet the heightened pleading standard of Rule 9(b).

//

**6. Unjust Enrichment - Count 17**

Defendants argue unjust enrichment is not a proper cause of action under California law, and as such, Plaintiffs' unjust enrichment claim should be dismissed. Plaintiffs argue California recognizes unjust enrichment claims where a plaintiff has paid money by fraud or mistake.

There is a split of authority as to whether unjust enrichment is a recognized cause of action under California law. *See* In re Toyota Motor Corp., 754 F.Supp.2d 1145, 1194 (2010)("[U]njust enrichment is not a proper cause of action under California law."); *see also* Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment."); *but see* Lectodryer v. Seoulbank, 77 Cal. App. 4th 723 (2000) (permitting an unjust enrichment claim to stand).

This Court recognizes the split in California authority regarding whether unjust enrichment is a cognizable cause of action. Based upon a thorough examination of the relevant California law, this Court agrees with Defendants that unjust enrichment is not a separate cause of action in California. Accordingly, this Court GRANTS Defendant's 'motion and hereby DISMISSES with prejudice Plaintiffs' claim for unjust enrichment.

**III. Leave to Amend**

Plaintiffs seek leave to amend in the event the Court grants Defendants' motion. Because this Court grants the motions as to certain claims that may be cured by amendment, the Court will provide Plaintiff an opportunity to amend the complaint.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1.  Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the Magnuson-Moss Warranty Act claim (count 2), the Arkansas Deceptive Trade Practices Act claim (count 6), the breach of express warranty claim (count 12), the negligent misrepresentation claim (count 16) at to the Cypherts and the unjust enrichment claim (count 17). The motion is **DENIED** as to the remaining

23

claims.

2. Plaintiffs may file an amended complaint that addresses the deficiencies noted **on or before November 4, 2013**.

DATED:  September 30, 2013

JOHN A. HOUSTON
United States District Judge