1

2

3

4

5

6

7

8                         **UNITED STATES DISTRICT COURT**

9                       **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   IN RE MORNING SONG BIRD FOOD      )   Lead Case
     LITIGATION                        )   No. 12cv1592 JAH(RBB)
12                                     )
                                       )   **ORDER GRANTING PLAINTIFFS'**
13                                     )   **MOTION TO COMPEL PRODUCTION OF**
                                       )   **DOCUMENTS [ECF NO. 107]**
14                                     )
                                       )
15                                     )
     _____   )
16

17        On November 17, 2014, Plaintiffs filed a Motion to Compel

18   Production of Documents [ECF No. 107], requesting an order

19   compelling Defendants to produce certain studies conducted by third

20   parties regarding the toxicity of Morning Song Bird Food. ([Pls.']

21   Mot. Compel Attach. #1 Mem. P. & A. 2, ECF No. 107.)  Defendants

22   filed their Opposition to Plaintiffs' Motion [ECF No. 143], and

23   Plaintiffs filed a Reply Memorandum in Support of Plaintiffs'

24   Motion [ECF No. 147].  A hearing on Plaintiffs' motion was set for

25   January 12, 2015.  The Court determined that this matter was

26   suitable for resolution without oral argument, and the motion was

27   submitted on the parties' papers.  S.D. Civ. L. R. 7.1(d)(1).  For

28

1  the following reasons, Plaintiffs' Motion to Compel Production is
2  GRANTED.

3                    **I.   FACTUAL BACKGROUND**

4       This nationwide class action arises from the Plaintiffs'
5  alleged purchases of wild bird food marketed by The Scotts
6  Miracle-Gro Company and The Scotts Company LLC ("Scotts").  (Compl.
7  2, ECF No. 10.)  Plaintiffs claim that Scotts's bird food products
8  contained Storcide II and Actellic 5E, pesticides that are
9  poisonous to birds and wildlife, and that the company marketed and
10 sold toxic bird food to consumers throughout the United States.
11 (Id.)

12      In January 2012, Defendants pleaded guilty to federal criminal
13 charges, admitting misuse and misbranding of various pesticides.
14 (Id. at 8.)  They were sentenced to pay a $4 million penalty and
15 make $500,000 in charitable donations to five organizations
16 whose missions are to protect bird habitat environments.  (Id.)
17      Plaintiffs allege that Scotts continued to sell toxic bird
18 food even after it received warnings about the application of the
19 pesticides to its bird food products.  (Id.)

20                      **II.   DISCUSSION**

21 **A.  Discovery Dispute**

22      The discovery dispute involves reports generated by third
23 parties regarding the toxicity of Scotts' products.  In request for
24 production number seventeen, Plaintiffs sought "[d]ocuments
25 discussing toxicity of pesticides in Wild Bird Food Product or
26 potential or actual effects or pesticides on birds or other
27 wildlife."  ([Pls.'] Mot. Compel Attach. #8 Defs.' Resp. Pls.'
28 Third Request Produc. 15, ECF No. 107.)  On July 11, 2014, in

response to the request, Defendants raised general objections and also claimed the attorney-client communication privilege and the attorney work-product doctrine shields these documents.  (Id. at 16.)  Nonetheless, Defendants stated they would "conduct a reasonable search in the snapshots of eighteen primary custodians[] . . . and . . . also conduct a targeted search of files organized by department and/or specific custodians to produce any non-privileged documents identified after reasonable inquiry regarding the toxicity of Storcide II and Actellic 5E when applied to wild bird food."  (Id.)  On August 1, 2014, Scotts produced a privilege log, which did not identify the third-party reports at issue in this motion.  ([Pls.'] Mot. Compel Attach. #2 Decl. Alex Lumaghi 2,[1] ECF No. 107.)

    After the parties met and conferred about the documents listed in the privilege log, Defendants agreed to produce previously withheld pre-sentencing materials with redactions.  (Id.) Plaintiffs claim that during their review of these documents, they noticed references to the reports prepared by Environ International Corporation ("Environ") and Exponent, Inc. ("Exponent") regarding the toxicity of pesticides used in Defendants' bird food.[2]  (Id.) Plaintiffs requested that the third-party reports be produced. Defendants responded that the reports were protected by the attorney work-product doctrine or the attorney-client communication

_____

[1] The citation is to the page number assigned by the Court's electronic case filing system.

