1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10  IN RE MORNING SONG BIRD FOOD        )    Lead Case No. 12cv1592 JAH (RBB)
    LITIGATION                          )
11                                      )    ORDER GRANTING IN PART AND
                                        )    DENYING IN PART DEFENDANT
12                                      )    HAGEDORN'S MOTION TO
                                        )    DISMISS [Doc. No. 279]
13                                      )
                                        )
14  _____ )

15          Pending before the Court is Defendant James Hagedorn's motion to dismiss.  The

16  motion is fully briefed by the parties.  Upon review of the parties' submissions and for the

17  reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART

18  Defendant's motion.

19                              BACKGROUND

20          Plaintiffs Laura Cyphert and Milt Cyphert originally filed an action on June

21  27, 2012, asserting a class action .  Upon the parties' joint motion, the Court consolidated

22  the matter with several other cases seeking the same relief against the same defendants.

23  Plaintiffs filed a Consolidated Class Action Complaint on October 9, 2012, and filed an

24  Amended Consolidated Class Action Complaint on January 31, 2013, naming the Scotts

25  Miracle-Gro Company ("SMG"), The Scotts Company, LLC ("Scotts") (collectively "the

26  Scotts Defendants) and Does 1 through 20 as defendants.  Defendants moved to dismiss

27  the complaint, which the Court granted in part and denied in part.  Plaintiff did not

28  amend the complaint to reassert the dismissed claims.

Plaintiffs moved to for leave to amend the complaint to add defendant Hagedorn. The Court granted the motion and Plaintiffs filed their Second Amended Consolidated Complaint ("SACC") on October 9, 2015, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), California Consumer Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California False and Misleading Advertising law ("FAL"), Kentucky Consumer Protection Act ("KCPA"), Minnesota Consumer Fraud Act, Missouri Merchandising Practices Act, breach of implied warranty of merchantability, breach of the common law implied warranty of fitness for consumption by animals, intentional misrepresentation, and negligent misrepresentation.

The Scotts Defendants filed their answer to the amended complaint and, thereafter, Defendant Hagedorn filed the pending motion to dismiss. Plaintiffs filed an opposition and Defendant filed a reply. Defendant also filed an *ex parte* motion asking the Court to rule on the motion to dismiss prior to ruling on the motion for class certification. The Court found the motion to dismiss suitable for adjudication without oral argument and took the matter under submission pursuant to Local Rule 7.1 (d.1).

## DISCUSSION

Defendant Hagedorn seeks dismissal of the claims against him for lack of personal jurisdiction and for failure to state a claim. Defendant further moves to dismiss Plaintiff's claim for injunctive relief for lack of subject matter jurisdiction.

**I. Lack of Personal Jurisdiction**

**A. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a court may dismiss a case for lack of jurisdiction over the person. FED.R.CIV.P. 12(b)(2). The Ninth Circuit has established a two prong test for determining if the Court's assertion of personal jurisdiction is proper. Jurisdiction must comport with: (1) the state long-arm statute, and (2) the constitutional requirement of due process. Mattel, Inc., v. Greiner & Hausser GMBH, 354 F.3d 857, 863 (9th Cir. 2003) (quoting Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995)).

As to the first prong, California's long arm statute provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this State or of the United States." Cal. Civ. Proc. Code § 410.10.  Because California law allows the exercise of jurisdiction to the same extent as due process under the United States Constitution, the only question is whether the exercise of jurisdiction over the defendant is constitutional.  See Mattel, 354 F.3d at 863.  Under a due process analysis, the Court may only exercise jurisdiction in accord with "traditional notions of fair play and substantial justice," thus the nonresident defendant is required to have "certain minimum contacts" with the forum state in order for jurisdiction to be proper.  Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be found where the defendant's activities subject him to either general or specific jurisdiction.  General jurisdiction exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  In the absence of general jurisdiction, a nonresident defendant may still be sued in the forum if specific jurisdiction exists.  Id.  The Ninth Circuit has established a three part test to determine whether there is specific jurisdiction over a defendant:

> 'Specific' jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Mattel, 354 F.3d at 863 (quoting Bancroft & Masters v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)).  The Court must assess the contacts of each defendant separately to determine whether personal jurisdiction exists for each particular defendant. See Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003); Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990).

Plaintiff bears the burden of making a *prima facie* showing that jurisdiction is proper.  Mattel, 354 F.3d at 862 (citing Harris Rutsky, 328 F.3d at 1128).  "To make that showing, [a plaintiff] need only demonstrate facts that, if true, would support jurisdiction

over the [d]efendants." Id.  "'Conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists.'"  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); see also Doe v. Unocal Corp.,, 922 (9th Cir. 2001).

**B. Analysis**

Defendant argues Plaintiffs fail to allege facts sufficient to support personal jurisdiction under 18 U.S.C. section 1965, and they fail to allege the minimum contacts necessary to support traditional personal jurisdiction.

