1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  IN RE MORNING SONG BIRD FOOD LITIGATION, | Lead Case No.:  12cv01592 JAH - AGS |

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; DENYING PLAINTIFFS' EX PARTE MOTION FOR LEAVE TO SUBMIT NEWLY DISCOVERED EVIDENCE; AND DENYING DEFENDANTS' MOTION TO STAY THE COURT'S RULING**
**[Doc. Nos. 93, 187, 276]**

## INTRODUCTION

Plaintiffs Laura Cyphert and Milt Cyphert originally filed an action on June 27, 2012, asserting a class action against Defendants The Scotts Miracle-Gro Company ("SMG") and The Scotts Company, LLC ("Scotts").  Upon the parties' joint motion, the Court consolidated the matter with several other cases seeking the same relief against the same defendants.  Plaintiffs filed a Consolidated Class Action Complaint on October 9, 2012, and an Amended Consolidated Class Action Complaint on January 31, 2013.  After the Court granted leave to amend, Plaintiffs filed a Second Amended Consolidated Class Action Complaint on October 9, 2015, asserting claims for violations of the Racketeer

1

Influenced and Corrupt Organizations Act ("RICO"), California Consumer Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California False and Misleading Advertising law ("FAL"), Kentucky Consumer Protection Act ("KCPA"), Minnesota Consumer Fraud Act, Missouri Merchandising Practices Act, breach of implied warranty of merchantability, breach of the common law implied warranty of fitness for consumption by animals, intentional misrepresentation, and negligent misrepresentation against SMG, Scotts and James Hagedorn.

Plaintiffs now seek an order certifying the class. See Doc. No. 93. Defendants filed an opposition to the motion to certify and Plaintiffs filed a reply. See Doc. Nos. 115, 140. Defendants filed a surreply with leave of Court, and Plaintiffs filed a response to the surreply. See Doc. Nos. 161-2, 174. Defendants also filed a notice of supplemental authority in support of its opposition. See Doc. No. 169. The motion was taken under submission without oral argument. The parties, however, filed numerous documents addressing the issues in the pending motion, including: Plaintiff's request to submit newly discovered evidence in support of their motion, Defendants' response and Plaintiffs' reply (Doc. Nos. 187, 194, 195); Plaintiffs' application for leave to submit new evidence, summary of the evidence[1] and Defendants' response to the summary (Doc. Nos, 210, 237, 247); Plaintiffs' notice of recent authority in support of their motion and Defendants' response (Doc. Nos. 240, 246); Defendants' ex parte motion seeking leave to file recent decisions regarding materials sought by Plaintiffs in their request to submit newly discovered evidence[2] (Doc. No. 248); Defendants' motion to stay the decision on the motion for class certification, Plaintiffs' opposition and Defendants' reply (Doc. Nos. 276, 295, 298); Plaintiffs' request for judicial notice in support of the motion to certify the class,

---

[1] The Court granted the motion, granted Plaintiffs' request to file the evidence under seal and directed Plaintiffs to file a summary of the evidence no later than July 17, 2015. See Doc. No. 232. Plaintiffs complied with the order and filed the summary on July 17, 2015. See Doc. No. 237.

[2] This Court granted the motion. See Doc. No. 256.

Defendants' response and Plaintiffs' reply (Doc. Nos. 305, 306, 307); Plaintiffs' notice of recent authority and Defendants' response (Doc. Nos. 319, 323).

Defendant Hagedorn sought and was granted leave to file a response to the motion following this Court's ruling on his motion to dismiss.  He filed an opposition to which Plaintiffs filed a reply (Doc. Nos. 317, 318).[3]

For the reasons discussed in detail below, the Court DENIES Defendants' motion to stay and GRANTS Plaintiffs' motion to certify the class.

**I.  Motion to Stay**

Defendants ask the Court to stay its decision on Plaintiffs' motion for class certification pending the outcome of cases pending before the Ninth Circuit and the Supreme Court, namely Brazil v. Dole Packaged Foods, LLC, No. 14-17480 (9th Cir., filed Dec. 18, 2014), Jones v. ConAgra Foods, Inc., No. 14-16327 (9th Cir., filed July 15, 2014), Tyson Foods, Inc. v. Bouaphakeo, No. 14-1146 (U.S., cert. granted June 8, 2015), and Spokeo, Inc. v. Robins, No. 13-1339 (U.S., cert. granted April 27, 2015).  Defendants maintain the pending appeals will offer further guidance regarding key issues in the motion for class certification.  They further maintain a stay will permit Defendant Hagedorn, who was recently added to this matter as a defendant, to conduct discovery and challenge class allegations himself.  Defendants also contend a stay would preserve the Court's resources and prevent the parties from incurring unnecessary costs.

In opposition, Plaintiffs argue they will be harmed by a stay because discovery has already been stayed pending ruling on the class certification.  They further argue Defendants will not be harmed by proceeding because new defendants are routinely added to cases without the proceedings as to the original defendants being stayed.  Plaintiffs maintain it will not take Defendant Hagedorn an excessive amount of time to "catch up"

---

[3] Defendant Hagedorn also filed a request for oral argument.  The Court finds the motion remains suitable for disposition without oral argument and DENIES that request.

because he is not a stranger to the litigation and there is no indication he would have any unique defenses as to certification.

Plaintiffs further maintain a stay will not forward the orderly course of justice because the four cases pending before the Supreme Court are unlikely to alter the Court's analysis of certification in this case. Specifically, they maintain <u>Jones</u>, which Defendants contend will provide guidance on ascertainability and damage models, will not effect the pending motion because Plaintiffs have gone beyond the existing ascertainability requirements. Additionally, they maintain the factual differences in <u>Jones</u> demonstrate any ruling is unlikely to alter the Court's analysis. With regard to <u>Brazil</u>, Plaintiffs contend the damages model issue in the case is inapplicable to this action because it involves the difference between a product marketed as "all natural" and the product sold, whereas, here, Plaintiffs are seeking full refunds of every bag of bird food they purchased. Plaintiffs further contend <u>Tyson/Spokeo</u>, involve questions of standing where numerous class members suffered no injury as compared to this case where Plaintiffs have limited the class to only those who purchased the tainted wild bird food, and therefore suffered an injury.

