ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON A. FORGE (181542)
RACHEL L. JENSEN (211456)
MICHAEL ALBERT (301120)
RACHEL A. COCALIS (312376)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
malbert@rgrdlaw.com
rcocalis@rgrdlaw.com

DOWD & DOWD P.C.
DOUGLAS P. DOWD
ALEX R. LUMAGHI
211 North Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/621-2500
314/621-2503 (fax)
doug@dowdlaw.net
alex@dowdlaw.net

THE DRISCOLL FIRM, P.C.
JOHN J. DRISCOLL
CHRISTOPHER QUINN
GREGORY PALS
211 N. Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/932-3232
314/932-3233 (fax)

Class Counsel

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MORNING SONG BIRD FOOD LITIGATION | Lead Case No. 3:12-cv-01592-JAH-AGS |
| ——————————————— | |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| ——————————————— | |

DATE:     February 4, 2019
TIME:     2:30 p.m.
CTRM:    13B
JUDGE:   Hon. John A. Houston

1502674_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................... 1

II.  RELEVANT PROCEDURAL BACKGROUND ............................................ 2

III. TERMS OF THE SETTLEMENT ................................................................. 6

IV. APPLICABLE LEGAL STANDARDS ...................................................... 10

V.  THE COURT SHOULD PRELIMINARILY APPROVE THE
SETTLEMENT ........................................................................................... 11

    A.   The Settlement Provides a Fair, Adequate and Reasonable
Result for Settlement Class Members ............................................... 11

        1.   Amount Offered in Settlement ............................................... 13

        2.   The Risk, Expense, and Delay of Further Litigation,
Including the Risk of Decertification ..................................... 14

        3.   The Extent of Discovery Completed, and the Stage of the
Proceedings ............................................................................ 15

        4.   The Experience and Views of Counsel .................................. 16

    B.   The Settlement Provides the Best Class Notice Practicable .............. 17

    C.   The Notice Provides a Clear Explanation to Settlement Class
Members of Their Opportunity to Opt Out of the Settlement ........... 19

VI. CERTIFICATION OF THE SETTLEMENT CLASS IS
APPROPRIATE ......................................................................................... 19

VII. THE PROPOSED SCHEDULE OF EVENTS ............................................ 20

VIII. CONCLUSION .......................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ..................................................... 13

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017) ................................................................... 5

*Capps v. Law Offices of Peter W. Singer*,
  No. 15-cv-02410-BAS(NLS), 2016 U.S. Dist. LEXIS 161137
  (S.D. Cal. Nov. 21, 2016) ........................................................ 13, 17

*Cervantez v. Celestica Corp.*,
  No. EDCV 07-729-VAP, 2010 U.S. Dist. LEXIS 78342
  (C.D. Cal. July 6, 2010) ........................................................... 15, 16

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) .......................................................... 11

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................... 10

*Cohen v. Trump*,
  No. 3:13-cv-02519-GPC-WVG
  (S.D. Cal. Oct. 27, 2014) ............................................................... 16

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ......................................................... 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................... 11

*Hart v. Colvin*,
  No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS 155799
  (N.D. Cal. Nov. 9, 2016) ......................................................... 10, 11

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................... 16

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................ 8, 9

**Page**

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales*
    *Practices, & Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374
    (N.D. Cal. Oct. 25, 2016) ................................................................. 14

*LendingClub Sec. Litig.*,
    No. 3:16-cv-02627-WHA
    (N.D. Cal. Oct. 28, 2016) ................................................................. 16

*Low v. Trump University, LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........................................... 19

*Low v. Trump University, LLC*,
    881 F.3d 1111 (9th Cir. 2018) ......................................................... 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ......................................................................... 17

*Riker v. Gibbons*,
    No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841
    (D. Nev. Oct. 28, 2010) ............................................................. 16, 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................... 10

*United States v. Armour & Co.*,
    402 U.S. 673 (1971) ......................................................................... 13

1
2                                                                                 **Page**
3
**STATUTES, RULES AND REGULATIONS**
4
Federal Rules of Civil Procedure
5
    Rule 23 ...................................................................................... 11, 21
6
    Rule 23(a) ...................................................................................... 20
7
    Rule 23(b)(3) ................................................................................. 20
    Rule 23(c)(2) .................................................................................. 17
8
    Rule 23(c)(2)(B) ............................................................................ 19
9
    Rule 23(e) ...................................................................................... 10, 12
    Rule 23(e)(2) .......................................................................... 11, 12, 20
10
    Rule 23(e)(2)(A) ........................................................................... 12, 15
11
    Rule 23(e)(2)(B) ........................................................................... 6, 12
    Rule 23(e)(2)(C) ........................................................................... 13
12
    Rule 23(e)(2)(C)(i) ....................................................................... 12, 14
13
    Rule 23(e)(2)(C)(ii) ...................................................................... 12
    Rule 23(e)(2)(C)(iii) ..................................................................... 12
14
    Rule 23(e)(2)(C)(iv) ..................................................................... 12
15
    Rule 23(e)(2)(D) ........................................................................... 12
    Rule 23(e)(3) ................................................................................. 12
16
    Rule 23(f) ...................................................................................... 1, 3, 5
17
Department of Treasury Regulations
18
    §1.468B-1 ...................................................................................... 7
19   **SECONDARY AUTHORITIES**
20
4 Alba Conte & Herbert B. Newberg,
21
    *Newberg on Class Actions* (4th ed. 2002)
22
    §11:47 ........................................................................................... 16
23
*Manual for Complex Litigation* (4th ed. 2004)
    §21.63 .......................................................................................... 11, 17
24
25
26
27
28

