EXHIBIT 1

1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  JASON A. FORGE (181542)
   RACHEL L. JENSEN (211456)
3  MICHAEL ALBERT (301120)
   RACHEL A. COCALIS (312376)
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6  jforge@rgrdlaw.com
   rjensen@rgrdlaw.com
7  malbert@rgrdlaw.com
   rcocalis@rgrdlaw.com
8
   DOWD & DOWD P.C.                    THE DRISCOLL FIRM, P.C.
9  DOUGLAS P. DOWD                     JOHN J. DRISCOLL
   ALEX R. LUMAGHI                     CHRISTOPHER QUINN
10 211 North Broadway, Suite 4050      GREGORY PALS
   St. Louis, MO  63102                211 N. Broadway, Suite 4050
11 Telephone:  314/621-2500            St. Louis, MO  63102
   314/621-2503 (fax)                  Telephone:  314/932-3232
12 doug@dowdlaw.net                    314/932-3233 (fax)
   alex@dowdlaw.net
13
   Class Counsel
14
15 [Additional counsel appear on signature page.]

16               UNITED STATES DISTRICT COURT

17             SOUTHERN DISTRICT OF CALIFORNIA

18 In re MORNING SONG BIRD FOOD    )  Lead Case No.
   LITIGATION                      )  3:12-cv-01592-JAH-AGS
19 ───────────────────────────     )
                                   )  CLASS ACTION
20 This Document Relates To:       )
                                   )  STIPULATION OF CLASS ACTION
21     ALL ACTIONS.                )  SETTLEMENT
   ───────────────────────────     )
22
23
24
25
26
27
28

This Stipulation of Class Action Settlement is entered into December 7, 2018, by and among the Plaintiffs Laura Cyphert, Milt Cyphert, Ellen Larson, and David Kirby, individually and on behalf of all others similarly situated, and defendants The Scotts Miracle-Gro Company, The Scotts Company LLC, and James Hagedorn, Scotts' Chief Executive Officer, by and through their respective undersigned counsel, with respect to all claims that have been asserted or could have been asserted against Defendants in the above-captioned action and all of the actions consolidated into it.[1] Subject to the Court's approval, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in this Agreement, and upon the occurrence of the Effective Date, this Action shall be fully and finally resolved, settled, and compromised on a classwide basis on the terms and conditions set forth below.

# I.    **INTRODUCTION**

This is a nationwide consumer class action brought by Plaintiffs on behalf of themselves and a certified nationwide class of "persons who, prior to May 1, 2008, purchased and have not yet received a full refund for, a Scotts Miracle-Gro wild bird food product containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl, respectively." ECF 326 at 27.[2]

Scotts entered the wild bird food business on November 15, 2005, with its purchase of Gutwein & Co.  In connection with its manufacture of certain wild bird food products, Scotts used a pesticide called Storcide II and then used another pesticide, Actellic 5E, during certain periods from November 15, 2005 to March 10, 2008.

---

[1] All capitalized terms not otherwise separately defined shall have the meaning set forth in Section II.

[2] Page number citations to docket entries ("ECF") refer to the page numbers generated by the electronic case filing (CM/ECF) system.

1    On June 27, 2012, Plaintiffs Laura and Milt Cyphert, individually and on behalf

2    of consumers who had purchased Morning Song Bird Food, filed a putative class

3    action against Scotts, seeking refunds for Morning Song Bird Food, among other

4    relief. *See* ECF 1.

5    On September 11, 2012, the Court consolidated the Cypherts' case with other

6    putative class actions filed by Plaintiffs Ellen Larson and David Kirby, among others,

7    also seeking relief individually and on behalf of consumers who had purchased

8    Morning Song Bird Food. *See* ECF 9. In the same order, the Court appointed Robbins

9    Geller Rudman & Dowd LLP and Dowd & Dowd P.C. to serve as co-lead counsel

10   (*id.*), later amending the order to add The Driscoll Firm, P.C. (*see* ECF 18).

11   On October 9, 2012, Plaintiffs, individually and on behalf of a putative class of

12   consumers who had purchased Morning Song Bird Food, filed their original

13   consolidated complaint, asserting 19 claims against Scotts, including alleged

14   violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

15   alleged violations of certain state statutes, and certain common law claims. ECF 10.

16   Scotts moved to dismiss the complaint. ECF 21.

17   On January 31, 2013, Plaintiffs, individually and on behalf of the putative class,

18   filed an amended consolidated complaint, asserting 17 claims against Scotts, including

19   (1) alleged violations of RICO; (2) alleged violations of the Kentucky Consumer

20   Protection Act ("KCPA"), the California Unfair Competition Law ("UCL"), the

21   California False and Misleading Advertising Law ("FAL"), the California Legal

22   Remedies Act ("CLRA"), the Missouri Merchandising Practices Act ("MPA"), the

23   Minnesota Consumer Fraud Act ("CFA"), the New Mexico Unfair Practices Act; and

24   (3) certain common law claims. ECF 26. Scotts moved to dismiss the complaint.

25   ECF 32.

26   On September 30, 2013, the Court granted in part and denied in part Scotts'

27   motion to dismiss and issued an order allowing Plaintiffs' claims to proceed, except

28   for their Magnuson-Moss Warranty Act, the Arkansas Deceptive Trade Practices Act,

breach of express warranty, negligent misrepresentation (as to Plaintiffs Laura and Milt Cyphert), and unjust enrichment claims, which were dismissed. ECF 44.

In March 2014, Scotts sold its wild bird food business and, therefore, no longer manufactures, markets, or sells the Morning Song Bird Food at issue in this Action.

On October 20, 2014, Plaintiffs moved for certification of a nationwide class of all consumers who purchased Morning Song Bird Food for the RICO claim, as well as three subclasses of California, Missouri, and Minnesota consumers who had purchased Morning Song Bird Food for the state statutory claims: (1) California for the UCL, FAL, and CLRA claims; (2) Missouri for the MPA claim; and (3) Minnesota for the CFA claim. ECF 93-1.

On December 1, 2014, Scotts filed its opposition to the motion for class certification. ECF 115-123.

On December 2, 2014, Scotts filed a motion for summary judgment, which the Court ultimately withdrew on March 31, 2017 (after issuing its decision on the Plaintiffs' class certification motion), without prejudice to Scotts' refiling the summary judgment motion. ECF 128, 327.

On October 9, 2015, Plaintiffs filed the Second Amended Consolidated Class Action Complaint (the "Complaint"), adding as a defendant Mr. Hagedorn. ECF 260. Plaintiffs, individually and on behalf of a putative class of consumers who had purchased Morning Song Bird Food, alleged violations of RICO, the CLRA, the UCL, the FAL, the KCPA, the CFA, and the MPA; for breach of implied warranty of merchantability and of the common law of implied warranty of fitness for consumption by animals; and for intentional misrepresentation and negligent misrepresentation (as to certain Plaintiffs).

On December 14, 2015, Mr. Hagedorn moved to dismiss the Complaint, arguing, among other things, that Plaintiffs failed to establish personal jurisdiction over him and that they failed to state valid claims against him. ECF 279.

1    On September 29, 2016, the Court granted in part and denied in part Mr.

2    Hagedorn's motion to dismiss, allowing the RICO claim to proceed against Mr.

3    Hagedorn and dismissing all other claims against him. ECF 309.

4    On December 2, 2016, Mr. Hagedorn filed his opposition to Plaintiffs' pending

5    motion for certification of the nationwide RICO class. ECF 317.

6    On March 31, 2017, the Court granted Plaintiffs' motion for class certification,

7    certifying a nationwide class as to Scotts and Mr. Hagedorn for alleged violations of

8    RICO and, as to Scotts only, three subclasses for alleged violations of the UCL, the

9    FAL, the CLRA, the MPA, and the CFA. ECF 326 at 8, 27. The class was defined as:

10   "All persons who, prior to May 1, 2008, purchased and have not yet received a full

11   refund for, a Scotts Miracle-Gro wild bird food product containing Storcide II,

12   Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl,

13   respectively ("MSBF")." *Id.* at 27. The Court also appointed Plaintiffs to serve as

14   class representatives and appointed Class Counsel. *See* ECF 326.

15   On April 13, 2017, Scotts and Mr. Hagedorn filed a petition to the United States

16   Court of Appeals for the Ninth Circuit pursuant to Federal Rule of Civil Procedure 23,

17   seeking permission to appeal the Court's class certification order ("Rule 23(f)

18   Petition").

19   On June 12, 2017, a Ninth Circuit panel denied the Rule 23(f) Petition.

20   ECF 342.

21   On July 17, 2017, Scotts moved to dismiss or, in the alternative, for judgment

22   on the pleadings in light of the U.S. Supreme Court's decision in *Bristol-Myers*

23   *Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). ECF 344. Mr.

24   Hagedorn also moved for reconsideration of the Court's September 2016 order on his

25   motion to dismiss based on *Bristol-Myers*. ECF 345. In March 2018, the Court denied

26   both motions. ECF 419.

27

28

On May 17, 2018, Ray Hill moved to intervene and substitute for plaintiff Barbara Cowin (now deceased) as class representative, and Defendants opposed that motion. ECF 442, 452.

Throughout the six years that this Action has been pending, the Parties have engaged in intensive litigation, before not only this Court but also the Ninth Circuit, the Sixth Circuit, and half-a-dozen district courts around the country, where witnesses and documents are located. In total, the Parties briefed over 80 motions, including five motions to dismiss; a class certification motion and two related appeals; motions for both summary judgment and for judgment on the pleadings; and over two dozen discovery motions, including a related discovery appeal in the Sixth Circuit.

Prior to entering into this Settlement, the Parties engaged in fact discovery for over four years and were within six weeks of the fact discovery cut off. The Parties produced and analyzed over 289,000 pages of documents, took 21 depositions, and served and responded to hundreds of written discovery requests.

The Parties also engaged in extensive settlement discussions before reaching this Settlement. On November 19, 2013, the Honorable Ruben Brooks presided over an in-person Early Neutral Evaluation Conference, as well as several subsequent in-person or telephonic settlement conferences, but the Parties were unable to resolve the Action at those times.

On June 4, 2018, the Parties engaged in a full day of mediation in New York City before the Honorable Layn Phillips (retired), but were unable to reach an agreement to resolve the Action. The Parties continued to explore potential resolution of the Action with the assistance of Judge Phillips and his team, and ultimately, on August 17, 2018, the Parties executed a term sheet, setting forth the principal terms of settlement between Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants. The Parties informed the Court of their agreement in principle to settle the Action by telephone on August 15, 2018, and by written notice filed on August 20,

1   2018. ECF 503, 506. The motion seeking preliminary approval of the Settlement must

2   be filed by December 7, 2018. ECF 509.

3          Plaintiffs and Class Counsel have extensively investigated the facts and law

4   relating to the class claims and Defendants' defenses. While Plaintiffs and Class

5   Counsel believe the class claims are meritorious, they also recognize the expense and

6   effort that it would take to prosecute this Action against Defendants through trial and

7   any subsequent appeals. Plaintiffs and Class Counsel have also taken into account the

8   uncertain outcome and risk involved in any litigation, especially complex actions such

9   as this one, including the difficulties and delays inherent in the litigation process. With

10  all of these factors in mind, Plaintiffs and Class Counsel are confident that the

11  Settlement is fair, reasonable, adequate, and in the best interests of the Settlement

12  Class.

13         Defendants deny all of the claims and contentions in the Action, any

14  wrongdoing, any liability to Plaintiffs or any Settlement Class Member, and any

15  alleged wrongdoing or liability arising out of or relating to any of the conduct,

16  statements, acts, or omissions alleged in the Action. Defendants believe there are

17  meritorious defenses and legal challenges to Plaintiffs' claims, both in regards to their

18  certification as a class and their underlying merits. Defendants further deny that they

19  committed any wrongful act or violation of law or duty alleged in the Action and

20  contend that they acted in good faith in connection with Plaintiffs and the Settlement

21  Class. Taking into account the costs, burden, and uncertainty inherent in any litigation,

22  however, Defendants have concluded that it is desirable and beneficial that the Action

23  be fully and finally settled and terminated in the manner and upon the terms and

24  conditions set forth in this Agreement.

25         Without any admission or concession on the part of the Plaintiffs as to the lack

26  of merit of the Action whatsoever and without any admission or concession of liability

27  or wrongdoing or the lack of merit of any defense whatsoever by any of the

28  Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of

1  Plaintiffs and the Settlement Class, and Defendants, that the Action be settled,

2  compromised, released, and dismissed on the merits and with prejudice, subject to the

3  Court's approval as required by Rule 23 of the Federal Rules of Civil Procedure on

4  the following terms and conditions:

5  **II.   DEFINITIONS**

6         As used in this Agreement, including all the attached Exhibits, the terms

7  defined in this Agreement have the meanings below, unless the Agreement expressly

8  provides otherwise.

9         1.     "Action" means the consolidated action captioned *In re Morning Song*

10  *Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS, pending before the

11  Honorable John A. Houston and the Honorable Andrew G. Schopler, and all of the

12  actions consolidated in and related to it: *Cyphert v. SMG, et al.*, Case No. 12-cv-1592-

13  JAH-AGS (S.D. Cal. filed June 27, 2012); *Kirby v. SMG*, Case No. 12-cv-1729-JAH-

14  AGS (S.D. Cal. filed July 12, 2012); *Salkeld v. SMG*, Case No. 12-cv-1728-JAH-AGS

15  (S.D. Cal. filed July 13, 2012); and *Brumfield v. SMG*, Case No. 12-cv-1901-JAH-

16  AGS (S.D. Cal. filed Aug. 1, 2012). *See* ECF 18.

17         2.     "Agreement" means this Stipulation of Class Action Settlement dated

18  December 7, 2018, including all the attached Exhibits, which are an integral part of

19  the Agreement and incorporated in their entirety by reference.

20         3.     "Attorneys' Fees and Expenses" means the award of money paid to Class

21  Counsel for their representation of Plaintiffs and the Settlement Class in the Action

22  and the litigation expenses incurred by Class Counsel in connection with the Action.

23  Any award of Attorneys' Fees and Expenses must be approved by the Court, shall be

24  paid in full from the Settlement Fund in accordance with the terms of any Court order,

25  and shall be separate from the Settlement, such that approval of the Settlement shall

26  not be contingent upon an Attorneys' Fees and Expenses award at all or in any

27  particular amount, as set forth in this Agreement.

28

4. "CAFA Notice" means the notice of the Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA").

5. "Claims Deadline" means the date, 120 days after the Notice Date, by when a Settlement Class Member must submit to the Settlement Administrator a Claim Form with Proof of Purchase to receive a Proof of Purchase Refund or a Claim Form with Claim Form Affidavit to receive a Claim Form Refund.

6. "Claim Form" means the form, substantially in the form attached as Exhibit A, to be completed by a Settlement Class Member and submitted to the Settlement Administrator to seek a Proof of Purchase Refund or a Claim Form Refund.

7. "Claim Form Affidavit" means a sworn affidavit under penalty of perjury by a Settlement Class Member stating the quantity of Morning Song Bird Food that he or she purchased, the likely retailer from which the purchase was made, the approximate date or dates of purchase, and the dollar amount of Morning Song Bird Food purchased.

8. "Claim Form Refund" means the refund, up to $100 per Household, in the form of a check to be received by a Settlement Class Member without Proof of Purchase who submits a valid Claim Form and Claim Form Affidavit by the Claims Deadline.

9. "Class Counsel" means Robbins Geller Rudman & Dowd LLP, Dowd & Dowd P.C., and The Driscoll Firm, P.C.

10. "Class Period" means November 1, 2005 through May 1, 2008.

11. "Correction Form" means the form, substantially in the form attached as Exhibit B, to be provided via regular, first-class mail or via email (depending on which is available in the Retailer Records) to Settlement Class Members identified through a reasonable inquiry of Retailer Records for whom the Retailer Records provide the required product and purchase information for issuance of Retailer-

Identified Refunds (as described in this Agreement) and to be returned by such Settlement Class Members, within 30 days of the Notice Date, correcting any incorrect name or contact information and identifying the correct recipient and address for Retailer-Identified Refunds.

12.     "Court" means the United States District Court for the Southern District of California, the Honorable John A. Houston presiding.

13.     "Defendants" means, collectively, The Scotts Miracle-Gro Company, The Scotts Company LLC, and James Hagedorn.

14.     "Defendants' Counsel" shall mean the following counsel of record for Defendants: Jones Day (for Scotts) and Kirkland & Ellis LLP (for James Hagedorn).

15.     "Defendants' Released Claims" is defined in Section XIII.7 of this Agreement.

16.     "Defendants' Unknown Claims" is defined in Section XIII.7 of this Agreement.

17.     "Effective Date," or the date upon which this Settlement becomes "effective" or "final," means the date by when the Court's Final Order and Judgment becomes a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, the Final Order and Judgment becomes "final" when the last of the following has occurred: (a) the expiration of the time to file a motion to reconsider, alter or amend the judgment or order without any such motion having been filed; (b) the time in which to appeal the judgment or order has passed without any appeal having been taken; and (c) if a motion to reconsider, alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Agreement. For purposes of this paragraph, an

1    "appeal" shall include any petition for a writ of certiorari or other writ that may be

2    filed in connection with approval or disapproval of this Settlement, but shall not

3    include any appeal which concerns only the amount of Attorneys' Fees and Expenses

4    or the procedures for determining Settlement Class Members' claims in a manner that

5    does not otherwise impact the validity or finality of the Settlement.

6         18.    "Escrow Agent" means a qualified escrow agent to be mutually agreed

7    upon by Class Counsel and Scotts' Counsel.

8         19.    "Exhibits" means the exhibits attached to this Agreement.

9         20.    "Fairness Hearing" means the hearing held by the Court to determine

10   whether to finally approve this Agreement as fair, reasonable, and adequate.

11        21.    "Final Order and Judgment" means the order, substantially in the form

12   attached as Exhibit C, that the Parties shall ask the Court to enter at the Fairness

13   Hearing granting final approval of the Settlement, which shall constitute a judgment

14   regarding the Action.

15        22.    "Household" means any number of Persons occupying the same dwelling

16   unit at a given address.

17        23.    "Initial Costs Cap" means the initial cap of Notice and Administration

18   Expenses that can be paid from the Settlement Fund prior to the Effective Date,

19   agreed to by the Parties in the amount of $1,200,000, which can be modified by

20   agreement of Class Counsel and Scotts' Counsel or by Court order, for payment of all

21   costs and expenses by the Settlement Administrator, other agreed-upon costs and

22   expenses related to providing notice of the Settlement to the Settlement Class, and the

23   administration of the Settlement.

24        24.    "Long-Form Notice" means the notice, substantially in the form attached

25   as Exhibit D, to be provided by the Settlement Administrator via regular, first-class

26   mail or email (depending on which is available in the records provided) to Settlement

27   Class Members identified through a reasonable inquiry of Retailer Records and other

28

1  applicable records produced in discovery in the Action and provided to the Settlement

2  Administrator.

3       25.  "Maximum Residual Sum" means those residual funds in the Settlement

4  Fund, if any, that shall revert (if at all) to Scotts in an amount not to exceed Twenty-

5  Two Million Five Hundred Thousand Dollars ($22,500,000), plus accrued interest.

6       26.  "Morning Song Bird Food" means any Scotts wild bird food product

7  containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or

8  pirimiphos-methyl, respectively, as set forth in the list of products attached as

9  Exhibit E.

10       27.  "Net Settlement Fund" means the Settlement Fund less all Notice and

11  Administration Expenses (including the Initial Costs Cap), Taxes and Tax Expenses

12  (as defined in Section VI of this Agreement), Attorneys' Fees and Expenses, Service

13  Awards, and any other Court-approved deductions as costs or expenses for class

14  administration.