[2] Environ and Exponent are independent environmental consulting firms with expertise in ecological and environmental risk assessment and evaluation.  (Pls.' Mot. Compel Attach. #5 Ex. 4, at 1-2 (Letter from Steven Solow to U.S. Probation Officer Schal K. Boucher dated June 6, 2012).)

privilege because they were "draft expert reports or communications prepared by Exponent or Environ at the request of counsel." (<u>Id.</u> at 3.)  The parties were unable to resolve the dispute informally, and this motion to compel followed.

**B.  Timeliness of the Motion**

Defendants oppose Plaintiffs' Motion to Compel as time barred, arguing that the current dispute arose in June 2014. ([Defs.'] Mem. P. & A. Opp'n Pls.' Mot. Compel 11,[3] ECF No. 143.)  Defendants argue that Plaintiffs seek discovery in response to request for production number seventeen, to which Scotts served a response on July 11, 2014. (<u>Id.</u> at 12-13.)  Thus, they contend that Plaintiffs were required to bring their motion on or before August 10, 2014. (<u>Id.</u> at 13.)

Plaintiffs reply that because Defendants failed to identify the Environ or Exponent reports on the privilege log produced in July of 2014, Plaintiffs were not aware of the documents and thus could not bring this Motion. ([Pls.'] Reply Mem. Supp. Pls.' Mot. Compel 2, ECF No. 147.)  Plaintiffs point out that even after they filed the Motion to Compel, Defendants still have not "provided a privilege log that describes any of these documents, a failure that in itself waived any privilege." (<u>Id.</u> at 3 (citing <u>Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court</u>, 408 F.3d 1142, 1149-50 (9th Cir. 2005).)

The Case Management Conference Order in this case states that "[a]ll discovery motions must be filed no later than thirty (30) days following the date upon which the event giving rise to the

---

[3] The Court will cite to Defendants' Opposition using the page numbers assigned by the Electronic Case Filing System.

discovery dispute occurred." (Case Mgmt. Conference Order 1, ECF
No. 70.)  Although Defendants assert that Plaintiffs' motion is
time barred, they don't specify the date giving rise to the
dispute.  According to Scotts, "Plaintiffs likely 'noticed'
discussion of the materials . . . as early as Spring 2013 . . . ."
([Defs.'] Mem. P. & A. Opp'n Pls.' Mot. Compel 13, ECF No. 143.)
Alternatively, Defendants state that even if "Plaintiffs first
'noticed' discussion of the materials in question on September 14,
2014[,] . . . Plaintiffs still waited nearly two months to file
this motion to compel . . . ." (<u>Id.</u>)  The Plaintiffs, however,
state that "[o]n October 16, 2014, defense counsel stated for the
first time that defendants were withholding the Environ and
Exponent documents on the basis that they were . . . attorney
work-product materials and/or privileged attorney-client
communications." ([Pls.'] Mot. Compel Attach. #1 Mem. P. & A. 5,
ECF No. 107.)

The Court is not clairvoyant.  Its Case Management Conference
Order does not define when disparate events give rise to a
discovery dispute.  Scotts, on the other hand, could have clearly
triggered the thirty-day deadline for filing a motion to compel by
listing the withheld documents on a privilege log.  Defendants did
not do so, and their brief does not address the failure to list the
disputed documents on a privilege log.  Instead, they argue that
Plaintiffs were likely aware of the existence of the third-party
reports as early as spring 2013.  ([Defs.'] Mem. P. & A. Opp'n
Pls.' Mot. Compel 13, ECF No. 143.)  Scotts did not disclose the
reports in the privilege log, as required for asserting a
privilege.  Defendants' contention that Plaintiffs should have been

aware of the documents earlier is not synonymous with the existence of a dispute.