**1. 18 U.S.C. Section 1965**

Plaintiffs assert jurisdiction over Defendants pursuant to 18 U.S.C. section 1965. SACC ¶ 12.  Section 1965 provides for service of process in a RICO action upon parties residing outside the court's district when "it is shown that the ends of justice require" it. 18 U.S.C. § 1965(b); see also Butcher's Union Local No. 498, United Food and Commercial Works v. SDC Inv., Inc., 788 F.2d 535, 538 (9th Cir. 1986).  Nationwide service under section 1965(b) requires the court have "personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy" and the plaintiffs show "there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." Butcher's Union, 788 F.2d at 539.

Defendant contends Plaintiffs cannot meet the requirements for invoking section 1965, because the United States District Court for the Southern District of Ohio, where Scotts maintains its corporate headquarters and Hagedorn maintains his office, would have personal jurisdiction over all the alleged RICO co-conspirators.  See Hagedorn Dec. ¶¶ 4, 5 (Doc. No. 279-2).

Plaintiffs do not address this argument.

In reply, Defendant argues Plaintiffs concede the inapplicability of section 1965 by their failure to address the argument.

The Court finds Plaintiffs fail to demonstrate section 1965 provides this Court with personal jurisdiction over Defendant Hagedorn.

4

## 2.  Minimum Contacts

Defendant contends there are insufficient minimum contacts to support traditional personal jurisdiction.

### a. General Personal Jurisdiction

Defendant argues Plaintiffs reference California's long-arm statute, but do not plead general personal jurisdiction with respect to Defendant Hagedorn and cannot do so.  He contends he does not maintain a home and has never owned real property in California, has never paid taxes in California, and never maintained an office, had a telephone number, mailing address or bank account in California,  Hagedorn Dec. ¶ 5, 6, 7, 8, 9. He further contends he has never traveled to California to take out a loan or to execute a contract.  Id. ¶¶ 10, 11.  He maintains his contacts with California are limited to the typical business travel, and he traveled to California approximately thirty times in the last 10 years.  Id. ¶ 14.  Defendant also maintains he has only been a litigant in a court located in California on one prior occasion which he brought in his personal capacity and as the administrator of his daughter's estate after she passed away.  Id. ¶ 13.

Plaintiffs argue Defendant fails to mention his substantial, sustained, and continuous business dealings with the state.  Plaintiffs contend Defendant maintains numerous other business interests and dealings in California, including:

> (1) Scotts Temecula Operations, LLC, for which he serves as an officer, maintains a Temecula, California address and a California agent for service of process, and made at least $35 million in sales;
>
> (2) Hawthorne Gardening Co., a subsidiary of SMG managed by his son, recently purchased Santa Rosa-based General Hydroponics;
>
> (3) Defendant oversaw the opening of a regional SMG office in California; and
>
> (4) Defendant discussed the drought and mandatory water restrictions in California during a SMG earnings call.

Plaintiffs argue these are substantial business interests and contacts with California that far exceed the kind of travel business personnel typically undertake. They contend Defendant Hagedorn is far from a typical business person in that he is a very active,

12cv1592

hands-on CEO, and the largest shareholder of a multi-billion-dollar manufacturer and marketer of consumer goods. Plaintiffs argue he should not be allowed to reap all the benefits of self-directed nationwide sales and acquisitions, without having to answer for the wrongdoing he caused. Additionally, Plaintiffs argue no matter how tragic the underlying circumstances of the lawsuit he filed in California, it does not change the fact he voluntarily and purposely availed himself of the California court's jurisdiction. Plaintiffs contend the details of Defendant's California contacts, including his business interests and dealings, and the litigation he pursued, would shed additional light on the substantial and continuous nature of his contacts with California.

Plaintiffs also maintain that specific jurisdiction exists for the reasons discussed, but believe jurisdictional discovery would enable them to flesh out the details regarding Defendant's other contacts with California if the Court requires further information to satisfy its exercise of personal jurisdiction over Defendant.

In reply, Defendant argues Plaintiffs fail to establish general jurisdiction over him and jurisdictional discovery is unwarranted.  He argues courts have not found general jurisdiction when an individual conducts business that requires their occasional presence in a state.  Additionally, he contends his time in California in connection with the lawsuit he filed in his personal capacity and as administrator of his daughter's estate does not support general jurisdiction because unrelated litigation is irrelevant to general jurisdiction analysis.

Because this Court finds it may exercise jurisdiction over Defendant Hagedorn pursuant to specific personal jurisdiction, as discussed in detail below, the Court need not address general jurisdiction and finds further discovery on the issue unnecessary.

b. Specific Personal Jurisdiction

Defendant contends Plaintiffs fail to allege facts sufficient to support specific personal jurisdiction over him.  He maintains he did not personally direct any wild bird food-related activity toward California, the SACC alleges corporate wrongdoing and contains no allegations regarding any activity he personally directed towards California.