In reply, Defendants argue Plaintiffs provide a misleading characterization of the stay on discovery. They maintain both parties have been addressing ongoing discovery needs. Defendants also contend the stay will allow this Court to have the benefit of the Ninth Circuit's and Supreme Court's guidance on controlling issues of law before ruling on the class certification. They argue the class certification motion implicates <u>Jones</u>, <u>Brazil</u>, and <u>Tyson/Spokeo</u>. Specifically, they argue the Ninth Circuit is poised to articulate the Circuit's standard for ascertainability in <u>Jones</u>. Defendants contend Plaintiffs oversimplify the facts of this case and they overstate their ability to identify consumers through retailer records to meet the ascertainability requirement. Additionally, they contend <u>Jones</u> will likely provide guidance on Plaintiffs' "full refund" model of class damages. Defendants further argue the Ninth Circuit's decision in <u>Brazil</u> will provide guidance on damages issues in Plaintiffs' motion for class certification because Plaintiffs will be forced to engage in the difference-in-value calculations at issue in <u>Brazil</u>. They

also argue the Supreme Court's decision in <u>Tyson/Spokeo</u> bears on the issues in this case because the proposed class contains uninjured class members in that their injury turns on whether each consumer perceived a benefit of his or her bargain.

A court has the inherent power to stay proceedings in order "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254 (1936). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. <u>Leyva v. Certified Grocers of Cal., Ltd.</u>, 593 F.2d 857, 863–64 (9th Cir.1979). The district court's determination of whether a stay is appropriate, "must weigh competing interests and maintain an even balance." <u>Landis</u>, 299 U.S. at 254-55. These competing interests include:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

<u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962) (citing <u>Landis</u>, 299 U.S. at 254-55).

While the cases pending before the Ninth Circuit and Supreme Court may lend some guidance to this Court in issuing a decision on the motion to certify the class, the Court finds a significant stay of the motion would serve to prejudice Plaintiff in light of the length of time the case and motion have been pending, and the fact that certain discovery is stayed pending the ruling on the motion to certify. Furthermore, this Court delayed ruling on the motion to permit Defendant Hagedorn to file a separate opposition to a motion to certify the class. The Court also notes it retains discretion to revisit class certification throughout the legal proceedings and may rescind, modify, or amend the class certification in light of subsequent developments. <u>See</u> F<small>ED</small>.R.C<small>IV</small>.P. 23(c)(1)(C); <u>General Telephone Co. Of Southwest v. Falcon</u>, 457 U.S. 147, 160 (1982).

Accordingly, the motion to stay is DENIED.

//

## II.  Motion to Certify the Class

### A.  Plaintiff's Requests to Submit Evidence

### 1.  Application to Submit Newly Discovered Evidence

Plaintiff filed a request seeking to submit newly discovered evidence in support of their motion, in which they request leave to file under seal documents that contradict Defendants' representations in their opposition and surreply.  They maintain the documents are critical evidence because it confirms that there were significant questions about the safety of Defendants' product at issue in this matter.

Defendant oppose the request.  They argue the evidence is not newly discovered because Plaintiffs have known for over a year before seeking leave that the government believed there was some harm from Defendants' product and made those contentions in the criminal proceedings in the United States District Court for the Southern District of Ohio.  They further argue Plaintiffs' unauthorized use of the inadvertently produced materials is prohibited by federal law.  Defendants contend Plaintiffs sought authorization from the Ohio court to release the presentence materials that were inadvertently produced by Defendants and the request was still pending at the time Plaintiff filed the current application.  They argue Plaintiff should not be rewarded for circumventing the Ohio court and its rules.  Even if Plaintiff is permitted to produce the materials, Defendants contend, they do not support class certification.

Defendants also notified this Court of the decisions rendered by the Honorable Ruben B. Brooks and the District Court of Ohio rejecting Plaintiff's arguments regarding the presentence materials and denying Plaintiff's requests.

Judge Brooks denied Plaintiffs' request to use presentence materials from the Ohio court in this litigation and to compel Defendants to produce other sentencing submissions related to the presentence materials.  Judge Brooks determined the Ohio court is in a better position to interpret and apply its rules which principles of comity and sound judicial administration dictate should apply.  See Doc. No. 217.  Judge Brooks, later,

denied Plaintiffs' motion for reconsideration upon finding Plaintiffs did not offer any new law or facts justifying consideration.  See Doc. No. 243.

The Ohio District Court also denied Plaintiffs' request for authorization to disclose the presentence report and related documents.[4]  The court found Plaintiffs did not meet their burden to demonstrate the disclosure was necessary to meet the ends of justice and the information is not available through other means, and policy considerations support nondisclosure of the requested documents.

In their response, Plaintiffs maintain the decisions are not dispositive of the instant request, because the Ohio court did not include whether this Court has the authority to consider, under seal, portions of the sentencing letters Defendants produced in discovery.

This Court finds the documents Plaintiffs seek to submit under seal are not newly discovered and finds the rationale of the district court and the Sixth Circuit Court of Appeals persuasive.  The Court further finds the documents are not relevant to the pending motion.  As discussed further below, the Court finds the dispute over the toxicity levels of the bird food at issue in this matter requires this Court address the merits of the claims further than the limited inquiry necessary to make a decision on the motion to certify the class.  Accordingly, Plaintiff's application is DENIED.

## 2. Request for Judicial Notice

Plaintiffs seek judicial notice of a statement contained in the Sixth Circuit's decision affirming the Ohio District Court's denial of Plaintiffs request for authorization to use presentence documents.  Defendants oppose the request.

Because the Court finds the subject fact or statement irrelevant to its decision on the pending motion, the request for judicial notice is DENIED as moot.