1   Plaintiffs submit this memorandum in support of their unopposed motion for
2   preliminary approval of the Settlement as memorialized in the Parties' Stipulation of
3   Class Action Settlement, dated December 7, 2018, which, along with its exhibits, is
4   referred to as the "Agreement" and attached hereto as Exhibit 1.[1]

5   **I.      INTRODUCTION**

6   After more than six years of hard-fought litigation, and less than six weeks
7   before the fact discovery cut-off, the Parties reached a global settlement to resolve this
8   consolidated class action litigation.  Under the Agreement, Scotts, on behalf of itself
9   and all Defendants, will pay up to $85,000,000 into the Settlement Fund, or more
10  depending on the amount of claims submitted.[2]  Importantly, there is **no** monetary cap
11  under the terms of the Settlement for Retailer-Identified Refunds and Proof of
12  Purchase Refunds.  In other words, regardless of any other circumstances, every
13  Settlement Class Member whose purchases are documented by valid proof of
14  purchase or retailer records will be paid a full refund.

15  By any metric, this is a fair, adequate, and reasonable Settlement.   Both
16  Plaintiffs and Defendants believe in the merits of their cases and compromised to
17  reach this result.  Plaintiffs and Class Counsel have extensively investigated the facts
18  and law relating to the class claims and Defendants' defenses.  This case has been
19  heavily litigated through motions to dismiss and class certification, including a
20  Rule 23(f) petition, and is at an advanced stage of discovery.  The Parties have the
21  benefit of a full factual record in which to evaluate the merits of their cases.  While
22  Plaintiffs and Class Counsel believe the class claims are meritorious, they also
23  recognize the expense and amount of time it would take to continue prosecuting this

24
25  [1]   Capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise noted.

26
27  [2]   As explained below, this amount can either increase by the payment of additional funds by Scotts, or decrease by the return of a limited amount to Scotts, depending on the total claims received and the nature of those claims.
28

3:12-cv-01592-JAH-AGS

1    Action through trial and any subsequent appeals.  Plaintiffs and Class Counsel have

2    taken into account the uncertain outcome and risk involved in any litigation,

3    especially complex actions such as this one, including the difficulties and delays

4    inherent in the litigation process.  With all of these factors in mind, Plaintiffs and

5    Class Counsel are confident that the Settlement is fair, reasonable, adequate, and in

6    the best interests of the Settlement Class.  Significant risk existed as to both sides.

7    This Settlement resolves that risk and provides immediate relief to Settlement Class

8    Members, who will not have to face the uncertainty and delay of further litigation,

9    including summary judgment, trial and appeals.

10        Plaintiffs request, therefore, that the Court grant their unopposed motion for

11   preliminary approval, order the Notices to be sent out, and set a date and time for a

12   fairness hearing pursuant to Fed. R. Civ. P. ("Rule") 23(e)(2).

13   **II.     RELEVANT PROCEDURAL BACKGROUND**

14        The procedural history of this Action is extensive and well-known to the Court.

15   Therefore, Plaintiffs limit their recitation here to facts relevant to the issues at hand.

16        On June 27, 2012, Plaintiffs Laura and Milt Cyphert (the "Cypherts"),

17   individually and on behalf of purchasers of Morning Song Bird Food, filed a putative

18   class action in this Court against Scotts, seeking refunds for Morning Song Bird Food,

19   among other relief, based on the alleged risk of harm that it posed to birds.  *See*

20   ECF 1.[3]

21        On September 11, 2012, the Court consolidated the Cypherts' case with other

22   putative class actions filed by Plaintiffs Ellen Larson and David Kirby (collectively

23   "Plaintiffs"), among others, also seeking relief individually and on behalf of

24   consumers who had purchased Morning Song Bird Food.  *See* ECF 9.  In the same

25   order, the Court appointed Robbins Geller Rudman & Dowd LLP and Dowd &

26

27   [3]  Page number citations to docket entries ("ECF") refer to the page numbers

28   generated by the electronic case filing (CM/ECF) system.

1   Dowd P.C. to serve as co-lead counsel (*id.*), later amending the order to add The

2   Driscoll Firm, P.C. (*see* ECF 18).

3          On October 9, 2012, Plaintiffs, individually and on behalf of a putative class of

4   consumers who had purchased Morning Song Bird Food, filed their original

5   consolidated complaint, asserting 19 claims against Scotts, including alleged

6   violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

7   alleged violations of certain state statutes, and certain common law claims.  ECF 10.

8   Scotts moved to dismiss the complaint.  ECF 21.

9          On January 31, 2013, Plaintiffs, individually and on behalf of the putative class,

10   filed an amended consolidated complaint, asserting 17 claims against Scotts, including

11   (1) alleged violations of RICO; (2) alleged violations of the Kentucky Consumer

12   Protection Act ("KCPA"), the California Unfair Competition Law ("UCL"), the

13   California False and Misleading Advertising Law ("FAL"), the California Legal

14   Remedies Act ("CLRA"), the Missouri Merchandising Practices Act ("MPA"), the

15   Minnesota Consumer Fraud Act ("CFA"), the New Mexico Unfair Practices Act; and

16   (3) certain common law claims.  ECF 26.  Scotts moved to dismiss the complaint.

17   ECF 32.

18          On September 30, 2013, the Court granted in part and denied in part Scotts'

19   motion to dismiss and issued an order sustaining all of Plaintiffs' claims, except the

20   Magnuson-Moss Warranty Act, Arkansas Deceptive Trade Practices Act, breach of

21   express warranty, negligent misrepresentation (as to the Cypherts), and unjust

22   enrichment claims.  ECF 44.

23          In March 2014, Scotts sold its wild bird food business and, therefore, no longer

24   manufactures, markets, or sells the Morning Song Bird Food at issue in this Action.