15       28.  "Notice and Administration Expenses" means all costs and expenses

16  incurred by the Settlement Administrator to administer the Notice Plan and Settlement

17  Fund pursuant to this Agreement and all other applicable Court orders and any other

18  agreed-upon costs and expenses related to providing notice of the Settlement to the

19  Settlement Class or administering the Settlement.

20       29.  "Notice Date" means the deadline, which the Parties shall request to be

21  thirty (30) days after entry of the Preliminary Approval Order, by which the

22  Settlement Administrator must have commenced the mailing and/or emailing of the

23  Retailer-Identified Refund Notices and Long-Form Notices. The Settlement

24  Administrator shall commence publication of the Publication Notice, as set forth in

25  Section III of this Agreement, within thirty (30) days after entry of the Preliminary

26  Approval Order or as soon as reasonably practicable thereafter.

27       30.  "Notices" means, collectively, the forms of notice to Settlement Class

28  Members, substantially in the forms attached as Exhibits D, G, and H to this

Agreement, specifically the Retailer-Identified Refund Notice, the Long-Form Notice, and the Publication Notice.

31. "Notice Plan" means the plan of notice, as set forth in Section III of this Agreement, setting forth the method of notifying members of the Settlement Class of the pendency of the Action and their rights under this Settlement.

32. "Objection Date" means the date set forth in the Preliminary Approval Order by which a Settlement Class Member must file and serve an objection to the Settlement.

33. "Opt-Out Deadline" means the date set forth in the Preliminary Approval Order by which a Settlement Class Member must submit a request for exclusion from the Settlement Class.

34. "Parties" means the Plaintiffs and Defendants, collectively, as each of those terms is defined in this Agreement. "Party" means any one of Plaintiffs or Defendants.

35. "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and including any of their heirs, successors, representatives, or assignees.

36. "Plaintiffs" means Laura Cyphert, Milt Cyphert, Ellen Larson, and David Kirby.

37. "Plaintiffs' Released Claims" is defined in Section XIII.2 of this Agreement.

38. "Preliminary Approval Order" means the order, substantially in the form attached as Exhibit F to this Agreement, to be entered by the Court, preliminarily approving this Settlement, among other things.

39.    "Proof of Purchase" means an original sales receipt sufficient to show the quantity of Morning Song Bird Food purchased, the retailer from which the purchase was made, the date of purchase, and the dollar amount of Morning Song Bird Food purchased during the Class Period, or a copy of such receipt.

40.    "Proof of Purchase Refund" means the refund, in the form of a check to be received by a Settlement Class Member who submits a valid Claim Form with Proof of Purchase by the Claims Deadline.

41.    "Publication Notice" means the summary notice, substantially in the form attached as Exhibit G to this Agreement, to be published as set forth in Section III of this Agreement.

42.    "Refunds" means, collectively, Retailer-Identified Refunds, Proof of Purchase Refunds, and Claim Form Refunds, and, as applicable, the Supplemental Claim Form Refunds and the Second Supplemental Claim Form Refunds.

43.    "Released Defendants" is defined in Section XIII.3 of this Agreement.

44.    "Released Plaintiffs and Settlement Class Members" is defined in Section XIII.7 of this Agreement.

45.    "Releasing Defendants" means Released Defendants, as defined in Section XIII.3 of this Agreement.

46.    "Releasing Plaintiffs and Settlement Class Members" is defined in Section XIII.4 of this Agreement.

47.    "Retailer Records" means those existing retailer-furnished records (a) that were produced in discovery in the Action by Tractor Supply Company, Sam's West, Inc. (d.b.a. Sam's Club), PetSmart, Inc., Menard, Inc., and Orscheln Farm and Home LLC or that were produced by Sam's Club on November 12, 2018 (reflecting certain transaction-level detail of purchases of Morning Song Bird Food during the Class Period by Settlement Class Members identified by membership number); and (b) that contain information sufficient to determine (i) the identity of the Settlement Class Member, (ii) his or her postal, email, or fax number for directing settlement-

1   related communications, (iii) the quantity of Morning Song Bird Food purchased

2   during the Class Period, (iv) the dates of those purchase(s), and (v) the total amount

3   paid for those purchase(s).

4        48.   "Retailer-Identified Refund" means the refund, in the form of a check to

5   be received by a Settlement Class Member without Proof of Purchase who is

6   identified through a reasonable inquiry of Retailer Records for the purchase price(s) of

7   his or her purchase(s) of Morning Song Bird Food during the Class Period to the

8   extent such refunds can be processed from the information set forth in the Retailer

9   Records and distributed to such Settlement Class Member from the contact

10   information set forth in the Retailer Records and any Correction Form.

11        49.   "Retailer-Identified Refund Notice" means notice, substantially in the

12   form attached as Exhibit H, to be provided via regular, first-class mail or email

13   (depending on which is available in the respective Retailer Record) to Settlement

14   Class Members identified through a reasonable inquiry of Retailer Records informing

15   such Settlement Class Members of the Retailer Records and setting forth all required

16   information for a Retailer-Identified Refund.

17        50.   "Scotts" means The Scotts Miracle-Gro Company and The Scotts

18   Company LLC and, where applicable, other affiliates of those companies.

19        51.   "Second Supplemental Claim Form Refund" means the refund in the

20   form of a check that may be distributed as set forth in Section IV.9 of this Agreement,

21   only in the event there is a balance in the Settlement Fund as set forth in

22   Section VI.B.1 of this Agreement, to a Settlement Class Member without Proof of

23   Purchase who submits a valid Claim Form and Claim Form Affidavit for more than

24   $175 by the Claims Deadline and who receives and cashes his or her initial Claim

25   Form Refund.

26        52.   "Service Awards" means the Court-approved amounts awarded to

27   Plaintiffs in recognition of their time and effort in pursuing the Action and fulfilling

28   their obligations and responsibilities as class representatives.

53.     "Settlement" means the terms embodied by this Agreement.

54.     "Settlement Administrator" means the third-party agent that shall implement and administer the Notice Plan and the Settlement, including the claims process and Refunds as described in Sections III and IV of this Agreement. KCC LCC shall serve as the Settlement Administrator, subject to approval by the Court.

55.     "Settlement Amount" means the total amount of up to Eighty-Five Million Dollars ($85,000,000), to be paid by Scotts on behalf of Defendants as set forth in Section VI.A of this Agreement.

56.     "Settlement Class" or "Settlement Class Members" mean all Persons who, between November 1, 2005 and May 1, 2008, purchased and have not yet received a full refund for their Morning Song Bird Food purchases. The following entities and individuals are excluded from the Settlement Class: (a) Defendants and their immediate families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest; (b) distributors, retailers, and other resellers of Morning Song Bird Food; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class as provided in this Agreement.

57.     "Settlement Fund" means the Settlement Amount, plus all accrued interest, which may be reduced by payments or deductions as provided in this Agreement or by Court order. The Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, to the fullest extent possible.

58.     "Settlement Fund Account" means an interest-bearing account that is subject to the oversight and control of Defendants' Counsel and Class Counsel

1    pursuant to an escrow agreement and into which the Settlement Amount shall be
2    transferred.

3        59.    "Supplemental Claim Form Refund" means the refund, up to $75 per
4    Household, in the form of a check that may be distributed as set forth in Section IV.8
5    of this Agreement, only in the event there is a balance in the Settlement Fund in
6    excess of the Maximum Residual Sum as set forth in Section VI.B.1 of this
7    Agreement, to a Settlement Class Member without Proof of Purchase who submits a
8    valid Claim Form and Claim Form Affidavit for more than $100 by the Claims
9    Deadline.

10       60.    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs,
11   imposts, and other charges of any kind (together with any and all interest, penalties,
12   additions to tax and additional amounts imposed with respect thereto) imposed by any
13   governmental authority.

14       61.    "Unknown Claims" is defined in Section XIII.5 of this Agreement.

15       62.    All capitalized terms include the plural as well as the singular.

16       63.    The word "including" has the same meaning as the phrase "including,
17   without limitation" and other similar phrases.

18   **III.    <u>NOTICE OF THE SETTLEMENT</u>**

19       1.    Pursuant to the Court's order (ECF 509), the Parties shall file the
20   Agreement with the Court, together with a Motion for Preliminary Approval of the
21   Agreement and Approval of Notice, no later than December 7, 2018.

22       2.    Not later than ten (10) days after the filing of this Agreement with the
23   Court, Defendants' Counsel shall serve notice of the proposed Settlement upon the
24   appropriate federal and state officials, as provided by CAFA.

25       3.    In accordance with all the terms of the Court's Preliminary Approval
26   Order, the Settlement Administrator shall disseminate the Notices and the Claim
27   Form, shall establish a post-office box for the receipt of any Settlement-related
28   correspondence, shall establish a toll-free telephone number that will provide

1  automated Settlement-related information to Settlement Class Members; shall respond

2  to inquiries or requests from Settlement Class Members, in consultation with Class

3  Counsel and Defendants' Counsel; and shall respond to inquiries or requests from

4  Class Counsel, Defendants' Counsel, and the Court.

5      4.    **Retailer-Identified Refund Notice**: The Settlement Administrator shall

6  be responsible for: (a) printing and mailing by regular, first-class mail and emailing

7  (depending on which is available in the respective Retailer Records) Retailer-

8  Identified Refund Notices (substantially in the form attached as Exhibit H), along with

9  Correction Forms, Long-Form Notices, and Claim Forms to those specific Settlement

10  Class Members identified through a reasonable inquiry of Retailer Records that have

11  all the required information for a Retailer-Identified Refund and that qualify for a

12  Retailer-Identified Refund; (b) updating any known Settlement Class Member address

13  information using the National Change of Address (NCOA) system; and (c) handling

14  returned Retailer-Identified Refund Notices not delivered to Settlement Class

15  Members.

16      5.    **Long-Form Notice**: The Settlement Administrator shall be responsible

17  for (a) printing and mailing by regular, first-class mail and emailing (to the extent

18  reasonably practicable) Long-Form Notices (substantially in the form attached as

19  Exhibit D), along with Claim Forms, to Settlement Class Members identified through

20  a reasonable inquiry of Retailer Records and other applicable records produced in

21  discovery in the Action and provided to the Settlement Administrator; (b) updating

22  any known Settlement Class Member address information using the National Change

23  of Address (NCOA) system; and (c) handling returned Long-Form Notices not

24  delivered to Settlement Class Members.

25      6.    **Publication Notice**: The Settlement Administrator shall be responsible

26  for, without limitation: (a) soliciting bids for Publication Notice in the form approved

27  by the Court for the national editions of three consumer magazines (Birds & Blooms,

28  National Geographic, and People Magazine); two trade publications (JAVMA and

Veterinary Practice News); and four online/mobile platforms (Conversant - Mobile, Facebook, Google Ad Network, and Yahoo! Ad Network) or similar substitute publications and platforms, in consultation with counsel for the Parties; (b) typesetting the Publication Notice for print; and (c) ensuring dissemination of the Publication Notice in accordance with the Preliminary Approval Order so as to provide the best practicable notice to the Settlement Class.

7.    **Website Notice**: The Settlement Administrator shall be responsible for establishing a settlement website to which Settlement Class Members may refer for information about the Action and Settlement and submit online Claim Forms and inquiries. The Settlement Administrator shall post the Long-Form Notice and Claim Form on the website as well as other important documents and deadlines, in consultation with counsel for the Parties.

8.    Class Counsel may post the Long-Form Notice and Claim Form on their firm websites. Released Defendants shall refer inquiring Settlement Class Members to the Settlement Administrator, the toll-free number, and the settlement website.

9.    No later than seven (7) days before the Fairness Hearing, the Settlement Administrator shall file with the Court the details outlining the scope, method, and results of the Notice Plan.

10.    The Settlement Administrator shall have the responsibility to receive and maintain on behalf of the Court any Settlement Class Member correspondence, including inquiries, Claim Forms, requests for exclusion, and/or objections to the Settlement. The Settlement Administrator shall also forward written inquiries to Class Counsel or its designee for a response, if warranted, and shall simultaneously provide copies of all such documents to Defendants' Counsel.

## IV.   REFUNDS TO SETTLEMENT CLASS MEMBERS

1.    As set forth in this Agreement, including in Sections IV and V, Settlement Class Members may receive the following Refunds: (1) Retailer-Identified Refunds; (2) Proof of Purchase Refunds; or (3) Claim Form Refunds. Settlement Class

1   Members who timely submit valid Claim Forms and Claim Form Affidavits for a
2   refund in excess of $100 may be eligible for Supplemental Claim Form Refunds as
3   described below. Settlement Class Members who timely submit valid Claim Forms
4   and Claim Form Affidavits for a refund in excess of $175 may be eligible for Second
5   Supplemental Claim Form Refunds as described below.

6   2.   Settlement Class Members may submit Claim Forms for Proof of
7   Purchase Refunds and/or Claim Form Refunds with all supporting documentation
8   (including Proof of Purchase and Claim Form Affidavit, respectively) to the
9   Settlement Administrator by regular, first-class mail, fax, email, or via the settlement
10  website.

11  3.   Refunds will not be issued prior to the Effective Date but will be issued
12  within ninety (90) days after the Effective Date or as otherwise agreed by the Parties
13  or ordered by the Court.

14  4.   Any check issued pursuant to this Agreement shall be valid for 120 days
15  or as otherwise agreed by the Parties or ordered by the Court, except for checks issued
16  for Supplemental Claim Form Refunds and Second Supplemental Claim Form
17  Refunds, which shall be valid for 30 days unless otherwise agreed by the Parties or
18  ordered by the Court.

19  5.   **Retailer-Identified Refunds:**

20  (a)   Settlement Class Members identified through a reasonable inquiry
21  of Retailer Records that have all the required information for a Retailer-Identified
22  Refund shall receive a Retailer-Identified Refund Notice informing such Settlement
23  Class Member of the information set forth in the Retailer Records. Such Settlement
24  Class Members shall have thirty (30) days from the Notice Date to review the
25  Retailer-Identified Refund Notice and return to the Settlement Administrator the
26  Correction Form with corrections to any incorrect name or contact information
27  provided and information to identify the correct recipient and address for the Retailer-
28  Identified Refund.

(b)     If no Correction Form is received within thirty (30) days from the Notice Date, the Settlement Administrator shall issue a refund from the Net Settlement Fund in the form of a check to the Settlement Class Member that qualifies for a Retailer-Identified Refund using the contact information as set forth in the Retailer-Identified Refund Notice.

(c)     If a Correction Form is received within thirty (30) days from the Notice Date, the Settlement Administrator shall issue a refund, in the form of a check to the Settlement Class Member using the contact information as set forth in the Correction Form.

(d)     Any Settlement Class Member whose Retailer-Identified Refund Notice is returned as undeliverable, and who cannot be located, shall not receive a Retailer-Identified Refund.

(e)     There is no monetary cap on Retailer-Identified Refunds.

(f)     Any Settlement Class Member who receives a Retailer-Identified Refund may also file a Claim Form supported by a Proof of Purchase or Claim Form Affidavit seeking a refund of the purchase price of additional purchases of Morning Song Bird Food, only to the extent those purchases were not already included in the Retailer-Identified Refund, subject to the limitations set forth in this Agreement.

6.     **Proof of Purchase Refunds:**

(a)     Any Settlement Class Member with Proof of Purchase may submit a Claim Form for a refund for the total purchase price of his or her purchases of Morning Song Bird Food during the Class Period to the extent not included in a Retailer-Identified Refund. To be eligible for a Proof of Purchase Refund, the Settlement Class Member must submit a valid Claim Form and Proof of Purchase to the Settlement Administrator by the Claims Deadline. Settlement Class Members who timely submit valid Claim Forms and Proofs of Purchase, as determined by the Settlement Administrator, shall receive refunds, in the form of a check from the Net Settlement Fund.

(b)  In consultation with the Settlement Administrator and Class Counsel, Defendants shall have the right to establish reasonable fraud control measures and standards to be applied by the Settlement Administrator to claims for Proof of Purchase Refunds, including, without limitation, the use of price term sheets for Morning Song Bird Food.

(c)  There is no monetary cap on Proof of Purchase Refunds.

7.  **Claim Form Refunds:**

(a)  Any Settlement Class Member without Proof of Purchase may submit a Claim Form for a refund of his or her purchases of Morning Song Bird Food during the Class Period to the extent not included in a Retailer-Identified Refund. To be eligible for a Claim Form Refund, the Settlement Class Member must submit a valid Claim Form and Claim Form Affidavit to the Settlement Administrator by the Claims Deadline. Such Settlement Class Members will receive a refund from the Net Settlement Fund, in the form of a check of the amount claimed in the Claim Form and supported by the Claim Form Affidavit, up to $100 per Household.

(b)  In consultation with the Settlement Administrator and Class Counsel, Defendants shall have the right to establish reasonable fraud control measures and standards to be applied by the Settlement Administrator to claims for Claim Form Refunds, including, without limitation, the use of price term sheets for Morning Song Bird Food.

(c)  Claim Form Refunds shall not increase the amount of the Settlement Fund. In the event total Claim Form Refunds (with a $100-per-Household limit) exceed the balance in the Net Settlement Fund as set forth in Section IV of this Agreement, the Claim Form Refunds will be distributed on a reduced *pro rata* basis.

8.  **Supplemental Claim Form Refunds:**

(a)  If, after a reasonable period of time and no sooner than 120 days after the issuance of the Claim Form Refunds, there is a balance in the Net Settlement Fund in excess of the Maximum Residual Sum as set forth in Section VI.B.1 of this

Agreement, those Settlement Class Members who timely submitted valid Claim Forms and Claim Form Affidavits for more than $100 per Household may receive additional amounts from the balance in the Net Settlement Fund in excess of the Maximum Residual Sum, on a *pro rata* basis, not to exceed an additional $75 per Household for a total of $175 per Household for all Claim Form and Supplemental Claim Form Refunds. Such Settlement Class Members will receive a refund in the form of a check.

(b)    In the event payment of all Supplemental Claim Form Refunds would exceed the balance in the Net Settlement Fund in excess of the Maximum Residual Sum as set forth above, the amount of the Supplemental Claim Form Refunds will be distributed on a reduced *pro rata* basis.

9.    **Second Supplemental Claim Form Refunds:**

(a)    If there is a balance in the Net Settlement Fund in excess of the Maximum Residual Sum as set forth in Section VI.B.1 of this Agreement, those Settlement Class Members who timely submitted valid Claim Forms and Claim Form Affidavits for more than $175 per Household and who received and cashed their initial Claim Form Refunds may receive additional amounts from the balance in the Net Settlement Fund in excess of the Maximum Residual Sum, on a *pro rata* basis, not to exceed the total purchase amount in the Claim Form. Such Settlement Class Members will receive a refund in the form of a check.

(b)    In the event payment of all Second Supplemental Claim Form Refunds would exceed the amount available for distribution as set forth above, the amount of the Second Supplemental Claim Form Refunds will be distributed on a reduced *pro rata* basis.

## V.    CLAIMS PROCESS AND ADMINISTRATION

1.    The process for submitting a Claim Form is designed to be as simple and convenient as possible.

2.      Subject to the supervision and direction of the Court, the Settlement Administrator will oversee the implementation and administration of the claims process, including (a) calculation of Retailer-Identified Refunds based on Retailer Records; (b) validation of Claim Forms and approval of payment of Proof of Purchase Refunds and Claim Form Refunds based on information and documents submitted by Settlement Class Members and information and documents provided by Class Counsel and Defendants, subject to reasonable fraud control measures and standards established by Defendants, in consultation with the Settlement Administrator and Class Counsel; (c) distribution of Refunds from the Net Settlement Fund; and (d) preparation and dissemination of reports, on a monthly or other periodic basis and as requested, to Class Counsel and Defendants' Counsel regarding the status of the claims process and of Retailer-Identified Refunds, Proof of Purchase Refunds, and Claim Form Refunds.