Defendants concede they did not produce the presentence materials that mention the Environ and Experion reports until October 13, 2014.  (<u>Id.</u> at 8.)  The parties thereafter attempted to resolve the dispute without the Court's involvement.  Defendants' counsel communicated to Plaintiffs on October 16, 2014, that the materials are protected by the attorney-client and work product privileges.  ([Pls.'] Mot. Compel Attach. #1 Mem. P. & A. 5, ECF No. 107.)  This statement was sufficient to give rise to the pending discovery dispute.

The Court concludes that Plaintiffs' Motion to Compel Production was timely filed on Monday, November 17, 2014.  <u>See</u> <u>United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.</u>, 271 F.R.D. 487, 496 (N.D. Ind. 2010) (holding that because party did not mention the existence of disputed file for seventeen months until the day of the discovery deadline, the discovery request was not untimely).

**C.  Legal Standard**

Rule 37 of the Federal Rules of Civil Procedure enables the propounding party to bring a motion to compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The scope of discovery under the Federal Rules of Civil Procedure is broad.  <u>See, e.g.</u>, <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 668 (N.D. Cal. 1987). Federal Rule of Civil Procedure 26 states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the

> court may order discovery of any matter relevant to the
> subject matter involved in the action.  Relevant
> information need not be admissible at the trial if the
> discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is
> subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  "The party who resists discovery has the

burden to show that discovery should not be allowed, and has the

burden of clarifying, explaining, and supporting its objections."

Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal.

1998).

**D.   Environ and Exponent Reports**

Plaintiffs argue that they are entitled to receive the

toxicity studies conducted by Environ and Exponent, and related

communications because the materials are relevant to the defense in

this action, and Defendants have not established any privilege

applies.  ([Pls.'] Mot. Compel Attach. #1 Mem. P. & A. 4-5, ECF No.

107.)  Plaintiffs note that they are not seeking communications

between Scotts and its counsel because the reports at issue were

generated by independent third parties.  (Id. at 9.)  Additionally,

the Defendants quoted and summarized the reports "in communications

with federal regulators, and in subsequent communications with

prosecutors and others during the criminal proceedings, to argue no

harm resulted from their crimes."  (Id. at 8.)  Therefore,

Plaintiffs contend that any privilege that may have existed was

waived when the disclosure occurred.  (Id. at 9-10.)

Defendants respond that the Environ materials are protected

under the Federal Rule of Civil Procedure 26(b)(4)(D) because they

were prepared in anticipation of litigation by a consulting expert,

1  Dr. DeMott.  ([Defs.'] Mem. P. & A. Opp'n Pls.' Mot. Compel 14, ECF

2  No. 143.)  They acknowledge, however, gaps in service.

> [Dr. DeMott] assisted counsel with the preparation of a
> March 26, 2008 letter to the FDA; provided information to
> counsel to help prepare for a meeting with the EPA; and,
> at the request of counsel, attended and participated in
> one meeting with the EPA in March 2008.  Dr. DeMott's
> work for [Arnold & Porter] concluded in 2008, and he did
> not perform any additional work for Scotts until 2013,
> when he was retained to provide expert analysis to Jones
> Day in connection with the firm's representation of
> Scotts in this putative class action.

9  (Id. at 19 (internal citations omitted).)

10  Similarly, Defendants claim that the Exponent reports are

11  protected by Rule 26(b)(4)(B)-(C) as expert witness materials,

12  including draft reports.  (Id. at 14.)  "Scotts' outside counsel

13  . . . first engaged Dr. Fairbrother — an expert toxicologist — in

14  May 2012 to assist the law firm with its provision of legal

15  services in United States v. The Scotts Miracle-Gro Company (S.D.

16  Ohio Case No. 2:12-cr-24), the criminal matter that was filed

17  against the company in January 2012.  (Id. at 25.)  "Dr.

18  Fairbrother [Principal Scientist in Exponent Inc.'s Ecological and

19  Biological Science practice] concluded her work . . . in August

20  2012.  She did not perform any additional work for Scotts until

21  2013, when Jones Day retained her to provide expert assistance in

22  connection with its representation of Scotts in this civil matter."

23  (Id. at 25-26 (citations omitted).)