12cv1592

1   He argues only his individual contacts may be considered.

2       Defendant further argues, even if Plaintiffs did adequately plead the first prong for

3   specific personal jurisdiction, they fall far short of meeting the second prong, which

4   analyzes whether the claim arises from the defendant's forum-related activities.  Defendant

5   contends Plaintiffs generally allege he was responsible for overseeing the corporate

6   defendants, he had control of the enterprise and ultimate authority over the illegal scheme

7   and conspiracy, and he made substantial sums of money from the sale of allegedly toxic

8   wild bird food but the allegations are not sufficient for specific personal jurisdiction.  He

9   maintains he was not involved in day-to-day wild bird food operations, did not personally

10  prepare or revise marketing materials for wild bird food, formulate wild bird food products,

11  manufacture or distribute wild bird food products, or sell wild bird food products in the

12  course of Scotts' business.

13      Defendant further argues exercising personal jurisdiction over him is unreasonable,

14  because requiring him to defend this suit in California, for which he lacks the minimum

15  contacts, would impose an unjustifiable and unreasonable burden.

16      Plaintiffs argue the Court has specific jurisdiction because Defendant Hagedorn

17  purposefully directed wild bird food sales toward California.  They maintain the SACC

18  alleges many specific facts regarding Defendant's knowledge of, control over, and personal

19  participation in this scheme to defraud Californians that make out a *prima facie* showing

20  of jurisdictional facts, particularly when all inferences are construed in the light most

21  favorable to Plaintiffs, as they must be.  They argue Defendant's affidavit does not even

22  attempt to refute the facts or his role in the conspiracy, and as such, the facts must be

23  taken as true for the purposes of this motion.

24      Plaintiffs also contend, at the time of the Gutwein acquisition and throughout the

25  Class Period, Hagedorn Partnership L.P., a limited partnership controlled by Defendant

26  and his family, owned approximately 30% of Scotts' outstanding common shares, making

27  it the company's largest shareholder with substantial control over the selection of Scotts'

28  directors and other corporate actions requiring shareholder approval.  They further

contend when acquiring Gutwein's wild bird food business, Defendant reviewed due diligence documents which expressly targeted California for increased sales. Plaintiffs argue Defendant was the driving force behind the acquisition of the wild bird food business at issue, and the prospect of increased sales into California and to California residents was a primary motivation for the deal.

They further argue the evidence demonstrates Defendant's hands-on involvement in the illegal wild bird food enterprise. They specifically point to the fact he challenged employees to develop and launch a new blackbird-resistant formula at the October 2007 meeting, he involved himself in the wild bird food sales and marketing strategies, he provided investors with periodic updates on the business throughout the Class Period, and he expressly informed others of Scotts' illegal pesticide use and its links to bird deaths at an October 2007 meeting. Plaintiffs further maintain Defendant not only attended but also hosted multiple meetings about the illegal wild bird food products, including a January 9, 2008 meeting about growing sales held in his office, and a March 20, 2008 "Bird Food Update" meeting held at his home. Plaintiffs argue the culture of non-compliance began at the top with Defendant Hagedorn, who stated that the "unregulated" nature of the business was a motivation for Scotts' entry into the wild bird food market. Plas' Exh. 1 at 10. Plaintiffs contend Defendant Hagedorn personally prolonged the deception. Plaintiffs argue, in light of his participation in, knowledge of and control over Scotts' marketing and sales of wild bird food nationwide, including in California, harm to California residents was not only "likely," but inevitable, and at a minimum, Defendant knew his actions and failure to act would cause economic harm to California residents. Plaintiffs further argue because Defendant personally directed Scotts' entry into the wild bird food business; targeted sales to hundreds of thousands of California residents; maintained control over, and participated in, Scotts' wild bird food sales and operations; and knowingly allowed millions of sales to continue after he was personally informed of the pesticide misuse and its implication in bird death, the "purposeful direction" prong is easily satisfied here.

Plaintiffs further argue Defendant's California contacts directly relate to Plaintiffs' claims. They contend they assert claims under federal and California law that Scotts sold illegal wild bird food in California and to California residents with the direct participation and knowing control and oversight of Defendant Hagedorn. Thus, they argue, "but for" Defendant's actions and knowing failures to act, which form the bases of his forum contacts, Plaintiffs would have no claims against him. They maintain there is no question their claims arise out of the criminal conduct discussed during, and perpetuated after, the October 2007 meeting and Defendant's participation in the alleged scheme directly relates to Plaintiffs' claims.

In addition, Plaintiffs argue Defendant cannot meet his burden to demonstrate this Court's exercise of jurisdiction is unreasonable. Plaintiffs contend Defendant admits he conducts business in California, has traveled to California approximately 30 times, and availed himself of the benefits of California's courts by initiating and pursuing litigation here, and Defendant has been intimately involved in this litigation pending in California as Chairman and CEO from the start. They further contend another more efficient, convenient forum to resolve this dispute does not exist, as this case has been pending before the Court for over three years and not a single plaintiff resides in Ohio.