---

[4] Plaintiff notified this Court it filed a notice of appeal of the decision.  See Pla's Response at 1 (Doc. No. 253).  The Sixth Circuit determined the Ohio District Court did not abuse its discretion in denying Plaintiffs' request for authorization to use the sentencing materials and affirmed the district court's order.  Sixth Circuit Decision, Plas' Exhibit 1 (Doc. No. 305-1).

**B. Legal Standard**

Whether to grant class certification is within the discretion of the court. Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978). A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. FED.R.CIV.P. 23(a). In addition, a party seeking class certification must meet one of the three criteria listed in Rule 23(b).

Courts should certify a class only if they are "satisfied, after a rigorous analysis," that Rule 23 prerequisites have been met. Falcon, 457 U.S. at 161. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," which "cannot be helped." Wal–Mart Inc. v. Dukes, 564 U.S. 338, 351 (2011). However, examination of the merits is limited to determining whether certification is proper and "not to determine whether class members could actually prevail on the merits of their claims. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n. 8 (9th Cir. 2011) (citation omitted).

**C. Discussion**

Plaintiffs requests the Court certify the following class for their RICO claim:

> All persons who purchased, and have not yet received a full refund for, a Scotts Miracle-Gro wild bird food product containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl, respectively ("MSBF").

They further ask the Court to certify three subclasses for claims in California, for counts 3 through 5; in Missouri for count 10; and Minnesota, for count 9.

**1. Rule 23(a)**

Plaintiffs argues class certification is warranted and maintain the requirements of Rule 23(a) are met. Defendants argue the proposed class is not ascertainable, and Plaintiffs cannot meet the commonality and typicality requirements of Rule 23(a).

//

**a. Numerosity**

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Plaintiffs contend the class which consists of millions of persons who purchased the Morning Song Bird Food are sufficiently numerous. They further contend the proposed subclasses each consist of tens of thousands of people. Defendants do not dispute Plaintiffs' contentions.

Plaintiffs meet the numerosity requirement.

**b. Commonality and Typicality**

Questions of law or fact must be common to the class. See FED.R.CIV.P. 23(a)(2). This requires the plaintiffs' claims be dependent on a common contention which is capable of class-wide resolution "in one stroke." Dukes, 564 U.S. at 350. Typicality under subsection Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED.R.CIV.P. 23(a)(3).

Plaintiffs contend there are common questions of fact or law. Specifically, Plaintiffs contend their RICO claims focus on Defendants' scheme which ensnared Plaintiffs and the other class members alike and the class's injuries derive from Defendants' unitary course of conduct. They further maintain commonality exists for the state claims as Plaintiffs' and the classes' claims derive from Defendants' distribution of Morning Song Bird Food without disclosing it was illegally treated with toxic pesticides hazardous to birds. Plaintiffs maintain the deceptiveness and materiality of Defendants' concealment of their illegal conduct and the illegality of their poison-laced product are common questions of law and fact for all class members and all claims.

Plaintiffs argue the claims of the class representatives are typical of the class. They maintain the same course of conduct that injured Plaintiffs also injured other class members. Specifically, they maintain the Cypherts, Barbara Cowin, Ellen Larson, and David Kirby were unlawfully induced into purchasing Morning Song Bird Food they would not have purchased had Defendants disclosed the product(s) was illegally treated

with pesticides that are toxic and hazardous to birds and other wildlife.  Plaintiffs argue because the scheme that harmed Plaintiffs is the same as to the class, typicality is met.

Defendants argue numerous factual questions must be answered to resolve any consumer's liability claims over the bird food at issue and the answers to those questions will necessarily vary from class member to class member.  Defendants also maintain Plaintiffs cannot establish on a class wide basis that all of the bird food at issue was toxic or that all purchasers would have changed their behavior if Scotts had disclosed the pesticide use based on the totality of the scientific evidence.  They maintain Plaintiffs, therefore, cannot meet the typicality, commonality and predominance requirements.

Because Defendants combine their typicality, commonality and predominance arguments, the Court will address these arguments in the discussion involving predominance below.

### c. Adequacy

To ensure due process requirements are met, "absent class members must be afforded adequate representation before entry of a judgment which binds them."  Hanlon v. Chysler Corp, 150 F.3d 1011, 1020 (9th Cir. 1998).  There are two criteria used to evaluate whether this requirement is met: 1) does the named class representatives and their counsel have any conflicts of interest with other class members; and 2) will the named representatives and their counsel prosecute the action vigorously on behalf of the class.  Id.

Plaintiffs maintain they will adequately represent the class.  They contend they do not have any interests antagonistic to class members and will vigorously protect their interests.  They understand their duties and agree to consider class members' interests and will continue to actively participate in the litigation.   Plaintiffs also contend the Cypherts will represent California, Cowin will represent Missouri, Larson will represent Minnesota to ensure the proposed class representatives' claims are materially identical to other class members they seek to represent.

Plaintiffs also maintain co-lead counsel are highly qualified lawyers who have experience in successfully prosecuting high-stakes complex cases and consumer class

1  actions, and they stand ready, willing a able to devote the resources necessary to see this

2  case through to a successful outcome.

3      Defendants do not specifically address this requirement.

4      The Court finds Plaintiffs meets the adequacy requirement.

5  **d. Ascertainability**

6      While the Ninth Circuit has not addressed the issue, many courts in this circuit,

7  including this Court, have recognized an implied requirement that a class is ascertainable.

8  See Amaro v. Gerawan Farming, 2016 WL 3924400 (E.D.Cal. 2016); Flo & Eddie, Inc. v.

9  Sirius XM Radio, Inc., 2015 WL 4776932 (C.D.Cal. 2015); Krueger v. Wyeth, Inc., 310

10  F.R.D. 468 (S.D.Cal. 2015); Stitt v. Citibank, 2015 WL 9177662 (N.D.Cal. 2015). A class

11  is ascertainable if it is administratively feasible to determine whether a particular individual

12  is a class member with a potential right to recover. See Parkinson v. Hyundai Motor Am.,

13  258 F.R.D. 580, 593–94 (C.D.Cal. 2008); Wolph v. Acer Am. Corp., 2012 WL 993531, at

14  *1 (N.D.Cal. 2012). The class members must be identifiable through objective criteria.