25   *See* ECF 115 at 16.

26          On October 20, 2014, Plaintiffs moved for certification of a nationwide class of

27   all consumers who purchased Morning Song Bird Food for the RICO claim, as well as

28   three subclasses of California, Missouri, and Minnesota consumers who had

1  purchased Morning Song Bird Food for the state statutory claims: (1) California for

2  the UCL, FAL, and CLRA claims; (2) Missouri for the MPA claim; and (3) Minnesota

3  for the CFA claim.  ECF 93-1.

4        On December 1, 2014, Scotts filed its opposition to the motion for class

5  certification (ECF 115-123), and on December 2, 2014, Scotts filed a motion for

6  summary judgment.  ECF 128.

7        On October 9, 2015, after the Court granted leave to do so, Plaintiffs filed the

8  Second Amended Consolidated Class Action Complaint (the "Complaint"), adding as

9  a defendant Mr. Hagedorn.  ECF 260.  Plaintiffs, individually and on behalf of a

10  putative class of consumers who had purchased Morning Song Bird Food, alleged

11  violations of RICO, the CLRA, the UCL, the FAL, the KCPA, the CFA, and the

12  MPA; for breach of implied warranty of merchantability and of the common law of

13  implied warranty of fitness for consumption by animals; and for intentional

14  misrepresentation and negligent misrepresentation (as to certain Plaintiffs).

15        On December 14, 2015, Mr. Hagedorn moved to dismiss the Complaint,

16  arguing, among other things, that Plaintiffs failed to establish personal jurisdiction

17  over him and to state valid claims against him.  ECF 279.

18        On September 29, 2016, the Court granted in part and denied in part

19  Mr. Hagedorn's motion to dismiss, upholding the RICO claim and dismissing the state

20  claims against Mr. Hagedorn.  ECF 309.

21        On December 2, 2016, Mr. Hagedorn filed his opposition to Plaintiffs' pending

22  motion for certification of the nationwide RICO class.  ECF 317.

23        On March 31, 2017, the Court granted Plaintiffs' motion for class certification,

24  certifying a nationwide class as to Scotts and Mr. Hagedorn for alleged violations of

25  RICO and, as to Scotts only, three subclasses for alleged violations of the UCL, the

26  FAL, the CLRA, the MPA, and the CFA.  ECF 326 at 8, 27.  The class was defined

27  as: "All persons who, prior to May 1, 2008, purchased and have not yet received a full

28  refund for, a Scotts Miracle-Gro wild bird food product containing Storcide II,

Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl, respectively ("MSBF")." *Id.* at 27. The Court also appointed Plaintiffs to serve as class representatives and appointed Class Counsel. *See* ECF 326.

On March 31, 2017, the Court withdrew Scotts' motion for summary judgment without prejudice to its refiling. ECF 327.

On April 13, 2017, Scotts and Mr. Hagedorn filed a petition to the United States Court of Appeals for the Ninth Circuit pursuant to Rule 23(f), seeking permission to appeal the Court's class certification order ("Rule 23(f) Petition").

On June 12, 2017, the Ninth Circuit denied the Rule 23(f) Petition. ECF 342.

On July 17, 2017, Scotts moved to dismiss or, in the alternative, for judgment on the pleadings in light of the U.S. Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). ECF 344. Mr. Hagedorn also moved for reconsideration of the Court's September 2016 order on his motion to dismiss based on *Bristol-Myers*. ECF 345. In March 2018, the Court denied both motions. ECF 419.

On May 17, 2018, Ray Hill moved to intervene and substitute for plaintiff Barbara Cowin (now deceased) as class representative, and Defendants opposed that motion. ECF 442, 452.

The Parties also engaged in extensive arm's length settlement discussions before reaching this Settlement. *See* Declaration of Rachel L. Jensen in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Jensen Decl."), ¶5. On November 22, 2013, the Honorable Ruben Brooks presided over an in-person Early Neutral Evaluation Conference, as well as several subsequent in-person or telephonic settlement conferences, but the Parties were unable to resolve the Action at those times. *See id.*, ¶6.

On June 4, 2018, the Parties engaged in a full day of mediation in New York before the Honorable Layn Phillips (ret.), but were unable to reach an agreement to resolve the Action. *See* Jensen Decl., ¶7. The Parties continued to explore potential

1    resolution of the Action with the assistance of Judge Phillips and his team, and

2    ultimately, on August 17, 2018, the Parties executed a term sheet, setting forth the

3    principal terms of settlement between Plaintiffs, on behalf of themselves and the

4    Settlement Class, and Defendants.[4]  *See id.*, ¶10.  The Parties informed the Court of

5    their agreement in principle to settle the Action by telephone on August 15, 2018, and

6    by written notice filed on August 20, 2018.  ECF 503, 506.  On August 16, 2018, the

7    Court ordered the Parties to submit a joint stipulation seeking preliminary approval of

8    the Settlement by November 16, 2018 (ECF 506), which date was subsequently

9    extended by the Court to December 7, 2018.  ECF 509.

10   ## III.    TERMS OF THE SETTLEMENT

11       At the outset, the scope of the Settlement Class largely mirrors that of the class

12   certified by this Court on March 31, 2017, and is defined as "all Persons who, between

13   November 1, 2005 and May 1, 2008, purchased and have not yet received a full refund

14   for their Morning Song Bird Food purchases."  *See* Agreement, §II.56.[5]

15       Within 30 days after the entry of the Preliminary Approval Order, Scotts, on

16   behalf of itself and all Defendants, shall deposit into the Settlement Fund Account the

17   first installment of the Settlement Amount in the amount of $42,500,000.  Within 30

18   days after the Effective Date – the date the Court's Final Order and Judgment is final

19   and no longer subject to any appeals (Agreement, §II.17.) – and depending on the

---

21   [4]    Amended Rule 23(e)(2)(B), discussed below, involves consideration of whether
22   "the proposal was negotiated at arm's length[.]"