3.      In consultation with the Settlement Administrator and Class Counsel, Defendants shall have the right to establish reasonable fraud control measures and standards to be applied by the Settlement Administrator in reviewing and processing Claim Forms and Refunds, including, without limitation, the use of price term sheets for Morning Song Bird Food. All documents, information, or materials provided to the Settlement Administrator to administer the Settlement (including reviewing and processing Claim Forms and Refunds) shall be made available to any Party upon request.

4.      In administering the claims process, the Settlement Administrator shall act in good faith and make reasonable efforts to determine whether a Claim Form is valid and payable in accordance with this Agreement, the reasonable fraud control measures and standards established by Defendants in consultation with the Settlement Administrator and Class Counsel, and any Court order. That determination shall be based on: (a) the information provided on the Claim Form; (b) the documentation or information provided by Class Counsel and Defendants and through Retailer Records;

(c) any Proof of Purchase; or (d) the completeness or substantial completeness of the information required to be included in the Claim Form Affidavit. The validity of a Claim Form and amount of any Proof of Purchase Refund or Claim Form Refund will be assessed by the Settlement Administrator based on the totality of the information and documentation.

5. The Settlement Administrator shall have the right to contact Settlement Class Members to complete or validate their Claim Forms, and such Settlement Class Members shall be permitted to try to cure any deficiencies with their claims within thirty (30) days after the Claims Deadline or the date of the deficiency notification sent by the Settlement Administrator, whichever is later. If a timely Claim Form is rejected by the Settlement Administrator as deficient (for example, the Settlement Class Member failed to sign the Claim Form), the Settlement Administrator shall notify the claimant in writing. Such Settlement Class Members shall have thirty (30) days from the Claims Deadline or the date of the deficiency notification sent by the Settlement Administrator, whichever is later, to cure the deficiency.

6. If a Settlement Class Member wishes to dispute the rejection of a Claim Form or the calculation of his or her Proof of Purchase Refund or Claim Form Refund (if any), he or she may so notify the Settlement Administrator and must produce any supporting information or documentation requested by the Settlement Administrator no later than thirty (30) days after the Claims Deadline or the date of the deficiency notification sent by the Settlement Administrator, whichever is later.

7. The Settlement Administrator will evaluate any additional information or documentation submitted by the Settlement Class Member, consult with Class Counsel and Defendants' Counsel, and then decide whether the Claim Form should be accepted and/or if the payments of any Proof of Purchase Refund or Claim Form Refund should be adjusted.

8.     The determination by the Settlement Administrator will be final and binding and the Settlement Administrator will notify the Settlement Class Member of the final determination as to his or her dispute.

9.     Any Settlement Class Member who fails to timely submit a valid Claim Form and Proof of Purchase and/or Claim Form Affidavit by the Claims Deadline (except for those Settlement Class Members who timely cure any deficiency with their Claim Form, Proof of Purchase, and/or Claim Form Affidavit) shall be forever barred from receiving any Refund, payment, or other monetary relief pursuant to this Agreement, but will in all other respects be subject to and bound by the provisions of this Agreement, the releases (as described in Section XIII in this Agreement), and the Final Order and Judgment. Notwithstanding the foregoing, the Settlement Administrator shall have the discretion (but not the obligation) to accept Claim Forms for review that are received shortly after the Claims Deadline if Class Counsel and Defendants' Counsel agree.

10.     No Person shall have any claim against Plaintiffs, Class Counsel, or the Settlement Administrator, or any other Person designated by Class Counsel, based on the amount of a Refund, or the determination, calculation, or distribution of a Refund made substantially in accordance with this Agreement and the Settlement set forth in this Agreement or further order(s) of the Court.

11.     Released Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to the amount or calculation of any Refund, the determination, distribution, or administration of any Refund or the Settlement Fund, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection with such matters. Plaintiffs, Settlement Class Members, and Class Counsel hereby release Released Defendants from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

12.     The Court retains the ongoing and exclusive jurisdiction and independent case management authority regarding the general operation of the Settlement Administration and those appointed to implement and oversee it.

## VI.    SETTLEMENT FUND

### A.    The Settlement Amount and the Settlement Fund Account

1.     Within thirty (30) days after the entry of the Preliminary Approval Order, Scotts, on behalf of itself and all Defendants, shall pay, deposit, or otherwise transfer into the Settlement Fund Account the first installment of the Settlement Amount in the amount of Forty-Two Million Five Hundred Thousand Dollars ($42,500,000).

2.     Within thirty (30) days of the Effective Date, Scotts, on behalf of itself and all Defendants, shall pay, deposit, or otherwise transfer into the Settlement Fund Account the second installation of the Settlement Amount in the amount of at least Twenty Million Dollars ($20,000,000) and up to Forty-Two Million Five-Hundred Thousand Dollars ($42,500,000), in consultation with the Settlement Administrator and Class Counsel, and depending on the status of the payment of Refunds. This provision shall not alter Scotts' obligation, on behalf of itself and all Defendants, to pay, deposit, or otherwise transfer into the Settlement Fund Account the full amount of the second installation of the Settlement Amount in the amount up to Forty-Two Million Five-Hundred Thousand Dollars ($42,500,000) if necessary.

3.     Within thirty (30) days of the Effective Date or as otherwise agreed by the Parties, Scotts, on behalf of itself and all Defendants, shall pay, deposit, or otherwise transfer into the Settlement Fund Account any additional amounts required to cover the Retailer-Identified Refunds and Proof of Purchase Refunds in consultation with the Settlement Administrator subject to the terms and conditions of this Agreement.

4.     Upon receipt of each installment of the Settlement Amount, the Escrow Agent shall invest (or cause to be invested) the Settlement Amount deposited into the Settlement Fund Account in United States agency or Treasury securities or other

instruments backed by the Full Faith and Credit of the United States government or federal agency or fully insured by the United States government or a federal agency and shall reinvest (or cause to be reinvested) the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund and Released Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

**B.    Payment Priority**

1.     Within ninety (90) days of the Effective Date or as otherwise agreed by the Parties or as otherwise ordered by the Court, refunds, costs, and expenses shall be paid from the Net Settlement Fund in the following order: (a) Proof of Purchase Refunds and Retailer-Identified Refunds; (b) Claim Form Refunds; (c) Supplemental Claim Form Refunds, if any; and (d) Second Supplemental Claim Form Refunds, if any.

(a)     *Proof of Purchase and Retailer-Identified Refunds:* If the total amount of dollars to be distributed as Proof of Purchase and Retailer-Identified Refunds exceeds the balance remaining in the Net Settlement Fund, Scotts, on behalf of Defendants, shall transfer or cause to be transferred additional amounts, sufficient to cover all Proof of Purchase and Retailer-Identified Refunds, into the Settlement Fund within thirty (30) days upon a request by the Settlement Administrator pursuant to this provision and in consultation with the Settlement Administrator.

(b)     *Claim Form Refunds*: If the total amount of dollars to be distributed as Claim Form Refunds exceeds the balance remaining in the Net Settlement Fund after payment of item (a) and after payment of any Court-approved award of Attorneys' Fees and Expenses and Service Awards, the remaining balance will be distributed for Claim Form Refunds on a *pro rata* basis. If no money remains

in the Net Settlement Fund after payment of item (a), Claim Form Refunds shall not be distributed. Claim Form Refunds shall not increase the amount of the Settlement Fund.

(c)   *Supplemental Claim Form Refunds*: If there is a balance in excess of the Maximum Residual Sum in the Net Settlement Fund after payment of items (a) through (b) and after payment of any Court-approved award of Attorneys' Fees and Expenses and Service Awards, the remaining balance in excess of the Maximum Residual Sum shall be distributed for Supplemental Claim Form Refunds on a *pro rata* basis, not to exceed an additional $75 per Household, for a total not to exceed $175 per Household. Supplemental Claim Form Refunds shall not increase the amount of the Settlement Fund.

(d)   *Maximum Residual Sum*: If, after payment of items (a) through (b) and after payment of any Court-approved award of Attorneys' Fees and Expenses and Service Awards (before the payment of Supplemental Claim Form Refunds), money remains in the Net Settlement Fund, those residual funds shall revert to Scotts within 180 days after the Effective Date (or such other date as may be set with Defendants' consent to allow sufficient time for processing of claims and Refunds from the Settlement Fund) and may thereafter be retained by Scotts as Scotts' money. In no event shall the residual funds paid back to Scotts be greater than the Maximum Residual Sum plus accrued interest on the actual residual amount.

(e)   *Second Supplemental Claim Form Refund:* If there is a balance in the Net Settlement Fund, after payment of items (a) through (c), after payment of any Court-approved award of Attorneys' Fees and Expenses and Service Awards, after the return of the Maximum Residual Sum to Scotts, and after the payment of Supplemental Claim Form Refunds, the remaining balance shall be distributed for Second Supplemental Claim Form Refunds on a *pro rata* basis to those Settlement Class Members who timely submitted valid Claim Forms and Claim Form Affidavits for more than $175 per Household and who received and cashed their initial Claim

1  Form Refunds, in an amount not to exceed the total purchase price in the valid Claim

2  Forms and Claim Form Affidavits timely submitted by such Settlement Class

3  Members.  Second Supplemental Claim Form Refunds shall not increase the amount

4  of the Settlement Fund.

5  (f)  *Residual Charitable Donation*: If there is a balance in the Net

6  Settlement Fund after payment of items (a) through (c) and item (e), any balance that

7  remains shall, unless otherwise ordered by the Court on motion or otherwise, be

8  donated to the National Audubon Society, a bird-related charitable organization

9  mutually agreed upon by Class Counsel and Scotts' Counsel. The Parties agree that

10  the Court shall retain jurisdiction over the distribution of any balance in the Net

11  Settlement Fund described in this paragraph and that any exercise of the Court's

12  discretion with regard to the distribution of such balance pursuant to this provision

13  shall not constitute a material alteration of the Settlement for purposes of Section XIV

14  relating to termination.

15  2.  After the Effective Date, the Escrow Agent may order payment of all

16  additional Notice and Administration Expenses reasonably incurred by the Settlement

17  Administrator without further order of the Court.

18  3.  Any Court-approved award of Attorneys' Fees and Expenses and

19  Services Awards shall be paid from the Settlement Fund and shall not increase the

20  Settlement Amount.

21  **C.  Taxes**

22  **1.  Qualified Settlement Fund**

23  (a)  The Parties and the Escrow Agent agree to treat the Settlement

24  Fund as being at all times a "qualified settlement fund" within the meaning of Treas.

25  Reg. § 1.468B-1, to the fullest permissible extent. It is intended that all transfers by

26  Scotts, on behalf of itself and all Defendants, to the Settlement Fund will satisfy the

27  "all events test" and the "economic performance" requirement of § 461(h)(1) of the

28  Internal Revenue Code of 1986, as amended, and the regulations promulgated

1  thereunder (the "Code"), and Treas. Reg. § 1.461-1(a)(2). As such, Scotts shall not be

2  taxed on the income of the Settlement Fund. The Settlement Fund shall be taxed on its

3  modified gross income determined in accordance with Treas. Reg. § 1.468B-2(b).

4    (b) The Escrow Agent shall timely make such elections as necessary

5  or advisable to carry out the provisions of this Agreement, including, if appropriate,

6  the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) to treat the

7  Settlement Fund as coming into existence as a qualified settlement fund as of the

8  earliest permitted date. Such elections shall be made in compliance with the

9  procedures and requirements contained in such regulations. It shall be the

10  responsibility of the Escrow Agent to timely and properly prepare and deliver the

11  necessary documentation for signature by all necessary parties and thereafter to cause

12  the appropriate filing to occur.

13    (c) For the purpose of Treas. Reg. §§ 1.468B-1 through 1.468B-4, the

14  "transferor" shall be Scotts. The transferor shall supply to the Escrow Agent the

15  statement required by Treas. Reg. § 1.468B-3(e) by February 15 of the year following

16  the calendar year(s) in which any installment of the Settlement Amount is paid to the

17  Settlement Fund, including any additional amounts required to pay Retailer-Identified

18  Refunds or Proof of Purchase Refunds.

19    (d) The "administrator" of the Settlement Fund within the meaning of

20  Treas. Reg. § 1.468B-2(k) shall be the Escrow Agent. The Escrow Agent shall apply

21  for an employer identification number for the Settlement Fund in accordance with

22  Treas. Reg. § 1.468B-2(k)(4). The Escrow Agent shall timely and properly file all

23  informational and other tax returns as are necessary or advisable with respect to the

24  Settlement Fund (including, without limitation, the returns described in Treas. Reg.

25  § 1.468B-2(k)). In accordance with the provisions of Treas. Reg. § 1.468B-2(l), the

26  Escrow Agent shall cause to be filed all required federal, state, and local information

27  returns as are necessary or advisable with respect to any payments made to Settlement

28  Class Members. The Escrow Agent may retain certified public accountants and legal

1  counsel to consult with and advise it with respect to the preparation of any and all

2  appropriate income tax returns, information returns, or compliance withholding

3  requirements.

4         (e)     The Escrow Agent shall be empowered to take all such actions as it

5  deems necessary to ensure that the Settlement Fund is treated as a "qualified

6  settlement fund" under Treas. Reg. § 1.468B-1. The Escrow Agent may petition the

7  Court to amend, either in whole or in part, any administrative provision of this

8  Agreement that causes unanticipated tax consequences or liabilities inconsistent with

9  the foregoing.

10        (f)     In accordance with Treas. Reg. § 1.468B-2(j), the taxable year of

11 the Settlement Fund shall be the calendar year and the Settlement Fund shall use an

12 accrual method of accounting within the meaning of § 446(c) of the Code.

13        (g)     All (i) Taxes (including any estimated Taxes, interest, or penalties)

14 arising with respect to the income earned by the Settlement Fund, including any Taxes

15 or tax detriments that may be imposed upon Released Defendants or Released

16 Plaintiffs and Settlement Class Members or their respective counsel with respect to

17 any income earned by the Settlement Fund for any period during which the Settlement

18 Fund does not qualify as a "qualified settlement fund" for federal or state income tax

19 purposes, and (ii) expenses and costs incurred in connection with the operation and

20 implementation of this Section of the Agreement (including, without limitation,

21 expenses of tax attorneys and/or accountants and mailing and distribution costs and

22 expenses relating to filing, or failing to file, the returns described in this paragraph)

23 ("Tax Expenses"), shall be paid out of the Settlement Fund. In all events, Released

24 Defendants and their counsel shall have no liability or responsibility for the Taxes or

25 the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Released

26 Defendants and their counsel harmless for Taxes and Tax Expenses (including,

27 without limitation, Taxes payable by reason of any such indemnification). Taxes and

28 Tax Expenses shall be treated as, and considered to be, a cost of administration of the

Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be authorized (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). Neither the Released Defendants nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph of the Agreement.

2.     Released Defendants are not and shall not be obligated to compute, estimate or pay any taxes on behalf of any Plaintiff, any Settlement Class Member, Class Counsel, and/or the Escrow Agent. Defendants do not make and have not made any representations regarding the taxability of any Refunds made pursuant to this Agreement or the Settlement. Any income or other tax, including any interest, penalties, or other payment obligations ultimately determined to be payable from or with respect to any payments made pursuant to the Agreement or the Settlement, as well as any state or federal reporting obligations imposed on Plaintiffs and Settlement Class Members arising from the Settlement, shall not be Defendants' responsibility and Defendants shall have no liability with respect to any such matters.

## VII.   REQUESTS FOR EXCLUSION

1.     The Notices will provide instructions regarding the procedures that must be followed to opt out of the Settlement Class pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v). The Parties agree that, to opt out validly from the Settlement Class, a Settlement Class Member must personally sign and submit a written request to opt out stating "I wish to exclude myself from the Settlement Class in *In re Morning Song Bird Food Litigation*" (or substantially similar clear and unambiguous language) to

the Settlement Administrator on or before the Opt-Out Deadline. That written request also shall contain: (a) the Settlement Class Member's printed name, address, and telephone number; (b) a statement that the Settlement Class Member is a Settlement Class Member; and (c) the Morning Song Bird Food purchased with approximate dates, retailers, product type, and purchase price. The Settlement Administrator shall provide copies of all opt out requests to Class Counsel and Defendants' Counsel within seven (7) days of the receipt of each such request.

2.     All Settlement Class Members who do not timely and validly opt out of the Settlement Class shall in all respects be bound by all terms of this Agreement and the Court's Final Order and Judgment upon the Effective Date. Group opt outs, including "mass" or "class" opt outs, are strictly prohibited.

3.     Any Settlement Class Member who elects to opt out pursuant to this Section may not also object to the Settlement, pursuant to Section VIII of this Agreement. Any Settlement Class Member who elects to object pursuant to Section VIII cannot opt out pursuant to this Section.

4.     Not later than seven (7) days before the Fairness Hearing, the Settlement Administrator shall file with the Court a list of those Persons who have timely and validly excluded themselves from the Settlement.

5.     The Settlement Administrator and the Parties shall promptly send copies of any requests for exclusion, objections, and related correspondence to each other.

**VIII.  OBJECTIONS TO THE SETTLEMENT**

1.     The Notices will provide instructions regarding the procedures that must be followed to object to the Settlement pursuant to Fed. R. Civ. P. 23(e)(5). Provided that a Settlement Class Member has not submitted a written request to opt out, as set forth above in Section VII, such Settlement Class Member may present written objections, if any, explaining why he or she believes the Settlement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect

of the Settlement must file with the Court a written statement of the objection, which must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention. That written statement also must contain the Settlement Class Member's printed name, address, telephone number, and Morning Song Bird Food product purchases forming the basis of the Settlement Class Member's inclusion in the Settlement Class, and any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection.

2.      A Settlement Class Member may object on his or her own behalf or through a lawyer hired at that Settlement Class Member's own expense, provided the Settlement Class Member has not submitted a written request to opt out, as set forth in Section VII of this Agreement. The objection must state whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and must state with specificity the grounds for the objection. Lawyers asserting objections on behalf of Settlement Class Members must file a notice of appearance with the Court by the date set forth in the Preliminary Approval Order or as the Court otherwise may direct.

3.      A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval Order, a written notice of his or her intent to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval Order, or by such time and in such manner as the Court may otherwise direct.

4.      Unless the Court directs otherwise, any Settlement Class Member who fails to comply with this Section of the Agreement, shall waive and forfeit any and all rights he or she may have to object to the Settlement and/or to appear and be heard on his or her objection at the Fairness Hearing.

5. Any Settlement Class Member who intends to object to the fairness of the Settlement, Class Counsel's request for Attorneys' Fees and Expenses, or Plaintiffs' request for Service Awards must do so in writing on or before the Objection Date, and in accordance with all the requirements set forth in the Preliminary Approval Order.

6. The Parties shall request that any Settlement Class Member who fails to comply with the Preliminary Approval Order shall waive and forfeit any and all rights that he or she may have to be heard, appear separately, and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the release of the Plaintiffs' Released Claims.

7. The Parties shall request that any Person filing an objection shall, by doing so, submit himself or herself to the exclusive jurisdiction and venue of the Court, and shall agree to be subject to discovery by the Parties with respect to both the objection and any objections to other class action settlements lodged by the objector.

## IX.   COURT APPROVAL OF THE SETTLEMENT

1. The Parties and their respective counsel agree to cooperate fully with one another and to take all actions and steps as reasonably necessary in seeking and obtaining Court approval of the Settlement and in the execution of such documents as are reasonably necessary and appropriate to obtain approval of and to implement the Agreement.