24  Plaintiffs reply that Defendants waived any claim of privilege

25  for Environ materials because Dr. DeMott and Environ acted as more

26  than "consulting experts" for Scotts.  (See [Pls.'] Reply 4-6, ECF

27  No. 147.)  They also argue that for both the Environ and Exponent

28  studies, any privilege was waived when Defendants disclosed

8

summaries of the materials to the federal regulators, retailers, and shareholders. (<u>Id.</u> at 7-8.)

    1.  <u>Attorney Work Product Doctrine</u>

    Federal Rule of Civil Procedure 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, those materials may be discovered subject to Rule 26(b)(4) if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." <u>Id.</u>

    Rule 26(b)(4) separately extends protection to experts. Fed. R. Civ. P. 26(b)(4). Rule 26(b)(4) divides experts into categories and "deals separately with each." 8 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2029 (3d ed. 2014). Any experts a party expects to use at trial may be deposed, and disclosure of anticipated testimony is required. Fed. R. Civ. P. 26(b)(4)(A). "Facts known to, or opinions held by, an expert retained 'in anticipation of litigation or to prepare for trial and who is not expected' to testify at trial (sometimes known as a 'consulting' expert) are ordinarily exempt from discovery absent a showing of 'exceptional circumstances.'" <u>Republic of Ecuador v. Mackay</u>, 742 F.3d 860, 866 (9th Cir. 2014) (quoting Fed. R. Civ. P. 26(b)(4)(D)).

"[T]he party seeking work product protection must establish that the material is a document or tangible thing prepared in anticipation of litigation for that party." <u>See</u> 6 James Wm. Moore et al., <u>Moore's Federal Practice</u>, § 26.70[5][a], at 26-454 to 55 (3d ed. 2014) (footnote omitted).  "A mere allegation that the work product rule applies is insufficient to invoke its protection." <u>Id.</u> at 26-455 (footnote omitted).

"The privilege derived from the work-product doctrine is not absolute.  Like other qualified privileges, it may be waived." <u>United States v. Nobles</u>, 422 U.S. 225, 239 (1975).  Waiver occurs when counsel "attempts to use the work-product as testimony or evidence, or reveals it to an adversary to gain an advantage in litigation." <u>United States v. Reyes</u>, 239 F.R.D. 591, 598 (N.D. Cal. 2006); <u>see also</u> <u>Hernandez v. Tanninen</u>, 604 F.3d 1095, 1100 (9th Cir. 2010) ("[Plaintiff] Hernandez produced notes from [attorney] Ferguson's communications with [defendant] that were protected work product, but that constituted a waiver of work product privilege only as to that subject.").

> The work-product doctrine has the purpose of protecting materials not from the rest of the world but only from litigation opponents.  Therefore, voluntary disclosure of work-product materials to a third party does not waive the privilege unless the disclosure, under the circumstances, is inconsistent with the protection of the materials from disclosure to the party's adversary or substantially increases the possibility that the party's adversary will obtain the materials, as when the attorney requests a witness to disclose the information, or when the attorney discloses the information to the court voluntarily or makes no objection when the information is offered, or when the attorney voluntarily discloses protected documents to an adversary.

Paul F. Rothstein & Susan W. Crump, <u>Federal Testimonial Privileges</u> § 11:13, at 916-21 (2d ed. 2014) (footnotes omitted).

10

2.  <u>Scotts' Waiver and Exceptional Circumstances</u>

Scotts summarized the toxicological assessment by Environ in a letter to the U.S. Food and Drug Administration ("FDA") announcing the voluntary recall of Scotts' bird food products. ([Pls.'] Mot. Compel Attach. #3 Ex. 2, at 3-4 (Letter from Michael Lukemire to FDA) (Mar. 26, 2008).)  The letter explained that Scotts performed an evaluation of the risks associated with the recalled products, and described the testing and the conclusions drawn by Environ. (<u>Id.</u>)  Scotts later supplemented its recall notification to the FDA by providing a summary of Environ's reconsideration of its prior evaluation, taking additional information into account.  ([Pls.'] Mot. Compel Attach. #4 Ex. 3, at 1-2 (Email from Andrew Coogle to FDA) (Apr. 10, 2008).)  In 2012, Scotts described the studies performed in 2008 by Environ and a 2012 study by Exponent in comments to the presentence report in the criminal case against Scotts.  ([Pls.'] Mot. Compel Attach. #5 Ex. 4, at 1-2 (Letter from Steven Solow to U.S. Probation Officer Schal K. Boucher) (June 6, 2012).)