In reply, Defendant argues Plaintiffs fail to satisfy all three prongs necessary to establish specific personal jurisdiction. He maintains Plaintiffs have not produced a single piece of evidence demonstrating he purposefully directed wild bird food activity at California, and instead focus on Scotts' actions. Defendant argues facts about Scotts' nationwide distribution of wild bird food and Mr. Hagedorn's managerial responsibilities are irrelevant here because they show no purposeful direction of wild bird food related actions by Defendant to California. He maintains Plaintiffs identify only three facts that even relate to the state of California, which describe generic corporate conduct and none of which reflect actions taken by Defendant or that relate to wild bird food or the use of pesticides. He argues Plaintiffs offer no facts to support their speculative assertion that Defendant was the "Unidentified Company Representative" who said he "looked . . .

pretty hard" at due diligence materials related to the Gutwein deal.   He maintains discussions about business opportunities do not establish jurisdiction.

Defendant argues Plaintiffs offer nothing aside from his position as CEO to show that he was the guiding spirit of Scotts' application of pesticides to the wild bird food or its sales of those products.  He contends Scotts' nationwide distribution has nothing to do with his individual actions nor does it indicate that he was the guiding spirit of any wrongful conduct.   He maintains Plaintiffs repeatedly point to the ITAB meeting in October 2007 as if it were the "smoking gun," but that meeting took place over two years after the alleged RICO conspiracy began in 2005.  Defendant argues there is no scenario under which the meeting could establish that he was the "guiding spirit" of the wrongful conduct, and, even if it could, mere knowledge of potential wrongdoing and the supposed failure to take action does not make an officer the "guiding force" of a corporation's conduct.

Defendant further argues Plaintiffs have not shown their claims arise out of his California activities.  He maintains the October 2007 meeting took place in Marysville, Ohio, and thus, there is no scenario under which the ITAB meeting can satisfy the second prong required to establish specific jurisdiction.  He further maintains Plaintiffs' claims do not arise out of his supposed knowledge of any pesticide application in October 2007, two years after the alleged conspiracy began. Rather, Defendant contends, Plaintiffs' claims arise out of the alleged pesticide application itself and the sales of those products. He argues, because the claims arise out of Scotts' alleged misconduct, not his, the second prong is not satisfied.  He further argues it would not be reasonable to hale him to California courts.  He contends his role as CEO of a nationwide corporation is not a significant interjection into California, in particular, and he has not otherwise pervasively interjected himself into California.  In addition, he maintains, most Plaintiffs are not residents of California and do not allege that they purchased wild bird food in California. Defendant also contends litigating in California will place a heavy burden on him because he is not a California resident and rarely visits California.  He contends Scotts maintains

its corporate headquarters in Ohio and his primary office is in Ohio.  Defendant further maintains litigating in California will rob Ohio of the ability to enforce claims against the CEO of an Ohio corporation, and his uncontroverted evidence shows Plaintiffs could assert their claims in the Southern District of Ohio.  Accordingly, he argues, exercising personal jurisdiction over him would be unreasonable.

Generally, a corporate officer is not subject to personal jurisdiction in a forum in which his contact is limited to the performance of his official duties.  Forsythe v. Overmyer, 576 F.2d 779, 783-84 (9th Cir. 1978).  However, "[c]ourts have found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer 'is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.'"  See Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (citing Matsunoki Group, Inc. v. Timberwork Oregon, Inc. 2009 WL 1033818 (N.D.Cal. 2009)).

Plaintiffs allege Defendant, as the CEO and Chairman of SMG and as an executive officer of Scott's LLC and Gutwein, was responsible for the internal controls and reporting obligations, had ultimate authority over consumer business marketing, sales, research and development and supply chain, and had authority over and knowledge of the business affairs during the time it operated a criminal conspiracy to market and sell illegal bird poison as bird food to unwitting consumers.  SACC ¶¶ 45, 50.  They further allege Defendant was specifically informed of the illegal pesticide use in October 16, 2007, and continued to make and sell millions of bags of the bird food including in this district.  SACC ¶ 5, 26, 35, 45.  Additionally, Plaintiffs allege, as a result of Defendants' illegal scheme and conspiracy, Plaintiffs and the class purchased a product that contained bird poison.  Id. ¶ 75.  While Defendant attests that he was not involved in day-to-day wild bird food business operations, he does not dispute Plaintiffs allegations that he was informed of the use of the pesticide during the October 2007 meeting and prolonged the deception.  Plaintiffs' allegations demonstrate Defendant was a participant in the alleged

wrongdoing.

Accordingly, this Court finds Plaintiffs sufficiently demonstrate Defendant purposefully directed his conduct towards California. Additionally, the claims result from Defendant's forum-related activities, and the exercise of jurisdiction is reasonable.

## II.  Failure to State a Claim

### A.  Legal Standard

Rule 12(b)(6) tests the sufficiency of the complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>see</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. <u>Robertson</u>, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most

favorable to the nonmoving party.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th  Cir. 2002);  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  <u>See</u> <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

**B. Analysis**

**1. Time-barred**

Defendant argues several of the claims against him are time-barred, namely, the Cypherts' claims (Counts 1–4, 8, and 10), Kirby's claim alleging a violation of the KCPA (Count 5), and Plaintiffs' misrepresentation claims (Counts 10–11).  Defendant contends Plaintiffs filed the SACC after the statutes of limitations for these claims had run, and the delay is not saved by equitable tolling or the relation back doctrine.