15  Kosta v. Del Monte Foods, Inc., 308 F.R.D. 217, 223 (N.D.Cal. 2015). Ascertainability

16  does not require "every potential class member ... [to] be identified at the commencement

17  of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D.Cal.1998); see

18  also Knutson v. Schwan's Home Serv., Inc., 2013 WL 3746118, at *5 (S.D.Cal. Jul. 15,

19  2013) ("Class certification hinges on whether the identity of the putative class members

20  can be objectively ascertained; the ascertaining of their actual identities is not required.").

21      Defendants argue the proposed class is not ascertainable because there is no

22  administratively feasible means of determining class membership. They maintain class

23  membership cannot be determined at all, let alone based on any objective criteria, because

24  Scotts never sold wild bird food directly to consumers, and thus has no master consumer

25  list. They further maintain Plaintiffs repeatedly testified that they did not retain their

26  product packaging, receipts, or other documents for their purchases and, thus, have no

27  means of supporting or determining their purchases. Defendants argue affidavits would be

28  the only potential option for ascertaining the class, and they cannot suffice here because,

11

1   assuming all proposed class members would be honest, the class members would probably

2   not remember the products they purchased.  In support, Defendants contend Plaintiffs'

3   testimony in this action lacks credibility as they have denied being parties to other lawsuits

4   filed against them, denied prior criminal proceedings, gave conflicting testimony about

5   their alleged purchases, contradicted themselves during their depositions and, in one case,

6   contradicted sworn testimony after the deposition was completed.

7       Defendants further argue there is no possible means of determining who purchased

8   a bag of bird food qualifying for class membership. They contend no class member can

9   determine when the bird food bag that he or she purchased was manufactured, what

10  pesticides, if any, were on the bird food, what application levels were used, or even if a

11  particular bag was manufactured by Scotts.  They maintain this is significant in this case

12  because Scotts did not acquire Gutwein, the original manufacturer of the bird food, until

13  November 2005, and Plaintiffs are not asserting any liability for bird food sold prior to

14  November 2005, but the length of time retailers keep product on their shelves varies

15  significantly and a consumer who purchased a bag of bird food in May 2006 or January

16  2007, has no way of determining whether that bag was manufactured before November

17  2005 without the package.  Defendants further maintain Plaintiffs have no way of knowing

18  whether their bird food was treated by Scotts with Storcide II, Actellic 5E, something else,

19  or nothing at all, because Scotts ceased applying any pesticides in March 2008.  They

20  contend the packaging is the only way to find the manufacture date and determine what

21  pesticide, if any, was applied.

22      Defendants also argue the proposed class is overbroad and unmanageable because

23  the pesticide application and degradation rates varied for different products, as did any risk

24  of harm, and purchasers cannot determine the level at which any pesticides were applied

25  or whether their products were treated with Storcide II or Actellic 5E.

26      Defendants maintain that without a package, no purchaser can ever determine

27  whether he or she purchased a bag of bird food manufactured by Scotts that falls within the

28  class definition or that otherwise qualifies for liability, and there is no means for Scotts to

raise challenges and defenses to Plaintiffs' claims without engaging in mini-trials for every putative class member.

In reply, Plaintiffs argue ascertainability is not an express requirement of Rule 23, although some courts hold it is implied.  They contend the class is defined with objective criteria, including (1) the illegal pesticides and their active ingredients; and (2) time frame of manufacture.  They maintain Defendants admitted guilt for applying Storcide II and Actellic 5E to the products from November 2005 to March 2008, and products remained on shelves for several months, and, thus, Plaintiffs offer to end the class period in May 2008 to ensure ascertainability.

Plaintiffs further argue it is irrelevant to their theory of the case whether a product was treated with Storcide II or Actellic 5E because it is illegal to apply either pesticide in any amount and both are known to be highly toxic to birds.  Additionally, Plaintiffs argue Defendants theory of ascertainability would defeat class actions.  They maintain Defendants have records reflecting which products were treated with the pesticides and which were shipped to which retailers.  In turn, they maintain, retailers track their inventories and retain consumer purchases.  Plaintiffs argue it is not the law in the Ninth Circuit that consumers keep their receipts to prove purchase of the products.

In their surreply, Defendants argue Plaintiffs attempt to side-step the ascertainability problem by offering to end the class period in May 2008, but this does not resolve the ascertainability issues.  The contend they stopped using Storcide II and Actellic 5E in March 2008 and those who bought bird food in April or May 2008 have no way of knowing whether their bird food was treated by Scotts with Storcide II, Actellic 5E or nothing at all.

They further argue Plaintiffs' assertion that retailers track their inventories is speculative and false, in that Plaintiffs served retailers with subpoenas to obtain consumer information and only one retailer provided a substantive response stating they cannot provide any information for consumers during the time Scotts was applying Storcide II or Actellic 5E.

Defendants also argue it was improper for Plaintiffs to submit a notice plan for the first time in their reply brief because Defendants did not have an opportunity to submit its own notice expert to access the plan.   Nevertheless, they argue the proposed plan is irrelevant because providing notice to potential bird enthusiasts solves none of the ascertainability problems.

Plaintiffs argue Defendants' extreme version of the ascertainability requirement is an ideologically inspired immunity accepted by some courts and rejected by others.  They maintain the Ninth Circuit has never "embraced" the requirement.

They contend no ascertainability issues affects Defendants' exposure because Defendants know the exact number of bags of bird "food" they manufactured and, thus, there is no risk that total amount of damages for which they are liable will extend beyond the verified number of bags.  They further contend Defendants have no legitimate interest in any potential ascertainability issues because these issues will have no impact on their exposure.