23   [5]    The following are excluded from the Settlement Class: (a) Defendants and their
24   immediate families, the officers, directors and affiliates of Defendants, at all relevant
     times, members of their immediate families and their legal representatives, heirs,
25   successors or assigns, and any entity in which Defendants have or had a controlling
     interest; (b) distributors, retailers, and other resellers of Morning Song Bird Food;
26   (c) judicial officers and their immediate family members and associated court staff
     assigned to this case; and (d) all those otherwise in the Settlement Class who timely
27   and properly exclude themselves from the Settlement Class as provided in the
28   Agreement.  *Id.*

1  amount of claims received by the Settlement Administrator, Scotts will further deposit
2  into the Settlement Fund Account the second installment of the Settlement Amount in
3  an amount up to $42,500,000 (with a minimum of $20,000,000).  Within that same
4  time, and to the extent necessary, Scotts will deposit any additional amounts required
5  to fully compensate those Settlement Class Members receiving Retailer-Identified
6  Refunds and Proof of Purchase Refunds.  *See* Agreement, §VI.A.1-3.

7       The cost of notice to the Settlement Class and settlement administration
8  ("Notice and Administration Expenses") will be paid from the Settlement Fund.
9  Agreement, §II.28.  The Parties propose KCC LLC ("KCC") as the Settlement
10  Administrator, subject to the Court's approval.  The proposed notice plan and plan for
11  claims processing is discussed below in §V.B-C and in the Declaration of Carla A.
12  Peak in Support of Notice Plan ("Peak Decl."), filed concurrently herewith.  KCC
13  currently estimates that Notice and Administration Expenses will cost between
14  $1,296,320 and $1,429,500.  Peak Decl., ¶37.  This estimate is based on the Notice
15  Plan set forth in the Peak Declaration.  *Id.*, ¶¶9-28.  Notice and Administration
16  Expenses will vary to the extent actual experience differs from these assumptions.

17       Because the Settlement Fund is a "qualified settlement fund," within the
18  meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is
19  taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or
20  accountants) shall be paid from the Settlement Fund.

21       Additionally, Plaintiffs may seek Service Awards not to exceed $10,000 each in
22  recognition of their time and service to the Settlement Class.  Any such amounts the
23  Court awards shall be paid from the Settlement Fund.

24       Class Counsel will submit an application with their opening papers in support
25  of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of
26  25% of the Settlement Amount; (b) payment of expenses or charges resulting from the
27  prosecution of the litigation in an amount not to exceed $450,000; and (c) any interest
28  on such amounts at the same rate and for the same period as earned by the Settlement

Fund.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (25% of common fund is the "benchmark percentage" in the Ninth Circuit and holding that trial court appropriately applied this percentage to the entire common fund).  Class Counsel's maximum expense figure is based on their current expenses and estimates of incurred expenses that have not yet been invoiced, and expenses that will be incurred between now and the filing of counsel's application for award of attorneys' fees and expenses.  Unless otherwise ordered by the Court, such fees and expenses shall be paid from the Settlement Fund within ten (10) business days of entry by the Court of the order awarding such attorneys' fees and expenses and/or Service Awards.

Once Notice and Administration Expenses, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses and any Service Awards to the Plaintiffs have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed to Settlement Class Members as follows:

- Retailer-Identified Refunds: ***full refund*** based on amount of purchase;
- Proof of Purchase Refunds: ***full refund*** based on amount of purchase; and
- Claim Form Refunds: *pro rata* share of remaining funds up to $100 per Household (if sufficient funds remain in the Net Settlement Fund).

In addition, Settlement Class Members seeking Claim Form Refunds in excess of $100 may be eligible for supplemental refunds, as described below.

Claims will be paid from the Settlement Fund with the following priority: (a) Retailer-Identified Refunds and Proof of Purchase Refunds at the full amount of purchase price; (b) Claim Form Refunds if, and to the extent, sufficient funds remain in the Net Settlement Fund; and (c) Supplemental Claim Form Refunds and Second Supplemental Claim Form Refunds, if any, based on whether and to the extent sufficient funds remain in the Net Settlement Fund.  Agreement, §VI.B.1.  Without regard to the amount of the Settlement Fund, all eligible Settlement Class Members

1   receiving Retailer-Identified Refunds and Proof of Purchase Refunds will receive

2   refunds equaling **100%** of their purchases.  *Id.*

3        The Settlement provides a simple, straightforward claims process by which

4   Settlement Class Members may obtain an award from the Settlement.  Except for

5   those Settlement Class Members receiving Retailer-Identified Refunds, Settlement

6   Class Members will have 120 days after the Notice Date in which to submit a claim to

7   the Settlement Administrator.  Agreement, §II.5.  Those Settlement Class Members

8   who file Claim Forms with proof of their purchases, documented by third-party

9   retailer data or receipts, will receive a Proof of Purchase Refund.

10       Not all Settlement Class Members may still have proof of their purchase.

11  Accordingly, those Settlement Class Members without proof of their purchases, but

12  who nevertheless submit a valid Claim Form and Claim Form Affidavit, will receive

13  up to $100 per Household if a sufficient amount remains in the Net Settlement Fund

14  after payment of Retailer-Identified Refunds and Proof of Purchase Refunds.