2. On or before December 7, 2018, and in compliance with the Court's order (ECF 509), the Parties shall file this Agreement with the Court and move the Court for preliminary approval, including issuance of a proposed Preliminary Approval Order, substantially in the form attached as Exhibit F.

3. The Parties shall request that the Fairness Hearing be set at least one hundred (100) days after the Court's Preliminary Approval Order is entered. The Parties agree that the Fairness Hearing may be rescheduled or postponed without resending the Notices.

4.     Class Counsel shall file with the Court a Final Approval Motion seeking entry of the Final Order and Judgment on or before the deadline set forth in the Court's Preliminary Approval Order.

## X.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

1.     After preliminary approval of the Settlement, Class Counsel may apply to the Court for an award of Attorneys' Fees and Expenses and for Service Awards for Plaintiffs in recognition of their time and service to the Settlement Class. Class Counsel shall file any application by the deadline set forth in the Preliminary Approval Order.

2.     Any award of Attorneys' Fees and Expenses shall not increase the Settlement Amount. Service Awards shall be paid from the Settlement Fund and are in addition to any Refunds for which Plaintiffs may be eligible under this Agreement.

3.     Any award of Attorneys' Fees and Expenses and any Service Award shall be paid as set forth in Section VI.B.1 of this Agreement within ten (10) business days of entry by the Court of the order awarding Attorneys' Fees and Expenses and/or Service Awards. If, after payment of the Attorneys' Fees and Expenses and/or Service Awards pursuant to this paragraph, the award of Attorneys' Fees and Expenses and/or Service Awards is disapproved or reduced or if the Agreement is terminated, Class Counsel shall, within ten (10) business days, repay the Attorneys' Fees and Expenses and the Service Awards to the Settlement Fund in an amount consistent with such disapproval or reduction.

4.     Any award of Attorneys' Fees and Expenses and any Service Award shall be separate from the Settlement, and approval of the Settlement shall not be contingent upon an award of Attorneys' Fees and Expenses or any Service Award at all or in any particular amount. If the Court reduces or disapproves Class Counsel's request for an award of Attorneys' Fees and Expenses and/or Service Awards, that shall not be grounds to terminate the Settlement.

5.     Plaintiffs and Class Counsel shall have the right to appeal the Court's determination as to the amount of any award of Attorneys' Fees and Expenses and of any Service Award.

6.     Other than as stated in this Settlement with respect to establishing the Settlement Fund, Plaintiffs release the Released Defendants (as defined below) and the Released Defendants shall have no responsibility for and no liability with respect to any Attorneys' Fees and Expenses award or the allocation of any Attorneys' Fees and Expenses among Class Counsel and/or any other person who may assert a claim to Attorneys' Fees and Expenses.

## XI.     **DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

1.     Except as expressly admitted in Scotts' 2012 plea to a misdemeanor violation of the Federal Insecticide, Fungicide, and Rodenticide Act, Scotts: (a) has denied, and continues to deny, that Scotts has committed any act or omission giving rise to any liability or violation of law; (b) has expressly denied, and continues to deny, each of the claims alleged by Plaintiffs in the Action, along with all the charges of wrongdoing or liability against Scotts arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Action; (c) has denied, and continues to deny, among other allegations, the allegations that Plaintiffs or the Settlement Class have suffered any damage, that Plaintiffs or the Settlement Class are entitled to full refunds of their purchases of Morning Song Bird Food, or that Plaintiffs or the Settlement Class were harmed by any conduct alleged in the Action or that could have been alleged in the Action; (d) has asserted, and continues to assert, that its conduct was at all times proper, and believes that the evidence developed to date supports Scotts' position that it acted properly at all times and that the Action is without merit; (e) maintains that it has meritorious defenses to all claims alleged in the Action; and (f) enters into this Agreement subject to and without waiving any personal jurisdiction defenses asserted in the litigation.

2.　　Mr. Hagedorn has denied, and continues to deny, that he has committed any act or omission giving rise to any liability or violation of law. Mr. Hagedorn has expressly denied, and continues to deny, each of the claims alleged by Plaintiffs in the Action, along with all the charges of wrongdoing or liability against him arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Action. Mr. Hagedorn also has denied, and continues to deny, among other allegations, the allegations that Plaintiffs or the Settlement Class have suffered any damage, that Plaintiffs or the Settlement Class are entitled to full refunds of their purchases of Morning Song Bird Food, or that Plaintiffs or the Settlement Class were harmed by any conduct alleged in the Action or that could have been alleged in the Action. Mr. Hagedorn has asserted, and continues to assert, that his conduct was at all times proper, and believes that the evidence developed to date supports his position that he acted properly at all times and that the Action is without merit. In addition, Mr. Hagedorn maintains that he has meritorious defenses to all claims alleged in the Action and enters into this Agreement subject to and without waiving any personal jurisdiction defenses asserted in the litigation.

3.　　As set forth below, neither the Settlement nor any of the terms of this Agreement shall constitute an admission or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants are entering into this Agreement solely to eliminate the burden and expense of further litigation. Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

## XII.　PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

1.　　Class Counsel believes that the Plaintiffs' claims have merit based on proceedings to date, but Class Counsel acknowledges that Defendants would continue to assert legal and factual defenses to the claims made in the Action.

2.      Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals. Plaintiffs and Class Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel also acknowledge the inherent problems of proof of, and possible defenses to, the claims asserted in the Action.

3.      Based on their evaluation, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Agreement confers substantial benefits upon the Settlement Class and is in the best interests of the Settlement Class.

## XIII. RELEASES

1.      As of the Effective Date, the Action shall be dismissed with prejudice against all Defendants.

2.      As of the Effective Date, any and all claims of every nature and description whatsoever, whether direct, derivative or brought in any other capacity, whether class or individual, ascertained or unascertained, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, existing or claimed to exist, known and unknown, foreseen or unforeseen, fixed or contingent, liquidated or not liquidated, in law or equity that have been or could have been asserted against any of the Released Defendants (as defined below), in any court, tribunal, or proceeding (including, but not limited to, any claims arising under federal, state, or common law and any statutory claims), by or on behalf of Releasing Plaintiffs and Settlement Class Members (as defined below), related to, arising from, or based upon, in whole or in part, the manufacture, sale, marketing, business operations, communications, transactions, or any other activity relating to Morning Song Bird Food or the manufacture or sale of wild bird food by any Scotts affiliate or the litigation or defense of this Action ("Plaintiffs' Released Claims") shall be released, fully discharged, waived, and finally terminated. This release shall include the release of

Unknown Claims (as defined below). For avoidance of doubt, Plaintiffs' Released Claims shall not include the right to enforce the terms of the Settlement or this Agreement, Preliminary Approval Order, Final Order and Judgment, and other orders or judgments issued by the Court relating to Notice or the Settlement.

3.     "Released Defendants" means each and all of the Defendants and Defendants' Counsel and, to the fullest extent permissible under law, each of their respective current and former employees, fiduciaries, control persons, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, consultants, attorneys, personal or legal representatives, accountants, insurers (and anyone whom any of them may have an obligation to indemnify regarding the subject matter of the Action), coinsurers, reinsurers, family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, foundations, agents, and associates of each and all of the foregoing.

4.     "Releasing Plaintiffs and Settlement Class Members" means every current and former plaintiff and each Settlement Class Member, in their individual or representative capacities, and Class Counsel, and their respective heirs, agents, attorneys, trusts, executors, estates, assigns, representatives, spouses, family members, or anyone claiming injury on their behalf.

5.     "Unknown Claims" means any of Plaintiffs' Released Claims that any Releasing Plaintiff or Settlement Class Member does not know or suspect to exist in his or her favor at the time of the release, which, if known by him or her, might have affected his or her settlement with and release of the Released Defendants, or might have affected his or her decision not to object to this Settlement or seek exclusion from this Settlement. With respect to any and all Plaintiffs' Released Claims, the

Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish and each of the Settlement Class Members shall be deemed to have, and by operation of the Final Order and Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the release set forth herein. This includes a waiver by the Releasing Plaintiffs and Settlement Class Members of any rights pursuant to section 1542 of the California Civil Code (or any similar, comparable, or equivalent provision of any federal, state, or foreign law, or principle of common law), which provides:

> ***A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.***

Releasing Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Plaintiffs' Released Claims, but Plaintiffs shall expressly settle and release and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever settled and released any and all Plaintiffs' Released Claims, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this Release is a part.

6.      Upon the Effective Date, the Agreement shall be the sole and exclusive remedy for any and all of Plaintiffs' Released Claims, including Unknown Claims, by any and all of Releasing Plaintiffs and Settlement Class Members against any and all Released Defendants. No Released Defendant shall be subject to liability of any kind to any Releasing Plaintiff or Settlement Class Member with respect to any of

1   Plaintiffs' Released Clams. Upon the Effective Date, and subject to fulfillment of all

2   of the terms of this Agreement, each and every Releasing Plaintiff and Settlement

3   Class Member shall be permanently barred and enjoined from initiating, asserting

4   and/or prosecuting any of Plaintiffs' Released Claim, including any Unknown Claim,

5   against the Released Defendants in any court or any forum.

6          7.     On the Effective Date, each of the Released Defendants shall all release,

7   discharge, and waive any and all claims (including Defendants' Unknown Claims)

8   related to the institution, prosecution, or settlement of the Action other than to enforce

9   the terms of the Settlement or this Agreement, Preliminary Approval Order, Final

10  Order and Judgment, and other orders or judgments issued by the Court relating to

11  Notice or the Settlement ("Defendants' Released Claims"), against every current and

12  former plaintiff, each Settlement Class Member, and Class Counsel ("Released

13  Plaintiffs and Settlement Class Members"). "Defendants' Unknown Claims" means

14  any of Defendants' Released Claims that Released Defendants do not know or suspect

15  to exist in their favor at the time of the release, which, if known by them, might have

16  affected their decision to settle with and release the Defendants' Released Claims

17  against the Released Plaintiffs and Settlement Class Members. Released Defendants

18  acknowledge that they have been informed by Defendants' Counsel of section 1542 of

19  the California Civil Code and expressly waive and relinquish any rights or benefits

20  available to them under it and any similar state statute.

21         8.     The Parties agree that the Court shall retain exclusive and continuing

22  jurisdiction over all Parties, the Action, and this Agreement to resolve any dispute that

23  may arise regarding this Agreement or in relation to this Action, including any dispute

24  regarding  validity,  performance,  interpretation,  administration,  enforcement,

25  enforceability, or termination of the Agreement.

26

27

28

## XIV.  MODIFICATION OR TERMINATION OF THIS AGREEMENT

1. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of all the Parties and approval of the Court; provided, however, that after entry of the Final Order and Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Order and Judgment and do not limit the rights of Settlement Class Members.

2. This Agreement shall terminate at the discretion of either Defendants or Plaintiffs, if: (a) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the proposed Settlement that the terminating Party in its (or their) judgment reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to Notice, the definition of the Settlement Class, and/or the terms of the Release; or (b) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating Party in its (or their) judgment reasonably determine(s) is material. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section XIV, by a signed writing served on the other Parties no later than thirty (30) days after receiving notice of the event prompting the termination.

3. This Agreement shall terminate at the discretion of Defendants if 1,000 or more Settlement Class Members choose to opt out of the Settlement or if Settlement Class Members whose total amount of purchases of Morning Song Bird Food during the Class Period exceeds $100,000 choose to opt out of the Settlement. In either instance, Defendants may, but are not obligated to, terminate the Settlement.

4.      The Parties agree that the definition and scope of "Retailer Records" (as set forth in this Agreement) is a material term and a key element of the Settlement. To the extent there is any departure from the definition and scope of "Retailer Records," Defendants may, but are not obligated to, terminate the Settlement.

5.      In the event of termination of the Settlement, and consistent with the applicable evidentiary rules, neither the existence of this Agreement and the term sheet nor their contents shall be admissible in evidence or shall be referred to for any purpose in the Action or in any other proceeding. Further, in such event, the Parties shall be restored to their respective positions status quo ante, and this Agreement and all negotiations, transactions, and proceedings in connection herewith shall not be deemed to prejudice in any way their respective positions, and Defendants shall not be precluded from challenging whether the case may proceed as a class action, from challenging whether the Court has personal jurisdiction over Defendants, or from asserting any other argument, defense, or position.

6.      If an option to terminate this Agreement arises under Section XIV.1–.3 above, neither Defendants nor Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith. If, but only if, this Agreement is terminated pursuant to Section XIV.1, .2, or .3, then:

(a)      This Agreement shall be null and void and shall have no force or effect, and no Party shall be bound by any of its terms, except for the terms of Section XIV.5;

(b)      The Parties shall petition the Court to have any stay orders lifted;

(c)      All of the provisions of this Agreement, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of Defendants, Plaintiffs, or any Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a

1  new scheduling order such that no Party's substantive or procedural rights are

2  prejudiced by the settlement negotiations and proceedings;

3       (d)    The Parties expressly and affirmatively reserve all claims,

4  defenses, arguments, and motions as to all claims that have been or might later be

5  asserted in the Action;

6       (e)    Plaintiffs and all other Settlement Class Members expressly and

7  affirmatively reserve and do not waive all motions as to, and arguments in support of,

8  all claims, causes of action or remedies that have been or might later be asserted in the

9  Action;

10       (f)    Defendants expressly and affirmatively reserve and do not waive

11  all motions as to, and arguments in support of, any defense to all claims, causes of

12  action or remedies that have been or might later be asserted in the Action;

13       (g)    Neither this Agreement, the fact of its having been entered into,

14  nor the negotiations leading to it shall be offered into evidence for any purpose

15  whatsoever;

16       (h)    Any settlement-related order(s) or judgment(s) entered in this

17  Action after the date of execution of this Agreement shall be deemed vacated and shall

18  be without any force or effect;

19       (i)    Scotts shall bear all reasonable and necessary costs incurred by the

20  Settlement Administrator in connection with the implementation of this Settlement up

21  until its termination, including the Initial Costs Cap and any other Notice and

22  Administration Expenses agreed to by the Parties or ordered by the Court. Neither the

23  Plaintiffs nor Class Counsel shall be responsible for any such settlement-related costs;

24  and

25       (j)    Within five (5) business days, any funds in the Settlement Fund

26  Account, including any interest accrued, shall revert to Scotts, minus incurred Notice

27  and Administration Expenses.

28

7.      Notwithstanding the terms of Section XIV.6 of this Agreement, if a Settlement Class Member has (a) timely submitted a valid Claim Form, and (b) received any Refund or any compensation pursuant to the Agreement prior to its termination or invalidation, such a Settlement Class Member and Defendants shall be bound by the terms of their respective Releases set forth in Section XIII, which terms shall survive termination or invalidation of the Agreement.

## XV.   REPRESENTATIONS AND WARRANTIES

1.      Class Counsel warrant and represent that: (a) they are expressly authorized by Plaintiffs to enter into this Agreement and sign this Agreement on behalf of Plaintiffs; and (b) they are seeking to protect the interests of the Settlement Class.

2.      Class Counsel further represents that Plaintiffs shall remain and serve as representatives of the Settlement Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement Class.

3.      Each Defendant warrants and represents that the individual signing this Agreement on its or his behalf is authorized to enter into and sign the Agreement on behalf of that Defendant.

4.      The Parties acknowledge and agree that they have and will not give any opinion concerning the tax consequences of the proposed Settlement to Settlement Class Members, nor are any representations or warranties in this regard made by virtue of this Agreement. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

## XVI. GENERAL MATTERS AND RESERVATIONS

1.     Parties and their respective counsel agree to use their best efforts to have any collateral attack upon this Agreement or the Settlement promptly dismissed or rejected.

2.     The Parties and their respective counsel shall cooperate with each other, act in good faith, and use their reasonable best efforts to ensure the timely and expeditious administration and implementation of the Agreement and to minimize the costs and expenses incurred therewith. The Parties agree to reasonably cooperate to submit required forms or implement the Agreement in a manner that minimizes unnecessary tax burdens on the Defendants.

3.     The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

4.     Except with respect to Scotts' agreement to deposit the first installment of the Settlement Amount as set forth in Section VI.A.1, Defendants' obligation to implement the Settlement described in this Agreement is and shall be contingent upon each of the following:

(a)     Entry by the Court of the Final Order and Judgment approving the Settlement;

(b)     The occurrence of the Effective Date; and

(c)     The satisfaction of any other conditions set forth in this Agreement.

5.     The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent Defendants

1   from disclosing such information, prior to the date on which the Motion for
2   Preliminary Approval is filed, to state and federal agencies, independent accountants,
3   actuaries, advisors, financial analysts, insurers, or lawyers. The Parties and their
4   counsel may also disclose the existence and contents of this Agreement to Persons
5   (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree
6   disclosure must be made in order to effectuate the terms and conditions of this
7   Agreement.

8       6.      This Agreement, complete with its Exhibits and any subsequent
9   amendments thereto filed with the Court, sets forth the entire agreement among the
10  Parties with respect to its subject matter, and it may not be altered, amended, or
11  modified except by written instrument executed by Class Counsel and Defendants'
12  Counsel. The Parties expressly acknowledge that no other agreements, arrangements,
13  or understandings not expressed in this Agreement or the documents filed with the
14  Court exist among or between them, and that in deciding to enter into this Agreement,
15  they have relied solely upon their own judgment and knowledge. This Agreement and
16  the accompanying documents filed with the Court supersede any prior agreements,
17  understandings, or undertakings (written or oral) by and between the Parties regarding
18  the subject matter of this Agreement, including the August 17, 2018 term sheet
19  between the Parties.

20      7.      This Agreement and any amendments thereto, and any dispute arising out
21  of or related to this Agreement, shall be governed by and interpreted according to the
22  Federal Rules of Civil Procedure and applicable jurisprudence relating thereto, and the
23  laws of the State of California notwithstanding its conflict of law provisions.

24      8.      Any disagreement and/or action to enforce this Agreement shall be
25  commenced and maintained only in the United States District Court for the Southern
26  District of California.

27      9.      Whenever this Agreement requires or contemplates that one of the Parties
28  shall or may give notice to the other, notice shall be provided by e-mail and/or next-

day (excluding Saturdays, Sundays and federal holidays) express delivery service as follows:

If to Defendants, then to:

  Jones Day
  4655 Executive Drive, Suite 1500
  San Diego, CA 92121.3134
  Telephone: 858-314-1200

If to Plaintiffs and/or the Settlement Class, then to:

  Robbins Geller Rudman & Dowd LLP
  655 West Broadway, Suite 1900
  San Diego, CA 92101
  Telephone: 800-449-4900

10. All time periods in this Agreement shall be computed in calendar days unless otherwise expressly provided. In computing any period of time in this Agreement or by order of the Court, the day of the act or event shall not be included. The last day of the period shall be included, unless it is a Saturday, a Sunday, or a federal holiday, or, when the act to be done is the filing of a paper in court, a day on which the Court is closed, in which case the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Agreement, "federal holiday" includes holidays designated in Fed. R. Civ. P. 6(a) or by the clerk of the Court.

11. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

12. Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision or the Exhibits, nor shall they argue that any particular provision should be construed against its drafter. All Parties agree that this Agreement and its Exhibits were drafted by counsel for the Parties during extensive arm's-length negotiations. No parol or other

evidence may be offered to explain, construe, contradict, or clarify the Agreement's terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

13.     The Parties expressly acknowledge and agree that this Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, related notes, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state or territory.

14.     Plaintiffs expressly affirm that the allegations contained in each of their Complaints were made in good faith, but consider it desirable for the Action to be settled and dismissed only because of the substantial benefits that the Settlement will provide to Settlement Class Members.