"Generally, both attorney-client privilege and work product protection may be waived through voluntary disclosure of a communication to a third party."  <u>Ward v. Equilon Enters., LLC</u>, No. C 09-4565 RS, 2011 WL 2746645, at *3 (N.D. Cal. July 13, 2011) (upholding magistrate judge's finding that defendant waived both attorney-client privilege and work doctrine protection by voluntarily disclosing investigation and report to a third party). A privilege holder cannot selectively waive the privilege for its own benefit but resist disclosure of adverse information.  <u>United States v. Nobles</u>, 422 U.S. at 239-240.

Defendants argue that facts and opinions of consulting experts are typically not discoverable absent a showing of exceptional circumstances. ([Defs.'] Mem. P. & A. Opp'n Pls.' Mot. Compel 16, ECF No. 143.)  They claim that Plaintiffs have not met their burden of demonstrating that extraordinary circumstances exist here. (Id. at 20.)

Rule 26(b)(4)(D) "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." Plymovent Corp. v. Air Tech. Solutions, Inc., 243 F.R.D. 139, 143 (D.N.J. 2007).  Several policy considerations underlie the rule, including, (1) encouraging counsel to obtain necessary expert advice without fear that the adversary may obtain such information; (2) preventing unfairness that would result from allowing an opposing party to reap the benefits from another party's efforts and expense; (3) limiting any chilling effect on the use of experts as consultants if their testimony could be compelled; and (4) avoiding prejudice to the retaining party if the opposing party were allowed to call at trial an expert who provided an unfavorable opinion to the party who first retained them.  See Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc., No. Civ.A. 01-669(MPT), 2002 WL 1906628, at *1 n.3 (D. Del. Aug. 14, 2002) (citing House v. Combined Ins. Co. of Amer., 168 F.R.D. 236, 241 (N.D. Iowa 1996)).

> Courts may find exceptional circumstances to order the production of non-testifying expert records when it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means, or the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it.

1   <u>U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC</u>, 268

2   F.R.D. 614, 623 (N.D. Cal. 2010) (citing <u>Oki America, Inc. v.</u>

3   <u>Advanced Micro Devices, Inc.</u>, No. C 04-3171 CRB (JL), 2006 WL

4   2987022, at *2-3 (N.D. Cal. Sept. 27, 2006)).

5        Defendants claim that Plaintiffs had access to the same data

6   that was used by Dr. DeMott in this case, such as label information

7   detailing pesticides' active ingredients, Scott's application logs,

8   and lab results from the wild bird food samples. ([Defs.'] Mem. P.

9   & A. Opp'n Pls.' Mot. Compel 20-21, ECF No. 143.)  They contend

10  that Plaintiffs' discovery request is aimed at saving the costs of

11  performing their own analysis, and argue that "Plaintiffs simply

12  prefer that Dr. DeMott perform their expert analysis instead of

13  hiring their own expert to do the same." (<u>Id.</u> at 21.)

14       Plaintiffs reply that exceptional circumstances exist because

15  Defendants have continually relied on Dr. DeMott's report as

16  support for their position that their products were safe.  ([Pls.'

17  Reply 8-9, ECF No. 147.)  Plaintiffs also claim they should be able

18  to compare the Environ report by Dr. DeMott to Exponent's final

19  report to check for any discrepancies.  (<u>See</u> <u>id.</u> at 9.)  Plaintiffs

20  have articulated their need to obtain the reports and their

21  relevance to this case.