Defendant maintains this Court previously determined the Cypherts should have been aware of their alleged injuries no later than January 2010, and that the remaining Plaintiffs should have been aware of their alleged injuries no later than January 2012.  He contends Plaintiffs try to evade this Court's previous finding by alleging they did not know of his alleged involvement until 2014 when discovery began to reveal the extent of his knowledge and participation.  He argues Plaintiffs filed their SACC on October 9, 2015, five years after the Cypherts should have been aware of their alleged injuries and over three years after the remaining Plaintiffs should have been aware of their alleged injuries, and therefore, any claim brought by the Cypherts that has a statute of limitations of four

1  years or less is time-barred and any claim brought by the remaining Plaintiffs with a

2  statute of limitations of three years or less is time-barred.

3      Defendant further argues Plaintiffs cannot prove fraudulent concealment.  In support

4  he contends this Court has already determined that the Cypherts reasonably could have

5  discovered their claims through the exercise of due diligence no later than January 2010.

6  Therefore, Defendant argues, just as the Cypherts' negligent misrepresentation claim as

7  to Scotts was not tolled by fraudulent concealment, neither should any of the Cypherts'

8  claims as to Mr. Hagedorn be tolled.  He contends Plaintiffs allege they could not have

9  known of Defendants' conduct until the federal government revealed its criminal

10  prosecution of Defendants in January of 2012, or of Hagedorn until 2014 when discovery

11  began to reveal the extent of his knowledge and participation.  But, he argues, Scotts

12  voluntarily disclosed its pesticide use to the FDA, retailers, distributors and the public in

13  the spring of 2008, at which time Scotts also voluntarily recalled all of the affected wild

14  bird food products.  He maintains Plaintiffs could have easily followed up by visiting

15  Scotts' website or contacting the FDA or the EPA at that time.

16  Defendant also argues Plaintiffs do not plead their alleged circumstances of fraud with

17  any particularity.  Instead, he contends, Plaintiffs aver that they needed discovery to reveal

18  the extent of Defendant's knowledge and participation.  Defendant argues this is

19  insufficient because it is conclusory and it contradicts the basic notion behind the

20  fraudulent concealment doctrine.  He maintains Plaintiffs were on notice of their potential

21  claims against him at least by the time they filed this lawsuit in 2012, as they identified

22  him as Scotts' and Gutwein's CEO in their original complaint and also named Doe

23  Defendants as individual employees of SMG and/or its subsidiaries.  Therefore, he argues

24  Plaintiffs' time-barred claims cannot be equitably tolled.

25      He also argues the complaint does not relate back.  He maintains Plaintiffs'

26  time-barred claims do not relate back under federal law because they do not allege a

27  mistake as required.  He contends they have known that he is the CEO of Scotts and

28  Gutwein since they filed their original complaint in 2012.  He further maintains Plaintiffs'

time-barred claims do not relate back under state law. Specifically, he maintains Kentucky's relation back rule is nearly identical to Federal Rule 15(c) and is interpreted the same, and as discussed above, the claims do not relate back under federal law. He also contends the statute of limitations for Plaintiffs' CLRA, UCL, FAL, implied warranty, intentional misrepresentation, and negligent misrepresentation claims are derived from California law, and California law permits a plaintiff who is ignorant of the name of a defendant at the time suit is filed to use a fictitious name and then amend, within three years of commencement, when the defendant's true name is discovered. Defendant argues Plaintiffs' SACC was not filed until October 9, 2015, over three years after their original complaint was filed.

Plaintiffs argue Defendant fails to carry his burden to show their claims are untimely. They maintain Defendant does not dispute that: (i) the original complaint was timely filed; (ii) Plaintiffs have diligently pursued discovery since the filing of this action; (iii) Scotts failed to acknowledge his participation in the October 2007 meeting until July 2014; and (iv) Plaintiffs had no other reasonable means of ascertaining his involvement any earlier. Plaintiffs maintain the Court has already found they did not unduly delay by satisfying their duty to conduct a reasonable investigation before seeking leave to amend the FAC to add Hagedorn as a defendant on November 22, 2014. They argue their claims against Hagedorn are timely because: (i) Plaintiffs' claims did not accrue under the discovery rule until facts constituting Hagedorn's wrongdoing were reasonably discoverable; (ii) the claims relate back to the time of the original filing; and (iii) Hagedorn and Scotts fraudulently concealed the claims against him. Plaintiffs maintain it was reasonable for Plaintiffs to add Hagedorn as a defendant only after receiving confirmation that he was present at the October meeting discussing the illegal pesticide use and they did not receive this confirmation until July 2014. They further maintain they could not have reasonably discovered the facts evincing Hagedorn's individual wrongdoing until after July 2014, when Scotts first revealed his presence at the October 2007 meeting during which Scotts' illegal pesticide use was discussed, demonstrating that he knowingly allowed Scotts

to continue this criminal conduct for months.