Plaintiffs seek a class consisting of purchasers of the wild bird food Defendants admitted to having treated with the pesticides Storcide II and Actellic 5E.  Defendants admit to having used the pesticides from November 2005 through March 2008.  Plaintiffs agree to limit the class to May 2008, reasoning that tainted bird food remained on stores shelves for several months.

 Plaintiffs provide an objective way of ascertaining the purchasers.   Using Defendants' records that provided evidence of when the products treated with the pesticides were shipped and to which retailers, Plaintiff subpoenaed the retailers records and have been able to get information identifying purchasers of the products during the time the products were shipped to retailers from Defendants.  Defendants argue the data received from the retailers provides, at most, limited information about the identity of only 6% of the purchasers.  Defendants also argue the class members cannot be identified because there is no way of knowing whether the bird food purchased during the class period actually contained the pesticides without viewing the packaging.  Plaintiffs are not required

to identify all class members at the time of certification.  See Astiana v. Kashi Co., 291 F.R.D. 493, 500 (S.D.Cal. 2013).   They need only provide an objective means for identifying the class members, which they have done.  See Wolph, 2012 WL 993531.

Plaintiffs use a specific date range for purchases of a specific product and there is no information that packaging for the wild bird food varied or that the pesticides were not placed in all packages of the wild bird food during the time-frame identified by Plaintiffs.[5] As such, the Court finds the class is ascertainable.  See Miller v. Fuhu, Inc., 2015 WL 7776794 (C.D.Cal. 2015) (Determining a class ascertainable where the class definition allowed class members to be identified by objective criteria, including a clear date range, place of purchase, and type of purchase, and further noting some purchasers registered their products with the defendant and could be, thereby, identified.).

**2.  Rule 23(b)(3)**

Plaintiffs argue the Rule 23(b)(3) requirements are readily met.

**a.  Predominance**

The predominance inquiry presumes the existence of common issues of fact or law have been established pursuant to commonality requirement of Rule 23(a)(2).  Hanlon, 150 F.3d at 1022.  However, meeting the commonality requirement is insufficient to fulfill the predominance requirement.  Id.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there

---

[5] This differs from cases in which district courts have found the class unascertainable based upon the varieties of products and labels sold by the defendants during the class period.  See  Jones v. ConAgra Foods, Inc., 2014 WL 2702726 (N.D.Cal. 2014) (Finding the many varieties of the products which had different labels and ingredients, and only some included the labels with the misleading language made the class unascertainable); Kosta v. Del Monte Foods, Inc, 308 F.R.D. 217 (N.D.Cal. 2015) ("[T]he product labels and packaging at issue here do not fall into neatly separate categories such that one can say with any confidence that the purchaser of an item in that category was subject to the alleged violations.")

1    is clear justification for handling the dispute on a representative rather than an individual

2    basis." Id.

3           Plaintiffs contend common issues of law and fact will predominate in this consumer

4    case based on uniform omissions.  They argue common issues present a significant aspect

5    of this case, and, thus, it is a good candidate for certification.

6           Plaintiffs contend the RICO claim raises common questions that will turn on

7    common proof that will yield common answers.  In support, they maintain issues of law

8    and fact in a RICO action are generally common to all the plaintiffs, because the plaintiffs

9    are asserting a single fraudulent scheme by the defendants which injured each plaintiff.

10   Here, they argue, every class member would prove the elements of Plaintiffs' RICO claims,

11   (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, with the

12   same evidence, and the answer would be the same as to each.  Specifically, they maintain

13   they will prove Defendants engaged in a scheme to make and sell the Morning Song Bird

14   Food with common proof of their conduct and knowledge and uniform omissions.  They

15   argue RICO does not require Plaintiffs to prove individual reliance, and even if reliance is

16   required the RICO claims are entitled to a presumption of reliance as they primarily allege

17   omissions.  They further argue, even if the Court does not apply a presumption of reliance,

18   certification of the RICO claims is still warranted as the material omissions were a

19   substantial factor in the sequence of responsible causation as to all class members, and the

20   causal relationship between Defendants' scheme and the victims is the same for everyone.

21   They maintain the natural and intended consequence of the omissions about the pesticides

22   was that Plaintiffs and the Class would purchase the Morning Song Bird Food, and given

23   that Plaintiffs and the class paid for bird food but received bird poison, proximate cause for

24   purposes of the RICO claim will be simple to resolve on a classwide basis.

25          Plaintiffs maintain the California consumer fraud claims will be proved with

26   common proof of Defendants' material omissions about the illegal use of pesticides that

27   are toxic and hazardous to birds.  They contend there is no reason to look at the

28   circumstances of each individual class member because these claims focus on Defendants'

misrepresentations, made by omission, and the fact finder need only determine if they would mislead a reasonable consumer.  As such, they argue, common issues will predominate as the claims are about the deceptive marketing by Defendants. Plaintiffs maintain courts frequently find that common questions of law and fact predominate when the focus of the proposed class action will be on the words and conduct of defendants rather than on the behavior of individual class members, as is the case here.  They further argue individual issues will not predominate because the success of Plaintiffs' California claims will depend on the effect of Defendants' failure to disclose its illegal use of Storcide II and Actellic 5E upon a reasonable consumer, not a particular consumer. Plaintiffs maintain relief under the UCL is available without individualized proof of deception, reliance and injury when the defendant is engaged in a common course of conduct.  Similarly, they maintain misrepresentations may be inferred to the class if the named plaintiff in a CLRA claim can show that material misrepresentations or omissions were made to the class members, and false advertisements in violation of section 17500 are suitable for class treatment where, as here, defendant disseminated standardized materials, such as the packaging, that did not disclose the pesticides.

Plaintiffs contend the Missouri consumer fraud claims will also be proved with common proof.  They contend they are required to show Ms. Cowin and the class suffered an ascertainable loss of money or property, and an ascertainable loss includes the harm to consumers deprived of the ability to make an informed choice about the product, such as material omissions about the safety of a product. Plaintiffs contend courts routinely find common issues predominate in MMPA claims because individualized reliance is not required.  They argue Plaintiffs and the class suffered an ascertainable loss as the product was worthless as bird food or any use other than sitting in a landfill, and Plaintiffs and the class were deprived of their ability to make an informed choice about the Morning Song Bird Food because Defendants failed to disclose their illegal pesticide use.