15  Agreement, §IV.7.  Claim Form Refunds may be reduced on a *pro rata* basis, but only

16  in the event that the total amount of dollars to be distributed as Claim Form Refunds

17  exceeds the balance remaining in the Net Settlement Fund after payment of Retailer-

18  Identified Refunds and Proof of Purchase Refunds.  *Id.*

19       If, after payment of all Retailer-Identified Refunds, Proof of Purchase Refunds

20  and Claim Form Refunds, any money remains in the Net Settlement Fund, residual

21  funds will be returned to Scotts in an amount not to exceed $22,500,000.  Agreement,

22  §II.25.

23       If the Maximum Residual Sum is paid to Scotts, and there is a balance

24  remaining in the Net Settlement Fund, Settlement Class Members seeking Claim Form

25  Refunds may receive a Supplemental Claim Form Refund, on a *pro rata* basis, for

26  their bird food purchases of up to $75 per Household.  *See* Agreement, §IV.8.  If a

27  balance still remains in the Net Settlement Fund, a Second Supplemental Claim Form

28  Refund may be made to Settlement Class Members seeking Claim Form Refunds for

1   more than $175 per Household and who received and cashed their initial Claim Form

2   Refund check in an amount up to their total purchase amount.  *Id.*, §IV.9.

3        To the extent a balance still remains in the Net Settlement Fund, unless

4   otherwise ordered by the Court, such remaining balance shall be donated to the

5   National Audubon Society, a bird-related charitable organization.  Agreement, §VI.B.

6        The Agreement provides that if prior to the Fairness Hearing, if 1,000 or more

7   Settlement Class Members choose to opt out of the Settlement or if Settlement Class

8   Members whose total amount of purchases of Morning Song Bird Food during the

9   Class Period exceeds $100,000 choose to opt out of the Settlement, Defendants shall

10  have the discretion to terminate the Settlement.  *Id.*, §XIV.

11       In exchange for the benefits provided under the Settlement, Settlement Class

12  Members will release any and all claims against Defendants relating to or arising from

13  the manufacture, sale, marketing, business operations, communications, transactions,

14  or any other activity relating to Morning Song Bird Food or the manufacture or sale of

15  wild bird food by any Scotts' affiliate.  *Id.*, §XIII.

16  **IV.    APPLICABLE LEGAL STANDARDS**

17       "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement

18  of class actions."  *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS

19  155799, at *13 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d

20  1268, 1276 (9th Cir. 1992)).  In the context of a class settlement, the Court must

21  determine whether the settlement is "'fundamentally fair, adequate and reasonable'"

22  under Rule 23(e).  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  "'The

23  initial decision to approve or reject a settlement proposal is committed to the sound

24  discretion of the trial judge.'"  *Hart*, 2016 U.S. Dist. LEXIS 155799, at *13 (quoting

25  *Seattle*, 955 F.2d at 1276).  The *Manual for Complex Litigation* describes a three-step

26  process for approving a class action settlement: (1) preliminary approval of the

27  proposed settlement; (2) dissemination of notice of the settlement to class members;

28

and (3) a final approval hearing.  *See Manual for Complex Litigation* §21.63 (4th ed. 2004).

Under the 2018 Amendments to Rule 23, the Court's task at the preliminary approval stage is to determine whether it will likely be able to grant final approval. *See* Rule 23(e)(2); *cf. Hart*, 2016 U.S. Dist. LEXIS 155799, at *14 (within range of approvability) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness."  *Id.* at *15 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "Courts do not have the ability to 'delete, modify, or substitute certain provisions'; the settlement 'must stand or fall in its entirety.'"  *Id.* (quoting *Hanlon*, 150 F.3d at 1026).

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.   The Settlement Provides a Fair, Adequate and Reasonable Result for Settlement Class Members

"Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *Hart*, 2016 U.S. Dist. LEXIS 155799, at *14 (quoting *Tableware*, 484 F. Supp. 2d at 1079).  "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class."  *See id.* at *14-*15 (citing *Hanlon*, 150 F.3d at 1027).  The Court considers:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

In addition to the Ninth Circuit's factors, the Supreme Court has approved amendments to Rule 23(e), which went into effect on December 1, 2018. The amendments involve considerations for judicial approval of class action settlements and are substantially incorporated within the Ninth Circuit's existing factors set forth above.[6]   For example, amended Rule 23(e)(2)(C)(i) requires that courts consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," and amended Rule 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class."   Both these considerations are discussed in detail below. Additional amendments are discussed herein.  Finally, Amended Rule 23(e)(2)(B) (whether the proposal was negotiated at arms' length), amended Rule 23(e)(2)(C)(ii) ("effectiveness of any proposed method of distributing relief to the class"), Rule 23(e)(2)(C)(iii) ("proposed award of attorneys' fees, including timing of payment"), Rule 23(e)(2)(C)(iv) ("any agreement required to be identified"), and Rule 23(e)(2)(D) (whether "the proposal treats class members equitably relative to each other") are all addressed above under Section III, Terms of the Settlement.

---

[6]   Rule 23(e)(2), as amended, provides that in order for the Court to conclude that it will likely find that the settlement is fair, reasonable and adequate, it must consider the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:
   (i)   the cost, risks and delay of trial and appeal;
   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii)   the terms of any proposed award of attorney's fees including timing of payment; and
   (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

### 1.  Amount Offered in Settlement[7]

The Settlement Amount represents a fair, adequate, and reasonable result for Settlement Class Members.  "As explained by the Supreme Court, '[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410-BAS(NLS), 2016 U.S. Dist. LEXIS 161137, at *19 (S.D. Cal. Nov. 21, 2016) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  Courts routinely approve settlements that provide a far lower rate of recovery than the Settlement does here.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving class settlement of 11%-27% recovery).