15.     The Parties agree that Plaintiffs and Defendants and their respective counsel in the Action complied with the provisions of Federal Rule of Civil Procedure 11 with respect thereto, and shall request a Final Order and Judgment reflecting such compliance.

16.     The Parties agree not to disparage each other regarding the Action or the Settlement, provided, however, that discussing publicly available information shall not constitute disparagement under this provision.

17.     The Parties agree that the Agreement was reached voluntarily after consultation with competent legal counsel.

18.     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Defendant or Released Plaintiff or Settlement Class Member; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Defendant or Released Plaintiff or Settlement Class Member in any civil, criminal, regulatory, or

administrative proceeding in any court, administrative agency or other tribunal. Nor shall this Agreement be deemed an admission by any Party as to the merits of any claim or defense.

19.     This Agreement shall be binding upon, and inure to the benefit of, the successors, transferees, and assigns of Defendants, Plaintiffs, and Settlement Class Members.

20.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

21.     The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

22.     If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

23.     This Agreement may be signed with an electronic or facsimile signature and in counterparts, each of which shall constitute a duplicate original.

24.     In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Defendants' Counsel and Class Counsel mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement. Any such agreement shall be reviewed and approved by the Court before it becomes effective.

//
//

1  DATED: December 7, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
MICHAEL ALBERT
RACHEL A. COCALIS

RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

DOWD & DOWD P.C.
DOUGLAS P. DOWD
ALEX R. LUMAGHI
211 North Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/621-2500
314/621-2503 (fax)

THE DRISCOLL FIRM, P.C.
JOHN J. DRISCOLL
CHRISTOPHER QUINN
GREGORY PALS
211 N. Broadway, Suite 4050
St. Louis, MO  63102
Telephone:  314/932-3232
314/932-3233 (fax)

CLASS COUNSEL

1   DATED: December 7, 2018          JONES DAY
                                    EDWARD PATRICK SWAN. JR. (89429)
2

3   _____

4
                                    4655 Executive Drive, Suite 1500
5                                   San Diego, CA 92121.3134
                                    Telephone:  858/703-3132
6                                   844/345-3178 (fax)

7                                   JONES DAY
                                    JEFFREY J. JONES (admitted *pro hac vice*)
8                                   MARJORIE P. DUFFY (admitted *pro hac vice*)
                                    CASTEEL BORSAY (admitted *pro hac vice*)
9                                   325 John H. McConnell Blvd., Suite 600
                                    Columbus, OH 43215
10                                  Telephone:  614/469-3939
                                    614/461-4198 (fax)
11
                                    Attorneys for DEFENDANTS
12                                  THE SCOTTS MIRACLE-GRO COMPANY
                                    AND THE SCOTTS COMPANY LLC
13

14

15  DATED: December 7, 2018          KIRKLAND & ELLIS LLP
                                    MARK HOLSCHER
16                                  SIERRA ELIZABETH
                                    YOSEF MAHMOOD
17                                  ALLIE OZUROVICH

18                                  *[signature]*

19  _____

20                                  333 South Hope Street
                                    Los Angeles, CA 90071
21                                  Telephone:  213/680-8400
                                    213/680-8500 (fax)
22
                                    KIRKLAND & ELLIS LLP
23                                  Mark R. Filip (admitted *pro hac vice*)
                                    300 North LaSalle
24                                  Chicago, IL 60654
                                    Telephone: 312/861-2000
25                                  312/862-2200 (fax)

26                                  Attorneys for DEFENDANT JAMES
                                    HAGEDORN
27

28

                                - 53 -                3:12-cv-01592-JAH-AGS

1

DATED: December 7, 2018

2

3

JONES DAY
EDWARD PATRICK SWAN. JR. (89429)

4

5

6

4655 Executive Drive, Suite 1500
San Diego, CA  92121.3134
Telephone:  858/703-3132
844/345-3178 (fax)

7

8

9

10

11

JONES DAY
JEFFREY J. JONES (admitted *pro hac vice*)
MARJORIE P. DUFFY (admitted *pro hac vice*)
CASTEEL BORSAY (admitted *pro hac vice*)
325 John H. McConnell Blvd., Suite 600
Columbus, OH  43215
Telephone:  614/469-3939
614/461-4198 (fax)

12

13

Attorneys for DEFENDANTS
THE SCOTTS MIRACLE-GRO COMPANY
AND THE SCOTTS COMPANY LLC

14

15

DATED: December 7, 2018

16

17

18

KIRKLAND & ELLIS LLP
MARK HOLSCHER
SIERRA ELIZABETH
YOSEF MAHMOOD
ALLIE OZUROVICH

19

20

21

22

333 South Hope Street
Los Angeles, CA  90071
Telephone:  213/680-8400
213/680-8500 (fax)

23

24

25

KIRKLAND & ELLIS LLP
Mark R. Filip (admitted *pro hac vice*)
300 North LaSalle
Chicago, IL  60654
Telephone: 312/861-2000
312/862-2200 (fax)

26

27

Attorneys for DEFENDANT JAMES
HAGEDORN

28

# EXHIBIT A

EXHIBIT A – CLAIM FORM

*In re Morning Song Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS

## CLAIM FORM FOR PROOF OF PURCHASE REFUNDS OR CLAIM FORM REFUNDS

Complete and submit this Claim Form for a Proof of Purchase Refund or Claim Form Refund by _____.

If you are submitting a claim for a **Proof of Purchase Refund**, you <u>must complete</u> Sections I and II below, and include proof of purchase.  Proof of Purchase means an original or a copy of a sales receipt that shows the quantity of Morning Song Bird Food you purchased, the retailer your purchase was made from, the date of purchase, and the dollar amount of Morning Song Bird Food you purchased from November 1, 2005 to May 1, 2008.

If you are submitting a claim for a **Claim Form Refund** because you do not have or cannot locate an original or copy of your sales receipt but you purchased Morning Song Bird Food products from November 1, 2005 to May 1, 2008, you <u>must complete</u> Sections I, II, III, and IV below.

By signing and submitting this Claim Form, you are authorizing the Settlement Administrator to contact you for more information, if needed, to help evaluate your claim.  All information you provide will be used only for purposes of administering this Settlement.

Refunds will be issued after the Settlement's Effective Date.  Please save a copy of this completed Claim Form and your Proof of Purchase, if applicable, for your records.

## I.    CLAIMANT INFORMATION

First Name:_____    Last Name:_____

Email Address:_____ ____   Telephone Number:_____

Mailing Address:_____

City _____    State_____    Zip Code_____

## II.    CLAIM TYPE

Check, as applicable:

_____ I am seeking a Proof of Purchase Refund and am providing Proof of Purchase with this Claim Form.  I certify that I have not received a refund for any of these purchases.

_____ I am seeking a Claim Form Refund and am signing the Claim Form Affidavit below on this Claim Form.  I certify that I have not received a refund for any of these purchases.

Signed: _____    Date:_____

EXHIBIT A – CLAIM FORM

## III.    CLAIM FORM REFUND INFORMATION

If you are seeking a Claim Form Refund, you must sign Section IV below, and state the quantity of Morning Song Bird Food that you purchased, the likely retailer the purchase was made from, the approximate date or dates of purchase, and the dollar amount of Morning Song Bird Food purchased.

| Approximate Date of Purchase | Likely Retailer Where Purchase Was Made | Quantity of Morning Song Bird Food Purchased | Total Amount Paid |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(Attach additional sheets if necessary)

## IV.    AFFIDAVIT (CLAIM FORM REFUND ONLY)

**I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Signed: _____    Date:_____

## STOP

Before mailing did you:
- Sign Section II
- Include Proof of Purchase (Proof of Purchase Refunds only)
- Sign Section IV (Claim Form Refund only)

Mail this Claim Form and any Proof of Purchase by [**DATE**] to:

[Settlement Administrator address here]

Or

Submit this Claim Form and any Proof of Purchase online at [website] by [**DATE**].

# EXHIBIT B

EXHIBIT B – RETAILER RECORD CORRECTION FORM

*In re Morning Song Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS

## CORRECTION FORM REGARDING RETAILER-IDENTIFIED REFUNDS

- Complete and submit this form **by _____**, only if your name or contact information is **incorrect** or if you are not the correct recipient and know who is.  Please correct any incorrect name or contact information and/or identify the correct recipient and address for the Retailer-Identified Refund.  You also may provide additional contact information (email address, telephone number) to authorize the Settlement Administrator to contact you if needed to process your Retailer-Identified Refund.

- Do <u>not</u> complete or submit this form if your name and contact information listed below is **correct**.

- Do <u>not</u> submit a Correction Form to modify the quantity of Morning Song Bird Food products purchased or the amount of those purchases, as detailed in the accompanying notice regarding Retailer-Identified Refunds.

- Submit a Claim Form for a Proof of Purchase Refund or a Claim Form Refund if you believe you are entitled to receive refunds of purchases in addition to those detailed in the accompanying Retailer-Identified Refund Notice.

| YOUR RETAILER-IDENTIFIED REFUND | |
|---|---|
| **Name** | [Information to be populated from Retailer Records] |
| **CORRECTED NAME OR REFUND RECIPIENT** | |
| **Address City, State Zip** | [Information to be populated from Retailer Records] |
| **CORRECTED ADDRESS INFORMATION** | |
| **ADDITIONAL CONTACT INFORMATION** | |

**IF YOU HAVE QUESTIONS, CONTACT THE SETTLEMENT ADMINISTRATOR AT [1-XXX-XXX-XXXX].**

**PLEASE DO NOT CONTACT THE JUDGE, THE COURT, THE DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

EXHIBIT C

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

1

2

3

4

5

6

7

8

9                     UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MORNING SONG BIRD FOOD LITIGATION | Lead Case No. 3:12-cv-01592-JAH-AGS |
| This Document Relates To: | <u>CLASS ACTION</u> |
| ALL ACTIONS. | [PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT |

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

1   WHEREAS, the consolidated action captioned *In re Morning Song Bird Food*

2   *Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS, and all of the actions

3   consolidated in and related to it (the "Action") is pending before the Court;

4   WHEREAS, the parties to the Action have applied pursuant to Rule 23 of the

5   Federal Rules of Civil Procedure for final approval of the proposed settlement (the

6   "Settlement") in accordance with the Stipulation of Class Action Settlement entered

7   into by the Parties on December 7, 2018 (the "Agreement"), a copy of which was filed

8   with the Court on December 7, 2018 (ECF ___), and have consented to the entry of

9   this Final Order and Judgment;

10   WHEREAS, pursuant to the Court's Order of _____, 2018 (the

11   "Preliminary Approval Order"), this Court held a hearing on _____, 2019

12   (the "Fairness Hearing"), on the Agreement in the Action;

13   WHEREAS, due notice of the Fairness Hearing was given to the Settlement

14   Class, as defined, in accordance with the Preliminary Approval Order, and such notice

15   was adequate and sufficient;

16   WHEREAS, the Parties to the Action appeared at the Fairness Hearing by their

17   respective attorneys of record and were heard in support of the Settlement of the

18   Action and all other persons desiring to be heard who properly and timely filed and

19   served objections and/or notices of intent to appear were given an opportunity to be

20   heard as provided in the Notices;

21   WHEREAS, the Court having considered the Settlement, having reviewed the

22   Agreement, its Exhibits, and other submissions of the parties, having considered all of

23   the files, records, and pleadings in this Action, and being otherwise fully advised, and

24   good cause appearing therefor:

25   **NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

26   1.   The capitalized terms used in this Order shall have the same meanings as

27   defined in the Agreement unless otherwise specified or defined in this Order.

28

- 1 -                          3:12-cv-01592-JAH-AGS

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

2.    The Court has jurisdiction over the subject matter of this Action and has determined that it has jurisdiction over all Parties to the Action as set forth in prior filings, including all Settlement Class Members who did not timely exclude themselves from the Settlement Class. The list of excluded Class Members is attached as Exhibit A.

3.    For purposes of the Settlement only, the Court finally certifies the Settlement Class, which consists of all Persons who, between November 1, 2005 and May 1, 2008, purchased and have not yet received a full refund for their Morning Song Bird Food purchases. "Morning Song Bird Food" means any Scotts wild bird food product containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or pirimiphos-methyl, respectively, as set forth in the list of products attached as Exhibit E to the Agreement. The following entities and individuals are excluded from the Settlement Class: (a) Defendants and their immediate families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest; (b) distributors, retailers, and other resellers of Morning Song Bird Food; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) all those otherwise in the Settlement Class who timely and properly excluded themselves from the Settlement Class as provided in the Agreement and the Preliminary Approval Order.

4.    All Persons who satisfy the Settlement Class definition above, except those Settlement Class Members who timely and validly excluded themselves from the Settlement Class, are Settlement Class Members bound by this Final Order and Judgment.

5.    The Court concludes that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. Specifically, the Court finds that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

1  questions of law and fact common to the Settlement Class, and such questions

2  predominate over any questions affecting only individual members; (c) the claims of

3  Plaintiffs as representative plaintiffs are typical of the claims of the Settlement Class;

4  (d) Plaintiffs and Class Counsel have fairly and adequately protected and represented

5  the interests of the Settlement Class; and (e) a settlement class is superior to other

6  available methods for fairly and efficiently adjudicating the claims and disputes at

7  issue in this Action.

8       6.     The Court finally appoints Plaintiffs Laura Cyphert, Milt Cyphert, Ellen

9  Larson, and David Kirby as the Settlement Class representatives and Robbins Geller

10 Rudman & Dowd LLP, Dowd & Dowd P.C., and The Driscoll Firm, P.C. as Class

11 Counsel.

12      7.     The Parties complied in all material respects with the Notice Plan set

13 forth in the Agreement. The Court finds and determines that dissemination and

14 publication of the Notices as set forth in the Notice Plan in the Agreement constituted

15 the best notice practicable under the circumstances, constituted due and sufficient

16 notice of the Settlement and the matters set forth in the Notices to all persons entitled

17 to receive notice, and fully satisfied the requirements of due process and of Federal

18 Rule of Civil Procedure 23. Defendants further caused to be served on the United

19 States Attorney General and all State Attorneys General notice pursuant to the Class

20 Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq.* ("CAFA"), and the form and

21 manner of that notice is hereby determined to be in full compliance with CAFA.

22      8.     The Court has determined that full opportunity has been given to

23 Settlement Class Members to opt out of the Settlement, to object to the terms of the

24 Settlement, any award of Attorneys' Fees and Expenses to Class Counsel, or any

25 Service Award to Plaintiffs, or otherwise to be heard at the Fairness Hearing.

26      9.     The Court has considered all submissions and arguments made at the

27 Fairness Hearing and finds that the Settlement is fair, reasonable, adequate, and in the

28

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

1   best interests of the Settlement Class. The Court therefore finally approves the

2   Settlement for all the reasons set forth in the Motion for Final Approval.

3       10.    The Action, the claims asserted in the Action, and Plaintiffs' Released

4   Claims (as defined below) are hereby dismissed with prejudice as to all Released

5   Defendants.

6       11.    As of the Effective Date, any and all claims of every nature and

7   description whatsoever, whether direct, derivative or brought in any other capacity,

8   whether class or individual, ascertained or unascertained, suspected or unsuspected,

9   asserted or unasserted, accrued or unaccrued, existing or claimed to exist, known and

10  unknown, foreseen or unforeseen, fixed or contingent, liquidated or not liquidated, in

11  law or equity that have been or could have been asserted against any of the Released

12  Defendants (as defined below), in any court, tribunal, or proceeding (including, but

13  not limited to, any claims arising under federal, state, or common law and any

14  statutory claims), by or on behalf of Releasing Plaintiffs and Settlement Class

15  Members (as defined below), related to, arising from, or based upon, in whole or in

16  part, the manufacture, sale, marketing, business operations, communications,

17  transactions, or any other activity relating to Morning Song Bird Food or the

18  manufacture or sale of wild bird food by any Scotts affiliate or the litigation or

19  defense of this Action ("Plaintiffs' Released Claims") shall be released, fully

20  discharged, waived, and finally terminated. This release shall include the release of

21  Unknown Claims (as defined below). For avoidance of doubt, Plaintiffs' Released

22  Claims shall not include the right to enforce the terms of the Settlement or the

23  Agreement, Preliminary Approval Order, Final Order and Judgment, and other orders

24  or judgments issued by the Court relating to Notice or the Settlement.

25      12.    "Released Defendants" means each and all of the Defendants and

26  Defendants' Counsel and, to the fullest extent permissible under law, each of their

27  respective current and former employees, fiduciaries, control persons, general or

28  limited partners or partnerships, joint ventures, member firms, limited liability

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

companies, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, consultants, attorneys, personal or legal representatives, accountants, insurers (and anyone whom any of them may have an obligation to indemnify regarding the subject matter of the Action), coinsurers, reinsurers, family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, foundations, agents, and associates of each and all of the foregoing.

13. "Releasing Plaintiffs and Settlement Class Members" means every current and former plaintiff and each Settlement Class Member, in their individual or representative capacities, and Class Counsel, and their respective heirs, agents, attorneys, trusts, executors, estates, assigns, representatives, spouses, family members, or anyone claiming injury on their behalf.

14. "Unknown Claims" means any of Plaintiffs' Released Claims that any Releasing Plaintiff or Settlement Class Member does not know or suspect to exist in his or her favor at the time of the release, which, if known by him or her, might have affected his or her settlement with and release of the Released Defendants, or might have affected his or her decision not to object to this Settlement or seek exclusion from this Settlement. With respect to any and all Plaintiffs' Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish and each of the Settlement Class Members shall be deemed to have, and by operation of this Final Order and Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the release set forth in this Order. This includes a waiver by the Releasing Plaintiffs and Settlement Class Members of any rights pursuant to section 1542 of the California Civil Code (or any similar, comparable, or equivalent

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

provision of any federal, state, or foreign law, or principle of common law), which provides:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

Releasing Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Plaintiffs' Released Claims, but Plaintiffs shall expressly settle and release and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever settled and released any and all Plaintiffs' Released Claims, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of this Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this Release is a part.

15.     Upon the Effective Date, the Agreement shall be the sole and exclusive remedy for any and all of Plaintiffs' Released Claims, including Unknown Claims, by any and all of Releasing Plaintiffs and Settlement Class Members against any and all Released Defendants. No Released Defendant shall be subject to liability of any kind to any Releasing Plaintiff or Settlement Class Member with respect to any of Plaintiffs' Released Clams. Upon the Effective Date, and subject to fulfillment of all of the terms of the Agreement, each and every Releasing Plaintiff and Settlement Class Member shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any of Plaintiffs' Released Claim, including any Unknown Claim, against the Released Defendants in any court or any forum.

16.     On the Effective Date, each of the Released Defendants shall all release, discharge, and waive any and all claims (including Defendants' Unknown Claims)

related to the institution, prosecution, or settlement of the Action other than to enforce the terms of the Settlement or the Agreement, Preliminary Approval Order, Final Order and Judgment, and other orders or judgments issued by the Court relating to Notice or the Settlement ("Defendants' Released Claims"), against every current and former plaintiff, each Settlement Class Member, and Class Counsel ("Released Plaintiffs and Settlement Class Members"). "Defendants' Unknown Claims" means any of Defendants' Released Claims that Released Defendants do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their decision to settle with and release the Defendants' Released Claims against the Released Plaintiffs and Settlement Class Members. Released Defendants acknowledge that they have been informed by Defendants' Counsel of section 1542 of the California Civil Code and expressly waive and relinquish any rights or benefits available to them under it and any similar state statute.

17.     Plaintiffs and all Settlement Class Members, and any of them, are barred and enjoined from initiating, asserting and/or prosecuting, in any capacity, any of Plaintiffs' Released Claims, including any Unknown Claim, against any Released Defendant in any court or any forum.