22       [D]uring defendants' criminal proceedings; in
         communications to regulators, the public and retailers;
23       and now again in this litigation, defendants have taken
         the position that the tainted Morning Song Bird Food did
24       not pose a significant health risk to wild birds.
         Remarkably, defendants now refuse to produce these same
25       reports and analyses which defendants purportedly relied
         on in making these representations.
26

27  ([Pls.'] Mot. Compel Attach. #1 Mem. P. & A. 2, ECF No. 107.)  In

28  connection with Scott's defense, Plaintiffs wish to inquire into

13

what information about the risks and the toxicity of the bird food product was known to Defendants prior to the recall.  Plaintiffs point out that Scotts "stat[ed] to FDA that the 'risk evaluation (hazard assessment)' set forth in Defendant's recall notice was 'based primarily on the review conducted by ENVIRON.'"  (Id. at 7.) Plaintiffs also argue that exceptional circumstances exist here because the products "have been buried in landfills" and are no longer available.  ([Pls.'] Reply 8, ECF No. 147.)  They point out that Dr. DeMott's study was performed while the bird food product was still sold in stores.  (Id. at 9.)

Given the nature and circumstances of the particular information sought, hiring an expert to perform the studies done by Environ and Exponent is not the equivalent of obtaining these third-party documents.  The data can be found only in the reports and are not obtainable through any other means.  All these facts weigh in favor of finding that the Environ and Exponent reports should be produced under the exceptional circumstances standard of Rule 26(b)(4)(D).

But a more compelling reason to order production exists. Contrary to Defendants' suggestion, there is authority to support the proposition that waiver can apply to consulting expert materials under Rule 26(b)(4)(D).  See Murray v. S. Route Mar., S.A., No. C12-1854RSL, 2014 WL 1671581, at *1 (W.D. Wash. Apr. 28, 2014) ("The vast majority of cases find or assume that waiver applies and proceed to make the necessary factual determinations based on the record presented.").  In Murray, the court observed that the privilege for experts employed only for trial preparation "is based on the same concerns that motivate the work product

doctrine:  counsel must have a safe space in which to investigate, analyze, and prepare his client's case without fear that the opposing party will be able to exploit his efforts." Id.  The court found no "persuasive reason why the non-testifying expert privilege should be maintained despite a knowing and intelligent disclosure when virtually every other privilege, including the attorney-client privilege and work product protections, are subject to waiver." Id.

Defendants voluntarily disclosed the contents of the reports by Environ (Dr. DeMott) and Exponent (Dr. Fairbrother) in communications with the authorities, presumably electing to use the analyses and conclusions to their advantage.  Indeed, they cited these studies in the current litigation.  Attached to Defendants' Motion to Dismiss the Amended Complaint in this matter is the March 26, 2008 letter to the FDA which discusses and summarizes the toxicological assessment by Environ.  ([Defs.'] Mot. Dismiss Attach. #2 Ex. A, at 4-5, ECF No. 32.)  They cannot limit the use of these items now because their prior use constituted a waiver of any privilege.  See City of Capitola v. Lexington Ins. Co., No. 12-3428 LHK (PSG), 2013 WL 1087491, at *1-2 (N.D. Cal. Mar. 13, 2013) (holding that voluntary disclosure of select consultant documents that tend to favor a party's position operates to waive any work product protection for remaining documents from that consultant that do not support the asserted position).

A party "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on

1  matters reasonably related to those brought out in direct

2  examination." <u>United States v. Nobles</u>, 422 U.S. at 240.

3  Defendants have waived any work product privilege in the Exponent

4  and Environ materials because they chose to voluntarily disclose

5  them to the opposing side.

6  **III.   CONCLUSION**

7     For the reasons above, Plaintiffs' Motion to Compel Production

8  of Documents [ECF No. 107] is GRANTED.  This order does not affect

9  the timing and scope of document production and other discovery

10  from Dr. Fairbrother, Dr. DeMott, or any other expert witness who

11  has been retained for this case and is expected to provide

12  testimony at trial.  Studies and reports created by Environ and

13  Exponent before or during the 2012 criminal prosecution and

14  disclosed, in whole or in part, to the courts, regulators, or

15  shareholders are to be produced no later than February 9, 2015.

16  

DATED:   January 23, 2015

17                            Ruben B. Brooks
                            United States Magistrate Judge

18  

19  cc:
Judge Houston
All Parties of Record

20

21

22

23

24

25

26

27

28