Plaintiffs further argue the claims against Defendant relate back to the original complaint.  They maintain they were aware that Hagedorn was SMG's Chairman and CEO, but they did not understand his role in SMG's crime following the October 2007 meeting, and they pushed Defendants to confirm whether his attended the meeting during which the illegal pesticide misuse was discussed.  Plaintiffs contend Defendant was aware they did not understand his role in the wrongdoing underlying Plaintiffs' claims and he had every reason to expect that he would be named as a defendant once Plaintiffs developed an accurate understanding of his role.

Plaintiffs also maintain Defendants fraudulently concealed Plaintiffs' claims against Hagedorn.  They assert the SACC alleges Defendants affirmatively misled Plaintiffs as to Hagedorn's role in the conspiracy, including: (i) by issuing a misleading "Dear Fellow Bird Lover" letter, intended to lull the public, which concealed the seriousness of Scotts' pesticide misuse; (ii) by issuing a misleading letter to the FDA in March 2008, which concealed the presence of senior executives, including  Hagedorn, at the October 2007 meeting; (iii) sending a follow-up letter in April 2008, which revealed the presence of senior executives at the October meeting, but disavowed discussion of any "illegal" or "off-label" pesticide and still concealed Hagedorn's presence; and (iv) through Hagedorn's deceptive comments to investors in May 2008, that the pesticide had been used for years prior to the Gutwein acquisition, was safe for human consumption, did not harm any birds, and was brought to the attention of authorities by Scotts as soon as senior management learned of the problem. They maintain the SACC further alleges that Plaintiffs did not know these representations were false and could not have reasonably determined their falsity without discovery and Plaintiffs discovered the fraudulent concealment in 2014, after Scotts' discovery responses and further investigation revealed the truth.

In reply, Defendant argues Plaintiffs wrongly conflate this Court's prior ruling that Plaintiffs did not unduly delay in seeking leave to amend their complaint with the distinct

12cv1592

question of whether Plaintiffs' claims against him are time-barred.  He argues the latter question does not ask when Plaintiffs became aware of his possible personal involvement, but rather when Plaintiffs discovered, or had reason to discover, the cause of action, and this Court already determined that Plaintiffs had reason to discover their alleged injuries no later than January 2010 or January 2012.  Defendant argues Plaintiffs' contention they lacked confirmation of his alleged involvement until July 2014 does not alter the analysis, as the law is clear that the discovery rule allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity.

Defendant also argues the allegations Plaintiffs cite to in support of their assertion that they were affirmatively misled do not allege he mislead them as to his role in the conspiracy and are not stated with particularity.  He further argues Plaintiffs' claims do not relate back because Plaintiffs were aware of his identity at the time the original complaint was filed, even if they were uncertain whether he could be held liable.

The Court finds the SACC relates back to the original complaint.  Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment which changes a party or names a party relates back to an original pleading if the amendment arises out of the conduct, transaction or occurrence set out in the original pleading, and the new party received notice of the action and knew or should have known the action would have been brought against him but for a mistake concerning the proper party's identity.

Defendant argues Plaintiff fails to demonstrate the existence of a mistake because they were aware of his identity as the CEO and Chairman.  Plaintiffs contend they were mistaken about Hagedorn's role in the wrongdoing.    In Krupski v. Costa Crociere S.p.A.,the Supreme Court noted that "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue."  560 US. 538, 549 (2010).    However, if the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c) are not met.  Id. at 553.

12cv1592

1    The Court finds Defendant should have known he would have been named a

2    defendant in the action if not for Plaintiffs' misunderstanding as to his role in the

3    wrongdoing.  Accordingly, Plaintiffs' RICO claim and the Kentucky state claim relate back

4    under Rule 15(c).[1]

5    Furthermore, Plaintiffs demonstrate they filed their motion to amend to add

6    Hagedorn in November 2014, within the three year time limit of California Code of Civil

7    Procedure section 474.  Therefore, Plaintiffs California state law claims relate back.

8    Because the Court finds the SACC relates, it will not address the discvoery rule or

9    fraudulent concealment.

10   Defendant's motion to dismiss the claims as untimely is denied.

11   **2.  Failure to Plead Proximate Cause**

12   Defendant argues Plaintiffs' RICO (Count 1), state law consumer statute (Counts

13   2–7), and misrepresentation claims (Counts 10–11) must be dismissed because Plaintiffs

14   fail to plead facts sufficient to support proximate causation.  He maintains Plaintiffs do

15   not make a single allegation that they relied on anything Hagedorn said or failed to say

16   regarding their wild bird food purchases and, therefore, he argues, they have not alleged

17   proximate causation.