Plaintiffs maintain the Minnesota Consumer Fraud Act does not require a showing of individualized reliance, and the claims will be also be proven by common evidence.

12cv01592 JAH - AGS

Defendants argue Plaintiffs cannot meet the typicality, commonality and predominance requirements because (i) a trial is required on the "science" of every consumer's allegations; (ii) every class member's claim must be scrutinized for individual statute of limitations issues; (iii) establishing whether putative class members suffered an injury entails countless individual inquiries; (iv) causation and reliance issues preclude class certification; and (v) Plaintiffs fail to satisfy the <u>Comcast</u> requirement to provide a reliable class-wide damage model.

**i. "Science" of the Allegations**

Defendants argue the named Plaintiffs' allegations are subject to multiple Plaintiff-specific defenses that will plague the class. They maintain the allegations of bird deaths and their lack of foundation when the evidence is reviewed illustrate the plaintiff-specific nature of their claims and defenses. By way of example, Defendants point to the allegations of the Cypherts. They contend the Cypherts purchased wild bird food in 2010, and the packaging shows it was manufactured in 2009, long after Scotts stopped using Storicde II and Actellic 5E. Further, they contend, the Cypherts misused the bird food by feeding it to their domestic zebra finches when the label warned against feeding it to domesticated birds. Defendants further maintain there are many other explanations for the Cypherts' incident, such as infectious diseases, parasites, toxicoses and cold weather.

Defendants argue this demonstrates the defenses requires a scientific analysis of the allegations for the consumers and these unique issues would swallow the class claims.

Defendant Hagedorn similarly argues consumers' differing views on the scientific risks are individualized and foreclose class certification.

In reply, Plaintiffs contend Defendants' scientific arguments are premature. They maintain they will disprove Defendants' experts' opinions regarding the toxicity and harm to consumers in due course, and that class certification is not a mini-trial. They further maintain they have not had the opportunity to test the admissibility of the opinions, and argue the opinions are facially vulnerable to challenge. Plaintiffs also contend Defendants' attempt to litigate the merits issues based on science emphasisze the appropriateness of

18

class certification because Plaintiffs' claims are about worthless bird food that focuses on Defendants' illegal scheme and not bird injuries or death.

The Court finds the science of the allegations addresses the merits of Plaintiffs' claims more than is necessary to determine whether class certification is appropriate in that the Court would be required to determine whether Plaintiffs would prevail on the merits based upon the scientific evidence submitted.  See Ellis, 657 at 983 n. 8.  The Court's consideration of the merits should be limited at this state of the proceedings.

**ii.  Statute of Limitations**

Defendants argue individual, fact-intensive inquiries are required to determine whether the putative class members' claims survive the applicable statutes of limitations. They maintain the claims are governed by a statute of limitations of four years or less and are subject to the discovery rule.  In other words, they contend, each putative class member's claim accrued when he or she knew or should have known of a potential claim, and, they argue, the time when that occurred will differ for every purported class member and will require mini-trials.  They further contend allegations of fraudulent concealment is another basis for finding a lack of predominance.

Defendant Hagedorn also argues limitations issues are individualized.[6]

Plaintiffs argue all the facts that Defendants suggest satisfy the discovery rule are the same as to all class members and the individual issues of compliance with the limitations period, given the scheme, do not defeat predominance.  Plaintiffs argue the representations made by Defendants before 2012 concealed the crime, and whether class members saw the pre-January 2012 statement is irrelevant because Defendants never issued

---

[6] Relying on Defendants' motion for summary judgment, he maintains former Plaintiff Kloeppel was on notice of his claim in 2008 but the fact was not uncovered until he was deposed.  He argues identifying other Kloeppel like class members will require individual trials.  The Court finds it not appropriate to base its findings on argument set forth in a motion to which Plaintiff has not had the opportunity to address.

a consumer level recall, never identified the affected products by name, which pesticides were at issue, their toxicity to birds or provided notice by way of their warning labels. They maintain the "Fellow Bird Lover" letter claims the pesticides did not constitute a significant health risk to wild birds and were safe on human food and forged the signature of a bird doctor without authorization. They maintain consumers had no way of knowing of Defendants' misconduct prior to the January 2012 guilty plea. Additionally, they argue any consumer who noticed problems or injured birds could not discover the crime as Defendants concealed the existence pesticides, misrepresented the risk and marketed the products for wild birds that fly away, and Defendants' own expert argues birds die for a variety of reasons.

The Court finds Plaintiff sufficiently demonstrate the facts surrounding the statute of limitations and the discovery rule, including any issues of fraudulent concealment, are not individualized but, instead, are common to the class members as it involves Defendants' conduct in pleading guilty to the criminal charges in January 2012. The Court further finds the issues are typical of the class and the common issues predominate.

### iii. Establishing Injury

Defendants maintain Plaintiffs must establish all class members suffered an "injury in fact" and that there is a causal connection between the injury and Defendants' alleged conduct. They argue Plaintiffs make no effort to define the class in a way that would exclude uninjured class members, instead, they maintain, Plaintiffs allege they did not receive the benefit of their bargain. Defendant contends the alleged injury turns on whether each consumer received the perceived benefit of his or her bargain, which will necessarily vary by consumer depending on that consumer's expectations. They further contend, if a consumer used the product, liked it, and experienced no problems with it, that consumer received the benefit of his or her bargain. Additionally, Defendants maintain whether a consumer received the benefit of his or her bargain also turns on whether the consumer would have considered the product's level of risk to be of any importance, which will vary

by consumers.  Therefore, they argue, economic analysis required to assess "benefit of the bargain" necessarily varies among consumer.