A Settlement Amount of $85,000,000 (and even more depending on the total number of Retailer-Identified Refunds and Proof of Purchase Refunds) is clearly a substantial benefit to the Settlement Class.  Moreover, ***all eligible Settlement Class Members receiving Retailer-Identified Refunds and Proof of Purchase Refunds will receive 100% refunds of those purchases***.  As described above, if there is any remaining amount in the Net Settlement Fund after the payment of Retailer-Identified Refunds and Proof of Purchase Refunds, Settlement Class Members seeking Claim Form Refunds are entitled to receive refunds of their purchases up to $100.  Further, depending on the total number of claims and amounts paid, Settlement Class Members may receive supplemental refunds of up to an additional $75 for Claim Form Refunds. Finally, if any money still remains in the Net Settlement Fund after the above refund payments, those seeking Claim Form Refunds may receive a second supplemental refund in an amount up to their full purchase price for their bird food purchases.  By any metric, this recovery is fair, reasonable, and adequate.

---

[7]  This factor overlaps with amended Rule 23(e)(2)(C) (adequacy of relief provided to the class).

## 2. The Risk, Expense, and Delay of Further Litigation, Including the Risk of Decertification[8]

While Plaintiffs are confident in the strength of their class claims, Defendants were confident in their defenses. Plaintiffs acknowledge the risk that they would be unable to obtain a jury verdict against Defendants. Defendants indicated to Class Counsel that, once fact and expert discovery were closed, Defendants intended to file motions for summary judgment and to decertify the class. As set forth in their filings, Defendants vigorously dispute damages. Defendants argue that Plaintiffs are not entitled to full refunds of their Morning Song Bird Food purchases and further argue that, if anything, Plaintiffs could recover only the difference between the purchase price of the Morning Song Bird Food products and the value they received. As reflected in their filings, Defendants also challenge Plaintiffs' ability to prove damages. Even if Plaintiffs prevailed on liability, they may not have prevailed in proving damages. Settlement Class Members thus faced the risk, expense, and delay of a potentially lengthy appeal after trial, holding up any recovery for Settlement Class Members for several more years.

Accordingly, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *748 (N.D. Cal. Oct. 25, 2016). "Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). Thus, these risk and delay factors support approval of the Settlement.

---

[8] As stated above, this factor overlaps with amended Rule 23(e)(2)(C)(i), which involves consideration of whether "the relief provided to the class is adequate, taking into account . . . the costs, risks and delay of trial and appeal."

### 3.     The Extent of Discovery Completed, and the Stage of the Proceedings[9]

The fact that extensive discovery was taken and the parties have thoroughly litigated various issues "weighs in favor of the proposed settlement." *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 U.S. Dist. LEXIS 78342, at *13 (C.D. Cal. July 6, 2010).

As the Court can see from the procedural history set forth above, this Action has been vigorously litigated for many years.  Throughout the six years that this Action has been pending, the Parties have been before, not only this Court, but the Ninth Circuit, the Sixth Circuit, and half-a-dozen district courts around the country, where witnesses and documents are located.  In total, the Parties briefed over 80 motions, including five motions to dismiss; a class certification motion and two related appeals; motions for both summary judgment and for judgment on the pleadings; and over two dozen discovery motions, including a related discovery appeal in the Sixth Circuit.

Prior to entering into this Settlement, the Parties engaged in fact discovery for over four years[10] and were within six weeks of the fact discovery cut-off.  The Parties produced and analyzed over 289,000 pages of documents, took 21 depositions, and served and responded to hundreds of written discovery requests.  Furthermore, the Parties consulted with multiple expert witnesses regarding, *inter alia*, liability, causation, and damages.  Expert witness opinions and the factual support for them have also been litigated in relation to multiple motions, including Plaintiffs' motion

---

[9]   This factor also overlaps with amended Rule 23(e)(2)(A), which involves consideration of whether "the class representatives and class counsel have adequately represented the class."

[10]   While most discovery was stayed between October 2015 and March 2017, pending the Court's ruling on the motion for class certification (*see* ECF 258; 326), Defendants made rolling document productions during this period, and the parties continued to perform limited deposition discovery.  *See* ECF 258.

1   for class certification, Defendants' motion for summary judgment, as well as motions
2   to compel.  *See* ECF Nos. 107, 116, 128, 143, 207.

3       Thus, as in *Cervantez*, the extent of discovery and stage of proceedings factor
4   weighs strongly in favor of approving the Settlement.  *See* 2010 U.S. Dist. LEXIS
5   78342, at *13.

6                    **4.    The Experience and Views of Counsel**

7       "The recommendation of experienced counsel in favor of settlement carries a
8   'great deal of weight' in a court's determination of the reasonableness of a
9   settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS
10  120841, at *14-*16 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*,
11  497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)).   "'The weight accorded to the
12  recommendation of counsel is dependent on a variety of factors; namely, length of
13  involvement in litigation, competence, experience in the particular type of litigation,
14  and the amount of discovery completed.'"  *Id.* (quoting 4 Alba Conte & Herbert B.
15  Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

16      Plaintiffs and Settlement Class Members are represented by Robbins Geller
17  Rudman & Dowd LLP, Dowd & Dowd, P.C. and The Driscoll Firm, P.C.  Robbins
18  Geller Rudman & Dowd LLP is a leading class action firm which has achieved
19  landmark results in large, complex class actions.  *See, e.g.*, *LendingClub Sec. Litig.*,
20  No. 3:16-cv-02627-WHA, ECF 113 (N.D. Cal. Oct. 28, 2016) (appointing Robbins
21  Geller to serve as Lead Counsel in securities class action, later resulting in a
22  $125 million settlement); *Cohen v. Trump*, No. 3:13-cv-02519-GPC-WVG, ECF 53
23  (S.D. Cal. Oct. 27, 2014) (appointing Robbins Geller to serve as Class Counsel on
24  behalf of Trump University students, later resulting in $25 million settlement).
25  Similarly, Dowd & Dowd, P.C. and The Driscoll Firm, P.C. are highly experienced in
26  handling complex class actions similar to this Action and have proven track records of
27  experience, knowledge, and success in litigating complicated litigation matters.
28

1   Indeed, this Court has previously seen fit to appoint these law firms as Class Counsel

2   to represent the very Settlement Class that will receive the benefits of this Settlement.