18.     The effectiveness of this Final Order and Judgment and the obligations of Plaintiffs, Class Counsel, the Settlement Class, and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal that concerns only the award of Attorneys' Fees and Expenses or any Service Award (at all or in any particular amount) or the procedures for determining Settlement Class Members' claims in a manner that does not otherwise impact the validity or finality of the Settlement.

19.     The Court further orders, adjudges, and decrees that all other relief be, and is hereby, denied, and that this Final Order and Judgment disposes of all the claims that were or could have been brought as to all the Parties in the Action.

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

20.     Without affecting the finality of this Final Order and Judgment, the Court hereby retains and reserves jurisdiction to resolve any dispute that may arise regarding the Agreement, the Settlement, or in relation to the Action, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Agreement and the Settlement.

21.     Neither the Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Defendant or Released Plaintiff or Settlement Class Member or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Defendant or Released Plaintiff or Settlement Class Member in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency or other tribunal. Nor shall the Agreement be deemed an admission by any Party as to the merits of any claim or defense.

22.     In the event that this judgment does not become "effective" or "final" as defined in the Agreement, then the judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement, and this Final Order and Judgment shall be vacated. In such event, all orders entered in connection with the Settlement shall be null and void, and the Settlement Class shall be decertified. In such event, the Action shall return to its status prior to execution of the term sheet.

23.     All Parties and their respective counsel in the Action complied with the provisions of Federal Rule of Civil Procedure 11 in prosecuting or defending the Action.

24.     The Parties to the Agreement are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms. Without further order of the Court, the Parties may agree to modification of the Agreement, including, without limitation, extensions of time and other terms relating to the

EXHIBIT C – PROPOSAL FINAL ORDER AND JUDGMENT

1   processing of Claim Forms and issuance of Refunds, if such changes are consistent

2   with this Final Order and Judgment and do not materially limit the rights of Settlement

3   Class Members.

4        There is no just reason for delay in the entry of this Final Order and Judgment,

5   and the Clerk is directed to enter and docket this Final Order and Judgment in the

6   Action.

7        IT IS SO ORDERED.

8

9   Dated:

10                                   _____
                                     Honorable John A. Houston
11                                   United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

EXHIBIT D – LONG-FORM NOTICE

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

*In re Morning Song Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

# If you purchased certain Morning Song wild bird food products from November 2005 to May 2008, you may be entitled to payment from a proposed class action settlement.

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

- There is a proposed Settlement of class action litigation that is pending in the United States District Court for the Southern District of California, *In re Morning Song Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS. The proposed Settlement is with The Scotts Miracle-Gro Company, The Scotts Company LLC, and Scotts' Chief Executive Officer (together, the "Defendants").

- Consumers who purchased certain Morning Song Bird Food products from November 1, 2005 through May 1, 2008 and who have not yet received a refund or other compensation for those purchases may receive a cash refund under the proposed Settlement (as described below). A list of the Morning Song Bird Food products is attached.

- If you are a Settlement Class Member, your legal rights are affected even if you do not act. Read this Notice carefully:

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | The only way to receive a refund if you have not been identified through Retailer Records. Submit your Claim Form with either Proof of Purchase or Claim Form Affidavit to the Settlement Administrator no later than _____. |
| **ASK TO BE EXCLUDED** | Get no benefits from the Settlement. If you ask to be excluded, you will keep any rights to sue Defendants separately about the same issues being settled now, but you will not receive any refund. Should you elect to exclude yourself from the Settlement Class, you should understand that Defendants and the other Released Defendants will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations or statutes of repose. You must send any written request to be excluded by _____. |
| **OBJECT TO THE PROPOSED** | Write to the Court about your opposition to the proposed Settlement. If you want to object to the Settlement, you must do so in writing by |

| SETTLEMENT | _____. |
|---|---|
| **GO TO THE FAIRNESS HEARING** | Ask to speak to the Court about the proposed Settlement at the Fairness Hearing, scheduled for _____. |
| **DO NOTHING** | By doing nothing, you give up any rights to sue Defendants separately about the same issues being settled now, and unless you have been identified through Retailer Records as a Settlement Class Member, you will not receive any refund. |

Your rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## **What This Notice Contains**

[insert TOC]

## **Basic Information**

**1.      Why Did I Get This Notice?**

You received this Notice because you may have been identified as a potential Settlement Class Member, you are viewing this notice at the Settlement website, or requested to receive a copy of this Notice.

**2.      What Is This Lawsuit About?**

Plaintiffs allege in the lawsuits that the application of certain pesticides, Storcide II and Actellic 5E, to the Morning Song Bird Food products and the sale of those products violated certain federal or state laws.  Plaintiffs sought refunds for their purchases, among other things.

Defendants deny all wrongdoing alleged in the litigation and deny that Plaintiffs have suffered any damages or that they are entitled to full refunds.  However, taking into account the costs, burden, and uncertainty inherent in any litigation, Defendants have concluded that it is desirable and beneficial that the Action be fully and finally settled.  By agreeing to the proposed Settlement described in this Notice, Defendants make no admission as to the truth of these allegations.

The Court has preliminarily approved this proposed Settlement and will hold a Fairness Hearing to decide whether to finally approve the proposed Settlement.

**3.      What Is A Class Action?**

In a class action, one or more persons called "class representatives" (in this case Laura Cyphert, Milt Cyphert, Ellen Larson, and David Kirby) sue on behalf of other people who have similar claims.  Together, the people are called a "class" or "class members."  The individuals who sued are called the "plaintiffs."  The companies or individuals they sued are called the "defendants."  One court resolves the issues for the entire class, except for those people who choose to exclude themselves from the class.

4.      **How Do I Know If I Am A Part Of The Settlement Class?**

You are a member of the Settlement Class if, between November 1, 2005 and May 1, 2008, you purchased and have not yet received a full refund for your Morning Song Bird Food purchases.  A list of the Morning Song Bird Food products is attached.

Unless you have separately received a document entitled "Retailer-Identified Refund Notice," you must complete and timely submit the Claim Form and the required accompanying documentation (as described below) to be eligible to receive any payments from the Settlement. If you have received a Retailer-Identified Refund Notice, please see that document for additional information.

As a Settlement Class Member, you will be bound by all proceedings, orders, and judgments entered in connection with the Settlement, including the release, covenant not to sue, and dismissal with prejudice described below.

<u>**Benefits Of The Proposed Settlement – What You May Get**</u>

5.      **What Does The Proposed Settlement Provide?**

The proposed Settlement provides for the payment of a Settlement Amount of up to $85,000,000 ("Settlement Amount").  The Settlement Amount, together with interest, ("Settlement Fund") will be used to pay notice and administration costs, Court-approved attorneys' fees and expenses, Court-approved service awards for class representatives, and certain Settlement Fund taxes and tax expenses (the "Net Settlement Fund"). The Net Settlement Fund will be used to provide eligible Settlement Class Members with one or more of the refunds below. There is no monetary cap on Retailer-Identified Refunds or the Proof of Purchase Refunds. This means that if the total amount needed to pay Retailer-Identified Refunds and Proof of Purchase Refunds is more than the Net Settlement Fund, Scotts will deposit additional money into the Settlement Fund.

**Retailer-Identified Refunds**:  Settlement Class Members who have been identified through records of certain specified retailers (Tractor Supply Company, Sam's Club, PetSmart, Menard, and Orscheln Farm and Home LLC) that contain certain information about purchases of Morning Song Bird Food between November 1, 2005 through May 1, 2008 will automatically receive a full refund of their purchases.  These Settlement Class Members will receive a Retailer-Identified Refund Notice via mail or email and will be provided the opportunity to update or correct their name and contact information, as well as to submit a Claim Form for additional purchases that are not reflected in the amount of the Retailer-Identified Refund.

**Proof of Purchase Refunds**:  Settlement Class Members who have not been identified through the Retailer Records will receive a full refund of their qualifying purchases of Morning Song Bird Food if they timely submit a valid Claim Form with a sales receipt that shows the quantity of Morning Song Bird Food product purchased, retailer, dates of purchase, and amounts paid between November 1, 2005 through May 1, 2008.

**Claim Form Refunds**:  Settlement Class Members who have not been identified through the Retailer Records and who do not or cannot provide a sales receipt of their qualifying purchases of Morning Song Bird Food are eligible to receive up to $100 per Household if they

timely submit a valid Claim Form and sign the Claim Form Affidavit section.  These funds will be distributed on a *pro rata* basis, meaning the total amount remaining in the Net Settlement Fund after deducting all Retailer-Identified Refunds and Proof of Purchase Refunds will be distributed based on the total amount of timely and valid Claim Form Refunds.

If, after making all the refund payments described above, any Court-approved award of attorneys' fees and expenses to Class Counsel, and any Court-approved service award to the class representatives, and any Settlement Fund taxes and tax expenses, more than $22,500,000 remains in the Net Settlement Fund, the following additional and automatic refunds may be made:

**Supplemental Claim Form Refunds**:  Settlement Class Members who timely submit a valid Claim Form and signed Claim Form Affidavit for more than $100 of qualifying purchases of Morning Song Bird Food may receive up to an additional $75 per Household.  This refund amount, if applicable, will be distributed on a *pro rata* basis and will not exceed the total purchase amount claimed on the Claim Form.

**Second Supplemental Claim Form Refunds**:  Settlement Class Members who timely submit a valid Claim Form and signed Claim Form Affidavit for more than $175 of qualifying purchases of Morning Song Bird Food and cash their first Claim Form Refund check may receive an additional refund amount.  This refund amount, if applicable, will be distributed on a *pro rata* basis and will not exceed the total purchase amount claimed on the Claim Form.

**6.     What Happens If Money Remains In The Net Settlement Fund?**

If the balance of the Net Settlement Fund – after payment of the Retailer-Identified Refunds, the Proofs of Purchase Refunds, the Claim Form Refunds, any Court-approved award of attorneys' fees and expenses to Class Counsel, and any Court-approved service award to the class representatives, and any Settlement Fund taxes and tax expenses – is $22,500,000 or less, the balance will be returned to Scotts and no Supplemental Claim Form Refunds or Second Supplemental Claim Form Refunds will be made.

If money remains in the Net Settlement Fund after making Supplemental Claim Form Refunds and Second Supplemental Claim Form Refunds, the balance will be donated to the National Audubon Society, a bird-related charitable organization mutually agreed upon by Class Counsel and Scotts' Counsel, unless otherwise ordered by the Court.

<u>**How To Get A Payment - Submitting A Claim Form**</u>

**7.     How Do I Submit A Claim Form And Get A Payment?**

Unless you received a Retailer-Identified Refund Notice in the mail or by email, you must submit a Claim Form to receive a payment.  Claim Forms are available and may be submitted online at [website].  Be sure to complete the Claim Form in full, include sales receipts or the Claim Form Affidavit, if and as applicable, and submit or mail it by **Month XX, 2019.**

If you received a Retailer-Identified Refund Notice, you do not need to submit a Claim Form for those purchases.  Please see the Retailer-Identified Refund Notice for additional information and instructions.

**8.     I Received A Retailer-Identified Refund Notice, But It Is Missing Purchases.   What Should I Do?**

If you believe the Retailer-Identified Refund Notice you received does not reflect *all* of your qualifying purchases of Morning Song Bird Food from November 1, 2005 and May 1, 2008, you may submit a Claim Form for additional purchases. Claim Forms are available and may be submitted online at [website] by Month XX, 2019.

**9.     I Think I Am Eligible For A Proof of Purchase Refund, What Should I Do?**

If you believe you are eligible for a Proof of Purchase Refund, you must submit a Claim Form <u>and</u> include your Proof of Purchase by Month XX, 2019.  Proof of Purchase is an original or copy of a sales receipt that shows the quantity of Morning Song Bird Food you purchased, the retailer your purchase was made from, the date of purchase, and the dollar amount of Morning Song Bird Food you purchased from November 1, 2005 to May 1, 2008.

**10.    I Think I Am Eligible For A Claim Form Refund, What Should I Do?**

If you no longer have your sales receipt but you purchased Morning Song Bird Food products from November 1, 2005 to May 1, 2008, you may seek a Claim Form Refund.  You must submit a Claim Form <u>and</u> sign the Claim Form Affidavit section by Month XX, 2019. Your Claim Form must be signed in two locations and include all required information (the quantity of Morning Song Bird Food purchased, the likely retailer it was purchased from, the approximate date or dates the purchases were made, and the dollar amount of Morning Song Bird Food purchased).  By signing your Claim Form Affidavit, you will be swearing that the information you submit is true and accurate.  You also will be authorizing the Settlement Administrator to contact you for more information, if needed, to help evaluate or process your claim.

**11.    What If I Already Received A Refund?**

If you already received a refund for your purchases of Morning Song Bird Food from November 1, 2005 to May 1, 2008, that reimbursement amount will be deducted from the total amount that may be owed to you as part of the proposed Settlement.  If that amount equals or exceeds the total amount you would be entitled under this Settlement you will not receive any Settlement refunds.

**12.    How Are Refunds Determined?**

An independent Settlement Administrator that is appointed by the Court will review all Claim Forms submitted to determine whether they are valid, timely, and payable.  The Settlement Administrator, which is unrelated to any party in this lawsuit, also will calculate the amounts of the Retailer-Identified Refunds, using the records provided by certain retailers, as described above.

The Settlement Administrator may contact Settlement Class Members for further information to complete or validate their Claim Forms or to notify Settlement Class Members in writing if their Claim Form is rejected as deficient.  Settlement Class Members will have thirty (30) days after the Claims Deadline of Month XX, 2019, or the date of the deficiency

notification sent by the Settlement Administrator, whichever is later, to try to cure any deficiencies in their Claim Forms or to dispute any rejection.  The Settlement Administrator will evaluate any additional information or documentation submitted by the Settlement Class Member, consult with Class Counsel and Defendants' Counsel, and then decide whether the Claim Form should be accepted and/or if the payments of any Proof of Purchase Refund or Claim Form Refund should be adjusted.  This decision will be final and binding.

## 13.   When Would I Get My Payment?

The Court will hold a hearing on **Month XX, 2019,** to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain when any appeals will be resolved.  This process may take more than a year.  Please be patient. Consult the Settlement website [www.HERE] for the latest information and updates.

If and when the Settlement is approved and becomes final, Retailer-Identified and Proof of Purchase Refunds will be sent within 90 days of the effective date.  Refunds will then be sent to Settlement Class Members entitled to receive Claim Form Refunds, followed by Supplemental Claim Form Refunds (if any) and Second Supplemental Claim Form Refunds (if any).

## 14.   Tax Consequences Of The Settlement

Filing a Claim Form under the proposed Settlement may have tax consequences for you (meaning you may be required to pay taxes on your refund amount), depending upon your individual circumstances.  You should consult your personal tax advisor regarding the tax consequences of the Settlement and any tax reporting obligations with respect to any Settlement refunds you receive.

## 15.   What Am I Giving Up In Exchange For The Settlement?

If you meet the definition of "Settlement Class Member," you are part of the Settlement Class unless you ask to be excluded of the Settlement (see Question 16).  As part of the Settlement Class, you will be bound by the Settlement and Court orders, whether or not you receive a refund or submit a Claim Form.  When and if the Settlement is approved, the Court will enter a judgment that will dismiss the litigation with prejudice as to all claims against the Defendants.  All Settlement Class Members who do not request to be excluded from the Settlement will be deemed to release Defendants and their current and former employees, affiliates, and insurers (among others, as reflected in the definition of "Released Defendants" in the Settlement Agreement) of any liability for any and all claims of every nature and description whatsoever, whether direct, derivative or brought in any other capacity, whether class or individual, ascertained or unascertained, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, existing or claimed to exist, known and unknown, foreseen or unforeseen, fixed or contingent, liquidated or not liquidated, in law or equity that have been or could have been asserted against any of the Released Defendants, in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, or common law and any statutory claims), by or on behalf of Releasing Plaintiffs and Settlement Class Members related to, arising from, or based upon, in whole or in part, the manufacture, sale, marketing, business operations, communications, transactions, or any other activity relating to Morning Song Bird Food or the manufacture or sale of wild bird food by any Scotts affiliate or the litigation or

defense of this Action.  This means that all Settlement Class Members who have not opted out of the proposed Settlement will be forever barred from initiating, asserting and/or prosecuting any such claim against the Released Defendants in any court or any forum.  In addition, Settlement Class Members will waive any rights under California Civil Code section 1542 (and similar state laws), which provides:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

Settlement Class Members and the parties may still seek the assistance of the Court to enforce the Settlement Agreement, and the Court will continue to oversee the lawsuit in order to interpret and enforce the Settlement Agreement.

More detail about the claims you will be releasing are described in Section XIII of the Settlement Agreement, which is available at [website], or in the public court records on file in this lawsuit.  You can also talk to the lawyers listed in Question 21 below for free or you can, of course, talk to your own lawyer at your own expense if you have questions about the released claims or what they mean.

## Excluding Yourself From The Settlement

**16.      What If I Do Not Want To Be Part Of The Settlement?**

**To exclude yourself or "opt out" from the Settlement,** you must personally sign and submit a written request to opt out stating "I wish to exclude myself from the Settlement Class in *In re Morning Song Bird Food Litigation*" to the Settlement Administrator on or before **Month XX, 2019**.  Your exclusion request must also include:  (1) your printed name, address, and telephone number; (2) a statement that you are a Settlement Class Member; and (3) the Morning Song Bird Food you purchased, together with approximate dates, retailers, product type, and purchase price.

**17.      If I Exclude Myself, Can I Still Get A Refund From The Proposed Settlement?**

No.  If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement Class in this proposed Settlement.  You can get a refund only if you stay in the Settlement Class and either received a Retailer-Identified Refund Notice or timely submit a valid Claim Form, as described above.

**18.      If I Do Not Exclude Myself, Can I Sue The Released Defendants For The Claims Released by This Settlement?**

No.  Unless you exclude yourself from the proposed Settlement, you are giving up the right to sue the Released Defendants for the claims that this Settlement resolves.  You must exclude yourself from the Settlement Class to start your own lawsuit or be part of any other lawsuit against any of the Released Defendants for the claims this Settlement resolves.

Should you elect to exclude yourself from the Settlement Class, you should understand that Defendants and the other Released Defendants will have the right to assert

any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations or statutes of repose.

### Objecting To The Proposed Settlement

**19.    How Do I Tell The Court I Do Not Like The Proposed Settlement?**

If you are a Settlement Class Member and have not submitted a request to exclude yourself from the Settlement Class, you can object to the proposed Settlement if you do not like any part of it.  The Court will consider your views.

To object, you must file with the Court a written statement explaining why you believe the Settlement should not be approved by the Court as fair, reasonable, and adequate.  Your written statement must also include:  (1) your printed name, address, and telephone number; (2) the case name; (3) the Morning Song Bird Food product purchases that qualify you as a Settlement Class Member; (4) a detailed explanation of your objection, as well as the specific reasons for each objection; (5) any supporting materials you wish the Court to consider when reviewing your objection; and (6) a statement whether your objection applies only to yourself, a subset of the Settlement Class, or to the entire Settlement Class.  Your objection must be mailed to the Clerk of the Court at 333 West Broadway, San Diego, CA 92101, such that it is received by Month XX, 2019, and served on the following counsel on or before that same date:  Rachel L. Jensen, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101; Edward Patrick Swan, Jr., Jones Day, 4655 Executive Drive, Suite 1500, San Diego, CA 92121-3134; and Mark Holscher, Kirkland & Ellis LLP, 333 South Hope Street, Los Angeles, CA 90071.

You are permitted to file your objection yourself or through a lawyer hired at your own expense.  Lawyers who file objections on behalf of Settlement Class Members must file an appearance with the Court by Month XX, 2019.