18   Plaintiffs maintain Defendant participated in the scheme that proximately caused

19   their  injuries.  They argue his proximate cause argument is based on a the false premise

20   that Plaintiffs must allege they relied on a specific statement made by him, rather than

21   fraudulent statements disseminated in the RICO conspiracy for which he was responsible.

22   Plaintiffs contend his argument fails because a defendant's liability for a mail/wire fraud

23   scheme involving others does not turn on whether a particular defendant himself made

24   misleading statements, and a plaintiff asserting a RICO claim needs to show, at most, that

25   someone relied on the scheme's misleading statements.  They argue Defendant knowingly

26   joined and perpetuated this scheme to defraud and, therefore, he is responsible for the

27

28   _____

[1]Rule 15(c) governs relation back of the Kentucky state law claim.  See Bradford v. Bracken County,  767 F.Supp.2d 740, 747 (E.D.Ky. 2011).

1   harm that the scheme directly and proximately caused to Plaintiffs.

2       In reply, Defendant contends Plaintiffs do not dispute that their state consumer

3   statute and misrepresentation claims require allegations of a causal nexus between the

4   alleged misrepresentation or omission by Mr. Hagedorn and Plaintiffs' alleged injury.  He

5   argues Plaintiffs have effectively conceded their failure to allege a necessary element of the

6   claims by failing to address those claims and, as such, the California CLRA, UCL, and FAL

7   claims, the Kentucky, Missouri, and Missouri consumer-statute claims, and the

8   misrepresentation claims must be dismissed.

9       Standing to sue under RICO requires a showing of proximate cause.  Holmes v.

10  Securities Investor Protection Corp., 503 U.S. 258, 268 (1992).  "When a court evaluates

11  a RICO claim for proximate causation, the central question it must ask is whether the

12  alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp.,

13  547 U.S. 451, 461 (2006).  Plaintiffs sufficiently allege Defendants' conduct in

14  misrepresenting the toxic bird food proximately caused their injury and further allege

15  Defendant Hagedorn engaged in the fraudulent scheme.  This Court's research found no

16  authority to support Defendant's argument that the Plaintiffs must allege a specific

17  defendant's misrepresentations proximately caused their injuries.[2]

18      The CLRA, UCL, FAL, Kentucky Consumer Protection Act, Minnesota Consumer

19  Fraud Act, Missouri Merchandising Practices Act, and the misrepresentation claims require

20  a causal nexus between a defendant's wrongful conduct and the plaintiff's injuries.  See

21  Hale v. Sharp Healthcare, 183 Cal.App.4th 1373, 1386 (2010); Kwikset Corp. v. Superior

22  Court, 51 Cal.4th 310, 326 (2011);  Corder v. Ford Motor Co., 869 F.Supp.2d 835, 838

23  (W.D. Ky. 2012);  Group Health Plan, Inc. v. Philip Morris, Inc., 621 N.W.2d 2, 13

24  (Minn. 2001);  Owen v. General Motors Corp., 533 F.3d 913, 922 (8th Cir. 2008).

25  Plaintiffs fail to address this argument and, thereby concedes the claims should be

26  dismissed.  See Shull v. Ocwen Loan Servicing, LLC, 2014 WL 1404877 (S.D.Cal. 2014).

27

28      [2] Defendant may have abandoned this argument as he fails to address it in his reply and instead focuses on the state law claims in support of his proximate cause argument.

Accordingly, Plaintiffs' CLRA, UCL, FAL, Kentucky Consumer Protection Act, Minnesota Consumer Fraud Act, Missouri Merchandising Practice Act and the misrepresentation claims are dismissed as to Defendant Hagedorn.

### 3. Failure to Plead with Particularity

Defendant argues Plaintiffs' RICO (Count 1), state consumer law (Counts 2–7), and misrepresentation claims (Counts 10–11) should also be dismissed because Plaintiffs have failed to plead their claims with particularity under Rule 9(b).  He maintains the SACC only generally alleges the fraudulent use of the mail and wires, and Plaintiffs fail to specify what particular acts of wire or mail fraud they personally were exposed to, where they personally were exposed to them, when they personally were exposed, how they personally were exposed, and how those particular acts relate to Mr. Hagedorn. Defendant argues Plaintiffs fail to allege his specific role in the alleged mail/wire fraud and instead, allege that Defendants as a unit, fraudulently utilized the mail and wires to defraud Plaintiffs.

Similarly, he contends, the SACC makes numerous general allegations in an attempt to support Plaintiffs' misrepresentation and state law consumer claims, but Plaintiffs do not specify what specific advertising and marketing they viewed, where they viewed the advertising and marketing, how they viewed the misleading advertising and marketing or when they viewed the advertising and marketing.  He argues Plaintiffs also neglect the who requirement, including with respect to Hagedorn as his name does not appear anywhere in Plaintiffs' recitation of their state consumer law and misrepresentation counts. While Plaintiffs allege Defendant made misleading statements to investors during a call on May 5, 2008, Defendant maintains they do not allege anywhere in the SACC that they were exposed to the alleged misrepresentations.