Defendant Hagedorn argues Plaintiffs' civil RICO claims require that all class members establish injury caused by Mr. Hagedorn's involvement in the alleged conspiracy, and Plaintiffs cannot establish that all putative class members suffered an injury in fact fairly traceable to Defendant Hagedorn's conduct.  He maintains Plaintiffs' own motion illustrates that he did not join the RICO conspiracy until October 16, 2007, and Plaintiffs have not asserted any legal theory upon which he is liable for conduct prior to October 2007.  Defendant contends putative class members who purchased the product manufactured before October 16, 2007, have not been injured by conduct attributable to Mr. Hagedorn, and therefore, they lack standing to pursue claims against him.

Plaintiffs maintain their "benefit of the bargain" theory means all class members necessarily experienced an economic injury in purchasing worthless bird poison. They contend Defendants' argument that class members received a benefit ignores consumers' obvious desire to purchase nourishing bird food, not bird poison.

Plaintiffs also argue Defendant Hagedorn misconstrues the law.  They maintain Defendants' roles relate only to apportionment of liability among them, a damages question they contend is not proper at this stage of the proceedings.  They further maintain their allegations demonstrate Hagedorn was a participant in the alleged wrongdoing as CEO and Chairman of SMG and an executive officer of Scott's LLC and Gutwein, not just because of his participation in the October 16, 2007 meeting.  Additionally, Plaintiffs contend they need to conduct discovery to determine Defendant Hagedorn's liability for the RICO scheme, which is inappropriate for resolution on a motion for class certification.

Plaintiffs' theory is that they were harmed by purchasing bird poison that Defendants' misrepresented as bird food.  Plaintiffs' class definition are those individuals who purchased, Scotts Miracle-Gro wild bird food product containing Storcide II, Actellic 5E, or their active ingredients.  As such, the class members are those who "were relieved of their money by [Defendants'] deceptive conduct[,] as Plaintiffs allege," and, therefore

have suffered injury.  <u>Mazza v. American Honda Motor Co., Inc.</u>, 666 F.3d 581, 595 (9th Cir. 2012).  The Court finds facts establishing injury are common to the class, typical of the class and will not require an individualized assessment.  The Court further finds Defendant Hagedorn's argument regarding the level of his involvement in the conspiracy is an issue on the merits which is not appropriately addressed in this motion.

**iv.  Causation and Reliance**

Defendant argues individual issues of causation predominate over any common RICO Issues.  They maintain there are multiple questions presented for each purchaser, including: (1) Why did he or she buy the product; (2) If Scotts "disclosed" the "truthful" scientific information, would the consumer have read it and determined it to be important; and (3) Would he or she have bought the product anyway?  Defendants contend the answers to those questions will vary by each consumer's individual preferences based on uncontroverted expert testimony.  They maintain Plaintiffs attempt to avoid individual reliance by asserting that RICO does not require proof of individual reliance, first-party reliance is not required for predicate acts. They further maintain Plaintiffs seek to avoid individual reliance issues by asserting they are entitled to a class-wide presumption of reliance, but the shortcut of a presumption has been applied in cases involving securities fraud, not cases of the type present here.  Additionally, they contend Plaintiffs cannot rest on a presumption of reliance in this case because they affirmatively allege both misrepresentations and omissions.  Defendants argue individualized reliance issues related to Plaintiffs' knowledge, motivations, and expectations will overwhelm any common issues.  They maintain the evidence shows putative class members saw different representations and assigned different importance to them.  Further, they argue the evidence shows there is no basis for finding "materiality" as to anyone, let alone everyone.  Defendants argue Plaintiffs fail to carry their burden.

Defendants also argue, even if Plaintiffs' omission theory was otherwise viable, it would vary by state, which would also defeat predominance. They contend Plaintiffs fail to point to any explicit statutory duty requiring Scotts to disclose the pesticides or risks of

22

12cv01592 JAH - AGS

pesticides used in its products.  They further contend, even assuming Plaintiffs were able to point to something in the state statutes to give rise to an independent duty to disclose, Plaintiffs' purported nationwide RICO class would devolve into a hodge-podge analysis of all 50 states' laws.  Defendants argue that even if Plaintiffs recast their case as an "omissions-only" case, they fail to identify a statutory duty to disclose, fail to engage in any choice of law analysis for any duty to disclose, and fail to present any trial plan for the presentation and management of their disparate claims in all 50 states.  They maintain the complexity of the trial will be further exacerbated by looking to the laws of the 50 states.

Defendant Hagedorn makes the same argument in his opposition.[7]

Plaintiffs argue, in reply, that materiality is an objective standard and the questions raised by Defendants are answered by common proof, or are irrelevant to Plaintiffs' theory of the case.  Specifically, they maintain whether Defendants manufactured the food, whether they treated it with illegal poison and whether the product is worthless are answered by common proof, while whether the poison was enough to kill birds and whether the risk was significant or slight are irrelevant.  They further argue, even if RICO requires reliance, it can be proven class-wide because the purchases cannot be explained in any way other than reliance.

"Courts have found that reliance can be established on a class-wide basis where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct."  Cohen v. Trump, 303 F.R.D. 376, 358 (S.D.Cal. 2014) (listing cases in which courts have found reliance is apparent or that a common sense inference of reliance was appropriate).  Plaintiffs' theory is Plaintiffs would not have purchased the bird food if they knew it was poison.  The Court finds a common sense

---

[7] He further asserts his limited involvement in the conspiracy demonstrates Plaintiffs cannot establish causation as to him on a class-wide basis.  As discussed above, the extent of Hagedorn's involvement in the conspiracy and liability under the conspiracy on not proper for resolution in the motion for class certification.

inference can be made that the class members relied upon Defendants misrepresentation that the product was bird food and not bird poison.  As such, reliance can be determined on a class-wide basis.

**v.  Class Damages**

Plaintiffs allege they are entitled to full refunds for every bag of Morning Song Bird Food purchased, which is subject to mandatory trebling under the RICO Statute.  They contend their method of calculating damages based upon trebled refunds is appropriate.  They maintain Plaintiffs may recover all damages that are the foreseeable and natural consequences of the fraud, which includes the return of monies paid by them.