3   *See* ECF 326 (granting Plaintiffs' motion for class certification).

4       Class Counsel believe that the Settlement provides a fair, adequate, and

5   reasonable recovery for Settlement Class Members.   As Class Counsel are

6   experienced attorneys in this field, their opinion that the Settlement is fair, adequate,

7   and reasonable for Settlement Class Members also weighs in favor of approval of the

8   Settlement.  *Riker*, 2010 U.S. Dist. LEXIS 120841, at *16.

9       **B.     The Settlement Provides the Best Class Notice Practicable**

10      The second step of the approval process is to disseminate notice of the

11  pendency and settlement of the class action.  *See Manual for Complex Litigation*,

12  *supra*, at §21.63.  Settlement Class Members must receive the best notice practicable

13  under the circumstances, *see* Fed. R. Civ. P. 23(c)(2), which means notice that is

14  "reasonably calculated, under all the circumstances, to apprise interested parties of the

15  pendency of the action and afford them an opportunity to present their objections."

16  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  "[T]he

17  mechanics of the notice process are left to the discretion of the court subject only to

18  the broad 'reasonableness' standards imposed by due process.'"  *Capps*, 2016 U.S.

19  Dist. LEXIS 161137, at *26 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d

20  114, 120 (8th Cir. 1975)).

21      Under the Agreement and as explained in the Peak Declaration, Settlement

22  Class Members will be provided the best possible opportunity to see, review and

23  understand the Notice.[11]  Class Counsel will provide the Settlement Administrator

24  with the most current list of names, email addresses, and/or physical addresses of

25

26  [11]   Note that the proposed combination of direct mail and/or email notice, publication
notice, and website notice described herein is similar to the proposed Notice Plan
27  previously submitted by Plaintiffs in support of Plaintiffs' Motion for Class
Certification.  *See* ECF 140-4.
28

1   Settlement Class Members identified through Retailer Records.  The Settlement Class

2   Members identified through Retailer Records will be contacted directly based on this

3   information.  Namely, the Settlement Administrator shall be responsible for printing

4   and mailing and/or emailing (depending on the information available) Retailer-

5   Identified Refund Notices along with Correction Forms and Long-Form Notices, and

6   Claim Forms, to those specific Settlement Class Members identified through Retailer

7   Records.  *See* Agreement, §III.4; Peak Decl., ¶38.

8       The Settlement Administrator will publish the Publication Notice, in a form

9   approved by the Court, in the national editions of three consumer magazines (*Birds &*

10  *Blooms*, *National Geographic*, and *People*); two trade publications (*Journal of*

11  *American Veterinary Medical Association* and *Veterinary Practice News*); and four

12  online/mobile platforms (Conversant ad network, Facebook, Google Display Network,

13  and Yahoo! ad network) or similar substitute publications and platforms.  *See*

14  Agreement, §III.6; Peak Decl., ¶¶20-25.

15      The Settlement Administrator will also establish a settlement website to which

16  Settlement Class Members may refer for information about the Action and Settlement

17  and submit online Claim Forms and inquiries.  The Settlement Administrator shall

18  post the Long-Form Notice and Claim Form on the website as well as other important

19  documents and deadlines, in consultation with counsel for the Parties.  *See*

20  Agreement, §III.7; Peak Decl., ¶26.

21      Further, the proposed Notices are plain and easily understood, consistent with

22  the guidelines set forth by the Federal Judicial Center.  *See* http://www.fjc.gov/  The

23  Notices provide neutral, objective, and accurate information about the nature of the

24  Action and the Settlement.  *See id.*  The Notices describe the claims, the Settlement

25  Class Members, the relief provided under the Settlement, and Settlement Class

26  Members' rights and options, including the deadlines and means of submitting a

27  Claim Form, objecting, and/or appearing at the Fairness Hearing personally or through

28  counsel.  *See id.*; Peak Decl., ¶¶12-19.

1    The Parties submit that the Notices provide the best notice practicable under the

2    circumstances and will be highly effective in reaching Settlement Class Members.

3    **C.    The Notice Provides a Clear Explanation to Settlement
            Class Members of Their Opportunity to Opt Out of the
4           Settlement**

5    Fed. R. Civ. P. 23(c)(2)(B), in relevant part, provides that the notice shall also

6    apprise class members that "the court will exclude from the class any member who

7    requests exclusion[, and] the time and manner for requesting exclusion." *See Low v.*

8    *Trump University, LLC*, 246 F. Supp. 3d 1295, 1307 (S.D. Cal. 2017).  A notice of a

9    class member's right to opt out of a class action settlement must be "'of such nature as

10   reasonably to convey the required information' regarding the window for class

11   members to opt out of or remain in the class." *Low v. Trump University, LLC*, 881

12   F.3d 1111, 1120 (9th Cir. 2018) (citation omitted).

13   The proposed Long-Form Notice, attached to the Agreement as Exhibit D, will

14   provide clear instructions to Settlement Class Members regarding the procedures they

15   must follow to opt out of the Settlement Class, including the deadline by which

16   Settlement Class Members will be required to opt out.  Not later than seven (7)

17   calendar days before the date of the Fairness Hearing, the Settlement Administrator

18   will file with the Court a list of those Persons who have timely and validly excluded

19   themselves from the Settlement.  Agreement, §VII.4.  All Settlement Class Members

20   who do not timely and validly opt out of the Settlement Class shall be bound by all

21   terms of the Settlement.