**20.    What Is The Difference Between Objecting To The Proposed Settlement And Asking To Be Excluded From It?**

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you remain a Settlement Class Member (that is, do not exclude yourself).  Excluding yourself is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you cannot object or receive any Refund because the Settlement no longer affects you.

### The Lawyers Representing You

**21.    Who Are The Attorneys Appointed To Represent The Settlement Class?**

The Court has approved of the following law firms to represent the Settlement Class:

| Robbins Geller Rudman & | The Driscoll Firm, P.C. | Dowd & Dowd P.C. |
|---|---|---|
| Dowd LLP | 211 N. Broadway, Suite 4050 | 211 N. Broadway, Suite 4050 |
| 655 West Broadway, Suite 1900 | St. Louis, MO 63102 | St. Louis, MO 63102 |
| San Diego, CA 92101 | | |

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  If you want your own lawyer, you will have to pay that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

**22.     How Will The Lawyers Be Paid?**

Class Counsel will apply to the Court for an award of attorneys' fees of up to 25% of the Settlement Amount and expenses in an amount not to exceed $450,000, plus interest thereon, and Service Awards for each of the class representatives for their time and service to the Settlement Class in a total amount not to exceed $10,000.  Any award of attorneys' fees and expenses and Service Awards must be approved by the Court.  If approved, these awards will be paid from the Settlement Fund, and will be paid before Claim Form Refunds are distributed.

### The Court's Fairness Hearing

**23.     When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?**

The Court will hold a Fairness Hearing at _____, on Month XX, 2019, before the Honorable John A. Houston at the U.S. District Court for the Southern District of California, Courtroom 13B, 333 West Broadway, San Diego, CA 92101, to decide whether to grant or deny final approval of the proposed Settlement.

**24.     Do I Have To Come To The Fairness Hearing?**

No.  Class Counsel will answer any questions the Court may have about the proposed Settlement.  However, you are welcome to come to the hearing at your own expense.  If you submitted an objection, you do not have to appear in Court to talk about it.  As long as you mailed your written objection on time, signed it, and provided all of the required information (see Question 19) the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

**25.     May I Speak At The Fairness Hearing?**

If you wish to appear at the Fairness Hearing, you must file with the Court a written notice of your intent to appear at the Fairness Hearing by Month XX, 2019, that complies with the Court's Preliminary Approval Order.  Any Settlement Class Member who fails to comply with these requirements will forfeit their right to appear and be heard on his or her objection at the Fairness Hearing.

**26.    What Happens If The Settlement Is Approved?**

When and if the Court approves the Settlement after the Fairness Hearing, it will enter a "Final Order and Judgment" which, among other things, will constitute a final and binding judgment regarding the Action and dismiss the lawsuit with prejudice, order the parties to carry out the terms of the Settlement, and put into effect the Releases described above.

**27.    What Happens If The Court Does Not Approve The Settlement?**

If the Court does not approve the Settlement, you will not receive any Refunds described in this Notice and you will not be legally affected by the Settlement, all the parties in this lawsuit will be back to where they were before the Settlement Agreement, and no party may use or refer to the Settlement Agreement to the disadvantage of the other party.

<u>**Getting More Information**</u>

**28.    How Do I Get More Information?**

Contact the Settlement Administrator.  Go to [website], call 1-XXX-XXX-XXXX, or write to [Settlement Administrator address].

**PLEASE DO NOT CONTACT THE JUDGE, THE COURT, THE DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.  THEY CANNOT ANSWER ANY QUESTIONS OR COMMENT ON THE SETTLEMENT OR LAWSUIT.**

Dated: _____

**BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

# EXHIBIT E

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

*In re Morning Song Bird Food Litigation*,
Lead Case No. 3:12-cv-01592-JAH-AGS (S.D. Cal.)

**Morning Song Bird Food Products**

Brand / Product Name / Size

Academy Deer Corn 40 lb. bag

Aco Morning Song Cracked Corn 5 lb. bag

Aco Morning Song Black Oil Sunflower 5 lb. bag

Aco Morning Song Black Oil Sunflower 10 lb. bag

Aco Morning Song Striped 10 lb. bag

Aco Morning Song Striped Sunflower 40 lb. bag

Aco Promo Wild Bird Blend 20 lb. bag

Anderson's Bird Mix 20 lb. bag

Anderson's Bird Mix 50 lb. bag

Blended Chips 50 lb. bag

Century Resources Wild Bird Food Bell 16 oz.

Deer & Turkey Mini Block

Fine Chips 50 lb. bag

Harris Teeter Black Oil 5 lb. bag

Harris Teeter Black Oil 10 lb. bag

Harris Teeter Red Bird 7 lb. bag

Harris Teeter Wild Bird Food 5 lb. bag

Harris Teeter Wild Bird Food 10 lb. bag

Harris Teeter Wild Bird Food 20 lb. bag

Meijer Black Oil Sunflower 10 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Meijer Black Oil Sunflower 20 lb. bag

Meijer Natural Suet 11 oz.

Meijer Natural Wild Bird Food 10 lb. bag

Meijer Natural Wild Bird Food 20 lb. bag

Meijer Natural Wild Bird Food 40 lb. bag

Meijer Striped Sunflower 10 lb. bag

Morning Song Apple Crisp Dough 12 count

Morning Song Backyard Songbird 40 lb. box

Morning Song Bell & Feeder Combo

Morning Song Berry Punch Suet 11.75 oz.

Morning Song Birdwatcher Bell 11 oz.

Morning Song Birdwatcher Bar 13 oz.

Morning Song Birdwatcher Blend 4.5 lb. bag

Morning Song Birdwatcher Blend 7 lb. bag

Morning Song Birdwatcher Blend 8 lb. bag

Morning Song Birdwatcher Blend 9 lb. bag

Morning Song Birdwatcher Blend 12 lb. bag

Morning Song Birdwatcher Blend 18 lb. bag

Morning Song Birdwatcher Mini-Snack 8 oz.

Morning Song Birdwatcher Ready Feeder

Morning Song Birdwatcher Snack 2 lb. bag

Morning Song Birdwatcher Suet 10.75 oz.

Morning Song Black Oil Sunflower Bell 10 oz.

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Black Oil Sunflower 2 lb. bag

Morning Song Black Oil Sunflower 5 lb. bag

Morning Song Black Oil Sunflower 10 lb. bag

Morning Song Black Oil Sunflower 20 lb. bag

Morning Song Black Oil Sunflower 25 lb. bag

Morning Song Black Oil Sunflower 30 lb. bag

Morning Song Black Oil Sunflower 50 lb. bag

Morning Song Bug Fest 5 lb. bag

Morning Song Bug Fest 9 lb. bag

Morning Song Chickadee & Nuthatch 3 lb. bag

Morning Song Cherry Delight 3.5 lb. bag

Morning Song Cherry Delight 8.5 lb. bag

Morning Song Cherry Pie Dough 12 count

Morning Song Clean & Free 5 lb. bag

Morning Song Clean & Free 10 lb. bag

Morning Song Clean & Free 18 lb. bag

Morning Song Country Pride 4 lb. bag

Morning Song Country Pride 5 lb. bag

Morning Song Country Pride 10 lb. bag

Morning Song Country Pride 20 lb. bag

Morning Song Country Pride 23 lb. bag

Morning Song Country Pride 40 lb. bag

Morning Song Country Pride 50 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Cracked Corn 4 lb. bag

Morning Song Cracked Corn 5 lb. bag

Morning Song Cracked Corn 25 lb. bag

Morning Song Cracked Corn 50 lb. bag

Morning Song Cardinal Food 3.5 lb. bag

Morning Song Cardinal Food 5 lb. bag

Morning Song Cardinal Food 7 lb. bag

Morning Song Cardinal Food 20 lb. bag

Morning Song Cardinal Food 40 lb. bag

Morning Song Cardinal Snack 1.75 lb. bag

Morning Song Deer Corn 40 lb. bag

Morning Song Deluxe Wild Bird Food 10 lb. bag

Morning Song Deluxe Wild Bird Food 20 lb. bag

Morning Song Deluxe Wild Bird Food 40 lb. bag

Morning Song Dough-Nut 12 count

Morning Song Dove 7 lb. bag

Morning Song Dove Block 4.5 lb. bag

Morning Song Ear Corn 6.5 lb. bag

Morning Song Fall & Winter Blend 18 lb. bag

Morning Song Finch with Canola Seed 5 lb. bag

Morning Song Finch & Chips 5 lb. bag

Morning Song Finch & Chips 9 lb. bag

Morning Song Fruit Berry & Nut 7 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Fruit Berry & Nut 15 lb. bag

Morning Song Fruit Berry & Nut Bell 12 oz.

Morning Song Fruit Berry & Nut Snack 1.75 lb. bag

Morning Song Gourmet Wild Bird Food 10 lb. bag

Morning Song Gourmet Wild Bird Food 20 lb. bag

Morning Song Hearts & Chips 5.5 lb. bag

Morning Song High-Energy Suet 24 count

Morning Song High-Energy Suet 11 oz.

Morning Song High-Energy Suet 22 oz.

Morning Song Jazz Berry 4.5 lb. bag

Morning Song Jazz Berry 9 lb. bag

Morning Song Nutty Safari 4.25 lb. bag

Morning Song Nutty Safari 9 lb. bag

Morning Song Nutty Safari Jumbo Suet 24 oz.

Morning Song Nutty Safari Suet 11 oz.

Morning Song Orange Slice Dough 12 count

Morning Song Peanuts 3 lb. bag

Morning Song Pumpkin Delight 4 lb. bag

Morning Song Pumpkin Delight 10 lb. bag

Morning Song Pumpkin Party 4.5 lb. bag

Morning Song Pumpkin Party 9 lb. bag

Morning Song Premium Wild Bird Food 5 lb. bag

Morning Song Premium Wild Bird Food 10 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Premium Wild Bird Food 20 lb. bag

Morning Song Premium Wild Bird Food 40 lb. bag

Morning Song Raisin Crunch Suet 11.75 oz.

Morning Song Safflower 7 lb. bag

Morning Song Safflower Snack 1.7 lb. bag

Morning Song Songbird 7 lb. bag

Morning Song Songbird 14 lb. bag

Morning Song Songbird Garden 35 lb. box

Morning Song Songbird Sock 8 oz.

Morning Song Snack & Basket Combo

Morning Song Snack-Mmm's 13 oz.

Morning Song Squirrel & Critter 5 lb. bag

Morning Song Squirrel & Critter 10 lb. bag

Morning Song Squirrel & Critter 20 lb. bag

Morning Song Squirrel & Critter Snack 2.2 lb. bag

Morning Song Striped Sunflower 5 lb. bag

Morning Song Striped Sunflower 10 lb. bag

Morning Song Striped Sunflower 20 lb. bag

Morning Song Striped Sunflower 40 lb. bag

Morning Song Sunflower Snack 1.3 lb. bag

Morning Song Sunflower Suet 9 oz.

Morning Song Supreme Basket 20 lb. bag

Morning Song Supreme Finch Bar 14 oz.

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Supreme Finch Food 5 lb. bag

Morning Song Supreme Finch Food 10 lb. bag

Morning Song Supreme Snack 4 lb. bag

Morning Song Trail Mix 5 lb. bag

Morning Song Trail Mix 9 lb. bag

Morning Song Variety Suet 15 pack with basket

Morning Song Variety Suet 3 pack

Morning Song White Millet 10 lb. bag

Morning Song Wild Bird Bell 16 oz.

Morning Song Wild Bird Bell 6 pack

Morning Song Wild Bird Mini-Snack 9 oz.

Morning Song Wild Bird Snack 2 lb. bag

Morning Song Wild Finch Food 3 lb. bag

Morning Song Wild Finch Food 8 lb. bag

Morning Song Wild Finch Food 10 lb. bag

Morning Song Woodpecker 4 lb. bag

Morning Song Woodpecker Bar

Morning Song Woodpecker Bar & Basket

Morning Song Woodpecker Mini-Snack 7.5 oz.

Morning Song Woodpecker Snack 2 lb. bag

Morning Song Woodpecker Suet 24 count

Morning Song Woodpecker Suet 3 pack

Morning Song Woodpecker Suet 9.5 oz.

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Morning Song Year Round Suet 10 pack

Morning Song Year Round Suet 11.75 oz.

Morning Song Year Round Wild Bird Food 10 lb. bag

Morning Song Year Round Wild Bird Food 25 lb. bag

Morning Song Year Round Wild Bird Food 30 lb. bag

Morning Song Year Round Wild Bird Food 50 lb. bag

Morning Song Year Round Wild Bird Food 55 lb. bag

Moultrie Deer Corn 40 lb. bag

Nutriplan Black Oil 10 lb. bag

Nutriplan Wild Bird Food 5 lb. bag

Nutriplan Wild Bird Food 10 lb. bag

Nutriplan Wild Bird Food 20 lb. bag

Peanut Pickouts 50 lb. bag

Publix Black Oil 2 lb. bag

Publix Black Oil 5 lb. bag

Publix Red Bird 7 lb. bag

Publix Wild Bird Food 5 lb. bag

Publix Wild Bird Food 10 lb. bag

Publix Wild Bird Food 20 lb. bag

Purina Birdlovers Blend 25 lb. bag

Purina Birdlovers Blend 50 lb. bag

Purina Regional Recipe 25 lb. bag

Purina Regional Recipe 50 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Remington Wild Game Innovations 40 lb. bag

Royal Wing All Season Suet 12 count

Royal Wing Birdlovers Suet 12 count

Royal Wing Berry Suet 12 count

Royal Wing High-Energy Suet 12 count

Royal Wing Peanut Suet 12 count

Royal Wing Raisin Suet

Royal Wing Sunflower Suet

Royal Wing Woodpecker Suet 12 count

Safflower 20 lb. bag

Safflower 50 lb. bag

Scotts Finch & Small Song Bird Sock Feeder 13 oz.

Scotts Gourmet Finch Blend 5 lb. bag

Scotts Multi-Bird Bell Fruit & Nut 12 oz.

Scotts Multi-Bird Snack Fruit & Nut 1.75 lb. bag

Scotts Multi-Bird Suet 10.75 oz.

Scotts Multi-Bird Suet Fruit & Nut 11.75 oz.

Scotts No-Mess Patio Blend 5.5 lb. bag

Scotts No-Mess Patio Blend Wild Bird Food 24 lb. bag

Scotts Seed Fruit & Berry 5 lb. bag

Scotts Songbird Selection No-Mess Patio 5.5 lb. bag

Scotts Songbird Selection No-Mess Patio 6.5 lb. bag

Scotts Songbird Selection No-Mess Patio 11 lb. bag

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Scotts Songbird Selection No-Mess Patio 13 lb. bag

Scotts Songbird Selection Finch & Small Song Bird 5 lb. bag

Scotts Songbird Selection Finch & Small Song Bird 6 lb. bag

Scotts Songbird Selection Finch & Small Song Bird 10 lb. bag

Scotts Songbird Selection Finch & Small Song Bird 12 lb. bag

Scotts Songbird Selection Multi-Bird 5 lb. bag

Scotts Songbird Selection Multi-Bird 6 lb. bag

Scotts Songbird Selection Multi-Bird 10 lb. bag

Scotts Songbird Selection Multi-Bird 12 lb. bag

Scotts Songbird Selection Multi-Bird 18 lb. bag

Scotts Songbird Selection Multi-Bird Fruit & Nut 5 lb. bag

Scotts Songbird Selection Multi-Bird Fruit & Nut 6 lb. bag

Scotts Songbird Selection Multi-Bird Fruit & Nut 10 lb. bag

Scotts Songbird Selection Multi-Bird Fruit & Nut 12 lb. bag

Scotts Ultimate Songbird 5 lb. bag

Scotts Ultimate Songbird 10 lb. bag

Scotts Woodpecker Snack 2 lb. bag

Scotts Woodpecker Suet 9.5 oz.

Shelled Corn 25 lb. bag

Shoppers Value Wild Bird Food 20 lb. bag

Smith & Hawken Jazz Berry 5.5 lb. jug

Smith & Hawken Nutty Safari 6 lb. jug

Smith & Hawken Supreme Finch 6.5 lb. jug

EXHIBIT E – MORNING SONG BIRD FOOD PRODUCT LIST

Southern Grain Deer Corn Grain 40 lb. bag

Southern Grain Deer Corn Grain 50 lb. bag

Squirrel Free Suet 11.75 oz.

Squirrel Free Wild Bird Food 8 lb. bag

# EXHIBIT F

EXHIBIT F – PROPOSED PRELIMINARY APPROVAL ORDER

1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11   In re MORNING SONG BIRD FOOD        )   Lead Case No.
     LITIGATION                          )   3:12-cv-01592-JAH-AGS
12                                       )
                                         )
13   ———————————————————                 )   CLASS ACTION
                                         )
     This Document Relates To:           )
14                                       )   [PROPOSED] ORDER GRANTING
          ALL ACTIONS.                   )   MOTION FOR PRELIMINARILY
15                                       )   APPROVAL OF CLASS ACTION
     ———————————————————                 )   SETTLEMENT
16

17

18

19

20

21

22

23

24

25

26

27

28

1   WHEREAS, the consolidated action captioned *In re Morning Song Bird Food*

2   *Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS, and all of the actions

3   consolidated in and related to it (the "Action") is pending before the Court;

4   WHEREAS, the parties to the Action have applied pursuant to Rule 23 of the

5   Federal Rules of Civil Procedure for preliminary approval of the proposed settlement

6   (the "Settlement") in accordance with the Stipulation of Class Action Settlement

7   entered into by the Parties on December 7, 2018 (the "Agreement"), a copy of which

8   was filed with the Court on December 7, 2018, and have consented to the entry of this

9   Preliminary Approval Order; and

10   WHEREAS, the Court having reviewed the Agreement, its Exhibits, and other

11   submissions of the parties, having considered all of the files, records, and pleadings in

12   this Action, and being otherwise fully advised, and good cause appearing therefor:

13   NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

14   1.   The capitalized terms used in this Order shall have the same meanings as

15   defined in the Agreement unless otherwise specified or defined in this Order.

16   2.   For purposes of the Settlement only, the Court certifies the Settlement

17   Class, which consists of all Persons who, between November 1, 2005 and May 1,

18   2008, purchased and have not yet received a full refund for their Morning Song Bird

19   Food purchases. "Morning Song Bird Food" means any Scotts wild bird food product

20   containing Storcide II, Actellic 5E, or their active ingredients, chlorpyrifos-methyl or

21   pirimiphos-methyl, respectively, as set forth in the list of products attached as Exhibit

22   E to the Agreement. The following entities and individuals are excluded from the

23   Settlement Class: (a) Defendants and their immediate families, the officers, directors

24   and affiliates of Defendants, at all relevant times, members of their immediate families

25   and their legal representatives, heirs, successors or assigns, and any entity in which

26   Defendants have or had a controlling interest; (b) distributors, retailers, and other

27   resellers of Morning Song Bird Food; (c) judicial officers and their immediate family

28   members and associated court staff assigned to this case; and (d) all those otherwise in

1  the Settlement Class who timely and properly exclude themselves from the Settlement

2  Class as provided in the Agreement and this Preliminary Approval Order.

3     3. The Court preliminarily concludes, based on its prior order granting

4  certification of a litigation class and the information submitted to date, that the

5  requirements of Federal Rule of Civil Procedure 23 have been satisfied. Specifically,

6  the Court finds that: (a) the Settlement Class is so numerous that joinder of all

7  members is impracticable; (b) there are questions of law and fact common to the

8  Settlement Class, and such questions predominate over any questions affecting only

9  individual members; (c) the claims of Plaintiffs as representative plaintiffs are typical

10  of the claims of the Settlement Class; (d) Plaintiffs and Class Counsel have fairly and

11  adequately protected and represented the interests of the Settlement Class; and (e) a

12  settlement class is superior to other available methods for fairly and efficiently

13  adjudicating the claims and disputes at issue in this Action. Defendants retain all

14  rights to challenge whether the Action may proceed as a class action, except for

15  settlement purposes only.