In opposition, Plaintiffs contend this Court already held the prior complaint sufficiently alleged the who, what, where, how and why of Defendants' misconduct to meet the heightened pleading standard of Rule 9(b). They maintain the SACC includes more specificity, because discovery provided the particulars of Defendants' fraud.

Plaintiffs further maintain Defendant's participation in the October 2007 meeting is a critical detail that Plaintiffs were unable to allege previously, but included in the SACC. They argue the Court's prior decision upholding the FAC's sufficiency under Rule 9(b) forecloses Hagedorn's Rule 9(b) challenge.

Defendant argues Plaintiffs do not dispute their failure to allege a false statement or materially misleading omission by Mr. Hagedorn upon which they relied to their detriment, and therefore, concede their failure to plead with particularity as required.

As noted by Plaintiffs, this Court previously found Plaintiffs meet the heightened pleading standard of Rule 9(b) as to the RICO claim.  The SACC adds specific allegations of Defendant Hagedorn's wrongful conduct.  See SACC ¶¶ 26, 42, 43, 44, 85, 86. Accordingly, the Court finds Plaintiffs allege fraud with the requisite particularity to support the RICO claim against Defendant Hagedorn.

Because the CLRA, UCL, FAL, Kentucky Consumer Protection Act, Minnesota Consumer Fraud Act, Missouri Merchandising Practices Act, and the misrepresentation claims are dismissed for failure to allege causation, the Court will not address Defendant's argument that Plaintiffs fail to allege fraud with particularity as to those claims.

## 4.  Failure to Plead Privity

Defendant argues Plaintiffs' implied warranty claims against him (Counts 8 – 9) should be dismissed because Plaintiffs do not plead privity of contract  or that he was the manufacturer or seller of the wild bird food they purchased.  He maintains privity of contract is a prerequisite for an implied warranty of merchantability claim under California and Kentucky law, and the defendant in a claim under Missouri and Minnesota law must be a manufacturer or seller.  He contends Plaintiffs fail to plead that they entered into a contract to purchase wild bird food from Defendant, so privity is lacking under California and Kentucky law.  He further contends Plaintiffs fail to allege he manufactured or sold wild bird food, and therefore, Plaintiffs' Missouri and Minnesota implied warranty claims fail.

Plaintiffs argue Defendant is liable for breach of the implied warranties, because the

Ninth Circuit has recognized an exception to this general rule requiring privity for actions involving "food stuffs," and courts have applied this exception to cases where a defendant allegedly manufactures animal food unsafe for consumption by animals.  They further argue, under Missouri law, there is no privity requirement between the manufacturer and an end consumer for an implied warranty fitness of consumption by animals claim, where, as here, the food is processed and packaged, and the buyer purchases it in the original package.

Defendant argues the "foodstuffs" exception does not apply under Kentucky law. He further argues, even assuming a "foodstuffs" exception exists under California law, Plaintiffs do not allege he, in his individual capacity, manufactured wild bird food.

Breach of implied warranty claims in California and Kentucky require privity of contract.  See; Blanco v. Baxter Healthcare Corp., 158 Cal.App.4th 1039; Compex International Co., Ltd. v Taylor, 209 S.W.3d 462, 464 (Ky. 2006).  Plaintiffs do not dispute the privity requirement or that they do not meet the requirement.  Instead, they rely on an exception to the requirement under California law.  California recognizes an exception to the privity requirement in cases involving foodstuffs and the exception has been extended to cases involving food intended for an animal.  See McAfee v. Cargill, Inc., 121 F.Supp.5, 6 (S.D.Cal. 1954); Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954).  Nevertheless, Plaintiffs fail to allege Defendant Hagedorn, himself, was a manufacturer or seller of the wild bird food at issue.  Accordingly, Plaintiffs' fail to allege a breach of warranty claim against Defendant Hagedorn.

## III.  Request for Injunctive Relief

Defendant argues Plaintiffs fail to plead a real and immediate threat of repeated injury to support injunctive relief.  In a footnote, Plaintiffs state they do not oppose dismissal of their request for injunctive relief in light of Defendant's representation that Scotts has sold its WBF business.  Opp. at 35.

According the Court grants the motion to dismiss the request for injunctive relief.

//

12cv1592

## CONCLUSION AND ORDER

Based on the foregoing IT IS HEREBY ORDERED:

1.  Defendants' *ex parte* motion requesting the Court rule on Defendant Hagedorn's motion to dismiss before ruling on Plaintiff's motion for class certification (Doc. No. 290) is **GRANTED**.

2.  Defendant Hagedorn's motion to dismiss (Doc. No. 279) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiffs' CLRA, UCL, FAL, Kentucky Consumer Protection Act, Minnesota Consumer Fraud Act, Missouri Merchandising Practice Act, the misrepresentations claims, and the breach of implied warranty claims against Defendant Hagedorn and Plaintiffs' request for injunctive relief. The motion is otherwise **DENIED**.

Dated:     September 29, 2016

_____

JOHN A. HOUSTON
United States District Judge

12cv1592