Defendants argue Plaintiffs fail to satisfy the requirements of <u>Comcast</u> or otherwise present a reliable class-wide damage model.  They argue, post-<u>Comcast</u>, courts around the country, including federal courts in California, have rejected plaintiffs' attempts to present an oversimplified and arbitrary "full refund" model of class-wide damages.  Defendants maintain the expert evidence in this case establishes the product was not worthless and was safe for use by consumers to feed their birds, as the undisputed facts show that, at best, Storcide II and Actellic 5E presented an insignificant risk of injury.  They contend, notwithstanding those risks, the wild bird food provided value to the purported class members.  Thus, Plaintiffs are not entitled to a full refund.

Defendants further argue that even if plaintiffs' "full refund" theory had any merit, accurately calculating damages would require separate mini-trials that preclude class certification.  They maintain none of the Plaintiffs were able to provide any specific credible information regarding: (1) how much Scotts' bird food was purchased; (2) the specific type purchased; (3) when the bird food was purchased; (4) how big the bags were; or (5) how much money was paid for the wild bird food as to any given bag.  They further maintain Plaintiffs repeatedly confused Scotts wild bird food with its competitors.  Defendants contend they are entitled to a jury trial on each of Plaintiffs' purported recollections.  Additionally, they contend Plaintiffs purport to exclude refunds from the class but they have no means of determining who received a refund from retailers.  As

1 such, they argue, even if they are entitled to a full refund, it is impossible to calculate an

2 accurate amount.

3     Defendant Hagedorn asserts the same argument in his opposition.

4     Plaintiff argues this district has upheld a "full refund" model of class-wide RICO

5 damages upon reasoning RICO damages depend on objective losses rather than subjective

6 valuations. They maintain the "full refund" model is appropriate here, because the products

7 were fit only for the trash dump and retailers received full refunds. They further maintain

8 Defendants' and retailer's records will identify the total damages.

9      At the certification stage, Plaintiffs are required to establish their damages model is

10 capable of measuring damages on a class wide basis and consistent with Plaintiffs' theory

11 of liability. <u>Comcast Corp. v. Behrend</u>, 133 S.Ct. 1426, 1432-33 (2013). Plaintiffs seek a

12 full refund of monies paid for the bird food they allege was actually bird poison and

13 worthless. They further maintain the damages may be determined from their damages

14 model is Defendants' and retailers' records. The Court finds Plaintiff's damages model

15 measures damages consistent with their theory and can be measured on a class-wide basis.[8]

16     Plaintiffs sufficiently demonstrate the claims of the proposed class involve the same

17 alleged injury, allege the same conduct by Defendants and will involve common proof.

18 Therefore, common issues predominate.

19 **b. Superior**

20     In addition to finding predominance, a court must also find "that a class action is

21 superior to other available methods for fairly and efficiently adjudicating the controversy."

22 FED.R.CIV.P. 23(b)(3). A class action may be superior if "class-wide litigation of common

23 issues will reduce litigation costs and promote greater efficiency" and "if no realistic

24

25

26 [8] <u>See</u>, e.g. <u>In re Steroid Hormon Product Cases</u>, 181 Cal.App.4th 145, 156-57 (2010) (The
plaintiff relied on the defendant's deceptive conduct and purchased a product containing
27 an illegal substance; it was not a stretch to conclude that a reasonable person would find
28 the lawfulness to sell a product important when deciding whether to purchase it.).

alternative exists." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

Plaintiffs maintain they are not aware of any other litigation commenced by the class for refunds for the Morning Song Bird Food. They further maintain resolution of the class issues will require extensive discovery into Defendants' scienter, manufacturing processes, and marketing materials, whereas proving the individual amount of damages for each class Member can be adjudicated in individualized follow-on proceedings. Moreover, Plaintiffs maintain members would not be able to pay an attorney to pursue their claims individually. Thus, they argue, proceeding as a class action is superior.

In opposition, Defendants argue the difficulty of determining class membership makes managing the case as a class action complicated which is sufficient to preclude a finding that a class action is superior. They also contend Plaintiffs have never presented a viable trial plan for the purported class claims and, they argue, the many individual questions will render a class action unmanageable. Defendants further argue a class action is not superior because Scotts is already offering the relief Plaintiffs seek, namely a refund.

Defendant Hagedorn maintains, given the individual issues of reliance and damages, class action treatment would be entirely unmanageable as to him and would violate his due process rights.

In reply, Plaintiffs argue a class action is the only realistic means to adjudicate the claims. They maintain the largest recovery possible would be a miniscule fraction of the cost to bring the suit, and the efficiencies gained by class treatment outweigh any difficulties. Plaintiffs also argue Defendants' due process rights will not be violated because their defenses are based on facts that apply to nearly all the putative class members and are subject to common proof. They maintain any individualized defenses as to damages claims may be addressed after the common liability questions are resolved. Additionally, Plaintiffs argue Defendants never issued a consumer-level recall nor advised consumers they could get full refunds.

In light of the costs of bringing an individual action compared to the recovery and the efficiency in addressing the common issues on a class-wide basis, the Court finds a class action is superior.

### CONCLUSION AND ORDER

Based on the foregoing IT IS HEREBY ORDERED:

1.     Defendants' motion to stay ruling on the motion for class certification is **DENIED**;

2.     Plaintiffs' ex parte motion for leave to submit newly discovered evidence is **DENIED**;

3.     Defendants' *ex* parte request for oral argument is **DENIED**;

4.     Plaintiffs' motion for class certification is **GRANTED**;

5.     The class definition is modified, as follows:

All persons who, prior to May 1, 2008, purchased and have not yet received a full refund for, a Scotts Miracle-Gro wild bird food product containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl, respectively ("MSBF").

.

DATED:     March 30, 2017

_____
JOHN A. HOUSTON
United States District Judge