22   **VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS
            APPROPRIATE**

23

24   Under the terms of the Agreement, the Parties have agreed, for the purposes of

25   the Settlement only, to the certification of the Settlement Class, defined as follows:

26   All Persons who, between November 1, 2005 and May 1, 2008,
     purchased and have not yet received a full refund for their Morning Song
27   Bird Food purchases. The following entities and individuals are excluded
     from the Settlement Class: (a) Defendants and their immediate families,

28

the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest; (b) distributors, retailers, and other resellers of Morning Song Bird Food; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class as provided in this Agreement.

Since the Settlement Class here largely mirrors the class which the Court certified on March 31, 2017 (ECF 326), and because the reasons cited therein for the litigation class, as well as the arguments made by Class Counsel in Plaintiffs' submissions in support thereof, are equally applicable to the Settlement Class, Class Counsel will incorporate such arguments by reference and not repeat them here. Based on those arguments, the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied, and the Settlement Class should be certified for settlement purposes only.   In addition, Plaintiffs should be appointed as Settlement Class Representatives, and the firms Robbins Geller Rudman & Dowd LLP, Dowd & Dowd P.C., and The Driscoll Firm, P.C. should be appointed as Settlement Class Counsel.

## VII.   THE PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to amended Rule 23(e)(2). Specifically, the Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing and/or emailing of the Retailer-Identified Refund Notices and Long-Form Notices (the "Notice Date") | Within 30 calendar days after entry of the Preliminary Approval Order |
| Deadline for commencing publication of the Publication Notice | Within 30 calendar days after entry of the Preliminary Approval order |

| Event | Time for Compliance |
|---|---|
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, and in support of Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards for Plaintiffs | 35 calendar days prior to the Fairness Hearing |
| Deadline for submitting objections or exclusion requests | 21 calendar days prior to the Fairness Hearing |
| Filing of reply memoranda in further support of the Settlement and Plan of Allocation, and in support of Class Counsel's application for an award of attorneys' fees and expenses | 7 calendar days prior to the Fairness Hearing |
| Fairness Hearing | Approximately 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

Plaintiffs respectfully submit that this proposed schedule complies with Rule 23 and Class Action Fairness Act, while securing the recoveries for Settlement Class Members in a timely fashion.

## VIII. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter an order substantially in the form of their proposed Preliminary Approval Order, which is Exhibit F to the Agreement.

DATED:  December 7, 2018          Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
MICHAEL ALBERT
RACHEL A. COCALIS

s/ Rachel L. Jensen
RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

DOWD & DOWD P.C.
DOUGLAS P. DOWD
ALEX R. LUMAGHI
211 North Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/621-2500
314/621-2503 (fax)

THE DRISCOLL FIRM, P.C.
JOHN J. DRISCOLL
CHRISTOPHER QUINN
GREGORY PALS
211 N. Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/932-3232
314/932-3233 (fax)

Class Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 7, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<u>s/ Rachel L. Jensen</u>
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: rachelj@rgrdlaw.com

# Mailing Information for a Case 3:12-cv-01592-JAH-AGS In Re: Morning Song Bird Food Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  MAlbert@rgrdlaw.com,7223240420@filings.docketbird.com

- **Casteel Elizabeth Borsay**
  cborsay@jonesday.com,cathomas@jonesday.com

- **Jennifer N. Caringal**
  jcaringal@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Rachel A. Cocalis**
  rcocalis@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Douglas P. Dowd**
  doug@dowdlaw.net,laura@dowdlaw.net,camron@dowdlaw.net

- **John J. Driscoll , IV**
  john@thedriscollfirm.com,chris@thedriscollfirm.com,dawn@thedriscollfirm.com,tiffany@thedriscollfirm.com

- **Marjorie P. Duffy**
  mpduffy@jonesday.com,rfargabrite@jonesday.com

- **Sierra Elizabeth**
  sierra.elizabeth@kirkland.com,dsmith@kirkland.com,ivon.granados@kirkland.com,laura.bay@kirkland.com,ashley.neglia@kirkland.com

- **Mark Filip Filip**
  mark.filip@kirkland.com

- **Irene Fiorentinos**
  ifiorentinos@jonesday.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Allison E. Haedt**
  aehaedt@jonesday.com

- **James Hagedorn**
  mattanasio@cooley.com

- **Mark C. Holscher**
  mark.holscher@kirkland.com,laura.bay@kirkland.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,michelew@rgrdlaw.com,mbacci@rgrdlaw.com,hbrown@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Paul William Johnson**
  paul@thedriscollfirm.com

- **Jeffrey J. Jones**
  jjjones@jonesday.com

- **James Todd Kennard**
  jtkennard@jonesday.com

- **Kevin Lane**
  kevin@dowdlaw.net

- **Alex R. Lumaghi**
  alex@dowdlaw.net,laura@dowdlaw.net

- **Yosef Adam Mahmood**
  yosef.mahmood@kirkland.com

- **Allison K. Ozurovich**
  allie.ozurovich@kirkland.com

- **Gregory J. Pals**
  greg@thedriscollfirm.com,nikki@thedriscollfirm.com

- **Christopher J. Quinn**
  chris@thedriscollfirm.com,nikki@thedriscollfirm.com

- **Jeffrey H. Schultz**
  jeff@thedriscollfirm.com,nikki@thedriscollfirm.com

- **Edward P Swan , Jr**
  pswan@jonesday.com,kphewitt@jonesday.com,kcarcella@jonesday.com

- **Regis C Worley , Jr**
  rworley@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`