16     4. The Court hereby appoints Plaintiffs Laura Cyphert, Milt Cyphert, Ellen

17  Larson, and David Kirby as the Settlement Class representatives and Robbins Geller

18  Rudman & Dowd LLP, Dowd & Dowd P.C., and The Driscoll Firm, P.C. as Class

19  Counsel.

20     5. The Court preliminarily approves the Settlement set forth in the

21  Agreement as fair, reasonable, adequate, and in the best interests of the Settlement

22  Class.

23     6. A hearing (the "Fairness Hearing") shall be held on

24  _____, 2019 [*at least 100 days from the date of entry of this*

25  *Preliminary Approval Order*] at _____ in Courtroom 13B of the United States

26  District Court for the Southern District of California, at the James M. Carter and

27  Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, California

28  92101, to determine: (a) whether the Settlement Class should be finally certified;

(b) whether the Settlement set forth in the Agreement should be finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; (c) whether a final judgment should be entered dismissing the claims of the Plaintiffs and the Settlement Class Members with prejudice, as required by the Agreement and releasing claims as required by the Agreement; (d) whether and, if so, in what amount to award Attorneys' Fees and Expenses to Class Counsel pursuant to the fee application to be filed as referenced in this Order (if any); (e) whether and, if so, in what amount to award Service Awards to Plaintiffs in recognition of their time and service to the Settlement Class pursuant to the application to be filed as referenced in this Order (if any); and (f) any objections to the Settlement, the application for Attorneys' Fees and Expenses, and/or the application for Service Awards.

7.      All papers in support of final approval of the Settlement shall be filed with the Court and served upon all counsel of record by _____, 2019 [**35 days before the Fairness Hearing**]. Class Counsel shall file with the Court and serve upon all counsel of record any application, and all papers in support of any such application, for an award of Attorneys' Fees and Expenses and/or for Service Awards for Plaintiffs by _____, 2019 [**35 days before the Fairness Hearing**]. Any reply papers shall be filed with the Court and served upon all counsel of record by _____, 2019 [**7 days before the Fairness Hearing**].

8.      Having reviewed the form and content of the proposed forms of the Long-Form Notice, the Publication Notice, and the Retailer-Identified Refund Notice, submitted by the Parties as Exhibits D, G, and H to the Agreement, the Court hereby approves such Notices. The Parties shall have discretion to jointly make minor non-material revisions to the Notices before emailing, mailing, and/or publishing them.

9.      The Court finds and determines that dissemination and publication of the Notices as set forth in the Notice Plan in the Agreement constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement and the matters set forth in the Notices to all persons entitled to receive

1  notice, and fully satisfies the requirements of due process and of Federal Rule of Civil

2  Procedure 23.

3      10.    KCC LLC is hereby appointed as the Settlement Administrator, to

4  implement and administer the Notice Plan and the Settlement, including the claims

5  process and Refunds as described in the Agreement, subject to the oversight of the

6  Parties and this Court.

7      11.    The Court directs the Settlement Administrator to review the Retailer

8  Records and information provided by Class Counsel and Defendants' Counsel to

9  identify recipients of the Retailer-Identified Refund Notice and the Long-Form Notice

10  per the terms of the Parties' Agreement. The Settlement Administrator shall keep and

11  maintain Settlement Class Member contact information as confidential and shall use

12  such information only for purposes of the Settlement.

13      12.    The Court directs the Settlement Administrator to commence

14  dissemination of  the Retailer-Identified Refund Notices and Long-Form Notices, as

15  set forth in the Agreement, within thirty (30) days after entry of this Order and to

16  commence publication of the Publication Notice, as set forth in the Agreement, within

17  thirty (30) days after entry of this Order or as soon as reasonably practicable

18  thereafter. In addition, the Court directs the Settlement Administrator: (a) to establish

19  a settlement website and post to it the Long-Form Notice and Claim Form as well as

20  other important documents and deadlines in consultation with Class Counsel and

21  Defendants' Counsel; (b) to establish a post-office box for the receipt of any

22  Settlement-related correspondence; (c) to establish a toll-free telephone number that

23  will provide automated Settlement-related information to Settlement Class Members;

24  (d) to respond to inquiries or requests from Settlement Class Members in consultation

25  with Class Counsel and Defendants' Counsel; and (e) to respond to inquiries or

26  requests from Class Counsel, Defendants' Counsel, and the Court. The Settlement

27  Administrator and the Parties shall promptly send copies of any requests for

28  exclusion, objections, and related correspondence to each other.

13.    By _____, 2019 [*7 days before the Fairness Hearing*], the Settlement Administrator shall file with the Court the details outlining the scope, method, and results of the Notice Plan.

14.    Not later than ten (10) days after the filing of the Agreement with the Court, Defendants shall serve, or cause to be served, notice of the proposed Settlement upon the appropriate federal and state officials in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"). By _____, 2019 [*7 days before the Fairness Hearing*], Defendants' Counsel shall serve, or cause to be served, on Class Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

15.    The Court approves the Claim Form submitted by the Parties as Exhibit A to the Agreement. The Parties shall have discretion to jointly make minor non-material revisions to the Claim Form distributing it to the Settlement Class.

16.    Any Settlement Class Member who wishes to request a Proof of Purchase Refund and/or a Claim Form Refund shall submit a Claim Form with all supporting documentation (including Proof of Purchase and Claim Form Affidavit, respectively) to the Settlement Administrator by regular, first-class mail or via the settlement website by _____, 2019 [*120 days after the Notice Date (which is 30 days after entry of this Order)*].

17.    Any and all Retailer-Identified Refunds, Proof of Purchase Refunds, Claim Form Refunds, Supplemental Claim Form Refunds, and Second Supplemental Claim Form Refunds shall be issued to Settlement Class Members in accordance with the procedures set forth in the Agreement.

18.    Any Settlement Class Member who intends to object to the fairness of the Settlement, Class Counsel's request for Attorneys' Fees and Expenses, Plaintiffs' request for Service Awards, or any other aspect of the Settlement must serve and file a written objection explaining why he or she believes the Settlement should not be approved by the Court as fair, reasonable, and adequate. The written statement of the

1   objection must include a detailed statement of the Settlement Class Member's

2   objection(s), as well as the specific reasons, if any, for each such objection, including

3   any evidence and legal authority the Settlement Class Member wishes to bring to the

4   Court's attention. That written statement also must contain the Settlement Class

5   Member's printed name, address, telephone number, and Morning Song Bird Food

6   product purchases forming the basis of the Settlement Class Member's inclusion in the

7   Settlement Class, and any other supporting papers, materials, or briefs the Settlement

8   Class Member wishes the Court to consider when reviewing the objection. The

9   objection must state whether it applies only to the objector, to a specific subset of the

10  Settlement Class, or to the entire Settlement Class, and must state with specificity the

11  grounds for the objection. A Settlement Class Member seeking to make an appearance

12  at the Fairness Hearing must file with the Court, by _____, 2019 [*21 days

13  before the Fairness Hearing*], written notice of his or her intent to appear at the

14  Fairness Hearing. Lawyers asserting objections on behalf of Settlement Class

15  Members also must file a notice of appearance with the Court by _____,

16  2019 [*21 days before the Fairness Hearing*]. Any Person filing an objection shall, by

17  doing so, submit himself or herself to the exclusive jurisdiction and venue of the

18  Court, and shall agree to be subject to discovery by the Parties with respect to both the

19  objection and any objections to other class action settlements lodged by the objector.

20       19.    Any notice of intention to appear and objection must be addressed to the

21  Clerk of Court; must refer to the action *In re Morning Song Bird Food Litigation*,

22  Lead Case No. 3:12-cv-01592-JAH-AGS, and must be filed with, and received by, the

23  Clerk of Court by _____, 2019 [*21 days before the Fairness Hearing*],

24  by hand delivery or first class mail, postage prepaid, at:

25         Clerk of Court
       U.S. District Court for the Southern District of California

26         James M. Carter and Judith N. Keep United States Courthouse
       333 West Broadway

27         San Diego, California 92101

28

Copies of any such submission and all included materials also must be served upon the following counsel by hand delivery or first class mail, postage prepaid, on or before that same date:

Rachel L. Jensen
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

*Class Counsel*

Edward Patrick Swan, Jr.
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121.3134

*Counsel for Defendants
The Scotts Miracle-Gro Company
and The Scotts Company LLC*

Mark Holscher
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071

*Counsel for Defendant
James Hagedorn*

20.    No Person shall be entitled to object to the Settlement, to the final judgment to be entered in this Action, to any award of Attorneys' Fees and Expenses to Class Counsel, or to any Service Award to Plaintiffs, or otherwise to be heard, except by serving and filing a written notice of intention to appear and written objections in the form and manner, and by the date, required by the Notice and the terms of this Order. Any Settlement Class Member who fails to object in the manner and by the date required shall be deemed to have waived and forfeited any and all rights he or she may have to object to the Settlement and/or to appear and be heard on his or her objection at the Fairness Hearing (including any right to appeal), shall be forever barred from raising such objections in this Action or any other action or proceeding, and shall be bound by all the terms of the Agreement and by all proceedings, orders and judgments, including, but not limited to, the release of the Plaintiffs' Released Claims.

21.    Any Settlement Class Member who wishes to exclude himself or herself from the Settlement must personally sign and submit a written request to opt out stating "I wish to exclude myself from the Settlement Class in *In re Morning Song*

*Bird Food Litigation*" (or substantially similar clear and unambiguous language) to the Settlement Administrator on or before _____, 2019 [*21 days before the Fairness Hearing*]. The written request must also include: the Settlement Class Member's printed name, address, and telephone number; a statement that the individual requesting exclusion is a Settlement Class Member; and the Morning Song Bird Food purchased with approximate dates, retailers, product type, and purchase.

22.    No one shall be permitted to exercise any exclusion rights on behalf of any other person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization and no one may exclude other persons within the Settlement Class as a group, class, or in the aggregate.

23.    If a Settlement Class Member timely and validly has excluded himself or herself from the Settlement Class, such Settlement Class Member shall not be legally bound by the terms of the Settlement, shall not receive any benefits of the Settlement, including any Refunds, and shall not be able to object to any aspect of the Settlement.

24.    Not later than seven (7) days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court a list of those Persons who have timely and validly excluded themselves from the Settlement. The Court retains jurisdiction to resolve any disputed exclusion requests.

25.    The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members. The Court may, from time to time, reschedule or postpone the Fairness Hearing without further notice to the Settlement Class.

26.    All proceedings in this Action, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of the Court. From the date of entry of this Order until this Court determines whether the Final Order and Judgment should be entered, Plaintiffs and all Settlement Class Members, and any of them, are barred and enjoined

from initiating, asserting and/or prosecuting, in any capacity, any of Plaintiffs' Released Claims, including any Unknown Claim, against any Released Defendant in any court or any forum.

27.     If the Court does not approve the Settlement, or the Settlement does not become effective for any reason whatsoever: (a) the Settlement (including any modification of it made with the consent of the Parties as provided for in the Agreement), any class certification in this Order, and any actions taken or to be taken in connection therewith (including this Order and any judgment entered regarding the Settlement) shall be terminated and shall become null and void and shall have no further force and effect and no Party shall be bound thereby; (b) all of the provisions of the Agreement, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of Defendants, Plaintiffs, or any Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of the Agreement, except that the Parties shall cooperate in requesting a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings; (c) neither the Agreement, the fact of its having been entered into, nor the negotiations leading to it shall be offered into evidence for any purpose whatsoever; (d) Scotts shall bear all reasonable and necessary costs incurred by the Settlement Administrator in connection with the implementation of this Settlement up until its termination, including the Initial Costs Cap and any other Notice and Administration Expenses agreed to by the Parties or ordered by the Court; and (e) within five (5) business days, any funds in the Settlement Fund Account, including any interest accrued, shall be returned to Scotts, minus incurred Notice and Administration Expenses and Taxes and Tax Expenses.  If a Settlement Class Member has (a) timely submitted a valid Claim Form, and (b) received any Refund or any compensation pursuant to the Agreement prior to its termination or invalidation, such a Settlement Class Member and Defendants shall be bound by the terms of their respective Releases set forth in the

Agreement, which terms shall survive termination or invalidation of the Agreement or the Settlement.

28.     Neither the Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Defendant or Released Plaintiff or Settlement Class Member; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Defendant or Released Plaintiff or Settlement Class Member in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency or other tribunal. Nor shall the Agreement be deemed an admission by any Party as to the merits of any claim or defense.

29.     The Court shall retain exclusive and continuing jurisdiction over all Parties, the Action, and the Agreement to resolve any dispute that may arise regarding the Agreement, the Settlement, or in relation to the Action, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Agreement and the Settlement. The Court retains ongoing and exclusive jurisdiction and independent case management authority regarding the general administration of the Settlement and the Settlement Administrator.

30.     The Court may approve amendments, modification, or expansion of the terms and provisions of the Agreement as may be agreed to by the Parties in writing without further notice to the Settlement Class.

**IT IS SO ORDERED.**

Dated: _____

_____
Honorable John A. Houston
United States District Court Judge

# EXHIBIT G

EXHIBIT G – PUBLICATION NOTICE

## LEGAL NOTICE

**IF YOU PURCHASED CERTAIN MORNING SONG WILD BIRD FOOD PRODUCTS FROM NOVEMBER 2005 TO MAY 2008, YOU MAY BE ENTITLED TO PAYMENT FROM A PROPOSED CLASS ACTION SETTLEMENT.**

A proposed Settlement has been reached in a class action lawsuit about certain Morning Song wild bird food products that were purchased between November 2005 and May 2008. The plaintiffs allege that the application of two pesticides, Storcide II and Actellic 5E, to certain wild bird food products and the sale of those products violated the law. The plaintiffs sought refunds for their purchases. The defendants deny any wrongdoing and deny that the plaintiffs suffered any damages or that they are entitled to refunds. The Court has not decided which side is right, but the parties have elected to settle the dispute by agreement.

**What Are The Settlement Terms?** The proposed Settlement provides for the payment of up to $85,000,000 in cash from which eligible consumers may receive refunds for their qualifying purchases of Morning Song Bird Food. Retailer-Identified Refunds will be provided automatically to Settlement Class Members who can be identified through certain retailer records. Settlement Class Members who cannot be identified through those retailer records must submit a Claim Form for a refund. A Settlement Class Member who submits a Claim Form with Proof of Purchase will receive a full refund. Claim Forms submitted without proof or purchase may receive up to $100 per household or more, depending on the amount of the claims and the balance available for distribution.

**How Do I Get A Payment?** Settlement Class Members who do not receive a "Retailer-Identified Refund Notice" by mail or email must submit a Claim Form by **Month XX, 2019**. Claim Forms may be submitted online or printed from the website and mailed to the address on the Claim Form. Claim Forms are also available by calling 1-XXX-XXX-XXXX.

**Your Other Options.** If you do nothing, your rights will be affected but you will not receive a Settlement payment unless you are eligible for a Retailer-Identified Refund. If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month XX, 2019**. Unless you exclude yourself, you will not be able to sue Scotts or any of the Released Defendants for any and all of the legal and factual issues that the Settlement resolves and the Settlement Agreement releases. If you exclude yourself, you cannot receive a Refund under the Settlement. If you do <u>not</u> exclude yourself, you may object to the Settlement and notify the Court that you or your lawyer intend to appear at the Court's final approval hearing. Any objection to the Settlement, or the fee and expenses application, must be received, not simply postmarked, by each of the following *no later than* **Month XX, 2019**: Rachel L. Jensen, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101; Edward Patrick Swan, Jr., Jones Day, 4655 Executive Drive, Suite 1500, San Diego, CA 92121-3134; and Mark Holscher, Kirkland & Ellis LLP, 333 South Hope Street, Los Angeles, CA 90071.

The Court will hold a hearing in this case (*In re Morning Song Bird Food Litig.*, No 3:12-cv-01592) at __:__ _.m. on _____ at the U.S. District Court for the Southern District of California, 333 West Broadway, San Diego, California 92101, for the purpose of determining: (i) whether the proposed Settlement of the claims in this litigation should be approved by the

Court as fair, reasonable and adequate; (ii) whether a final judgment and order of dismissal with prejudice should be entered by the Court dismissing the litigation with prejudice; and (iii) whether Class Counsel's application for the payment of attorneys' fees and expenses and service awards for the four named plaintiffs should be approved.  You do not need to appear at the hearing or hire your own attorney, although you have the right to do so at your own expense.

***This Notice is just a summary***. Complete details, the Long-Form Notice, and Settlement Agreement are available at [website] or by calling [phone].

# EXHIBIT H

EXHIBIT H – RETAILER-IDENTIFIED REFUND NOTICE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

*In re Morning Song Bird Food Litigation*, Lead Case No. 3:12-cv-01592-JAH-AGS

## <u>INFORMATION REGARDING RETAILER-IDENTIFIED REFUNDS</u>

**You will receive a full refund for your purchases of certain Morning Song wild bird food products as part of a proposed class action settlement.**

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

- **You should read this Notice in connection with the accompanying Long-Form Notice, which provides additional information about the proposed Settlement.**  This Notice provides information about only the Retailer-Identified Refunds.

- You have been identified through certain records from Tractor Supply Company, Sam's Club, PetSmart, Menard's, or Orscheln Farm and Home as having purchased Morning Song Bird Food products from November 1, 2005 through May 1, 2008.  No action is required unless your name or contact information, listed below, is incorrect.

- Those records were reviewed by an independent, Court-appointed Settlement Administrator to determine, among other things, the quantity of Morning Song Bird Food you purchased and the total amount you paid for those purchase(s).  That information is detailed below.

- If your name and contact information is **<u>correct</u>**, you do not need to do anything.  If the Settlement is approved, you will receive a Retailer-Identified Refund in the amount shown below.  The check will be made payable to the name listed below and will be sent to the address listed below.

- If your name or contact information is **<u>incorrect</u>** or if you are not the correct recipient of the Retailer-Identified Refund, **return the enclosed Correction Form**.  Modify any incorrect name or contact information and identify the correct recipient and his or her address for the Retailer-Identified Refund.  Return the Correction Form by mail or online [website] **by _____**.  Do <u>not</u> submit a Correction Form to modify the quantity of Morning Song Bird Food products purchased or the amount of those purchases detailed below.

- If you believe you are entitled to refunds of purchases in addition to those shown below, submit a Claim Form for a Proof of Purchase Refund or a Claim Form Refund **by _____**.  The enclosed Long-Form Notice provides information about submitting a Claim Form for a Proof of Purchase Refund or a Claim Form Refund, as well as additional information about the proposed Settlement.

| YOUR RETAILER-IDENTIFIED REFUND | |
|---|---|
| **Name** | [Information to be populated from Retailer Records] |
| **Address**<br>**City, State Zip** | [Information to be populated from Retailer Records] |
| **Refund Amount and Transaction Information** | [Information to be populated from Retailer Records.  Also include transaction details (quantity of bird food purchased, retailer, dates of purchase, amounts paid)] |

**IF YOU HAVE QUESTIONS, CONTACT THE SETTLEMENT ADMINISTRATOR AT [1-XXX-XXX-XXXX].**

**PLEASE DO NOT CONTACT THE JUDGE, THE COURT, THE DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

Dated: _____

**BY ORDER OF THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**